October 16, 2020

Hon. Ona T. Wang
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl St., Courtroom 20D
New York, NY 10007

      RE:    *Make the Road New York, et al.* v. *Ken Cuccinelli, et al.*, 19-cv-7993 ("*MRNY*");
                *State of New York, et al.* v. *U.S. Dep't of Homeland Security, et al.*, 19-cv-7777
                ("*State of New York*")

Dear Judge Wang:

      The parties in these consolidated cases submit this joint letter, pursuant to the Court's September 29, 2020 Order (the "Order"), to identify outstanding disputes relating to defendants' privilege log. The Order required defendants to "cure the deficiencies identified by Plaintiffs and produce updated privilege logs to Plaintiffs by October 2, 2020." *MRNY* ECF No. 247 at 2; *State of New York* ECF No. 220 at 2. After the Court granted defendants a short extension, defendants produced an updated partial privilege log to plaintiffs on October 7, 2020. The updated partial privilege log is attached to this letter as Exhibit A. The parties met-and-conferred to discuss the updated log on October 9, 2020, but were unable to reach agreement regarding the issues described below.

      1.   Names and Roles of Agency Personnel

      Several entries in the privilege log do not identify the name or role of agency personnel listed in the "To," "From," or "Cc" fields. *E.g.*, Entry No. 88 (withholding email from "USCIS Employee" to "USCIS Employee"); *see also, e.g.*, Entry Nos. 89–107.

      **Plaintiffs' Position**

      Every individual listed in the privilege log should be identified by name and, with the exception of well-known senior officials, by job title. The Court has already ruled on this issue. In their September 14, 2020 letter, plaintiffs specifically showed that "numerous entries [in the privilege log] identify individuals using only vague and generic descriptions, such as 'USCIS Employee,' 'DOS Employee,' and 'DHS Attorney Advisor,'" and explained that defendants needed to supplement the privilege log with "additional information about the role of these government employees, including some specificity as to where the Authors and Recipients fall on the agency's hierarchy." *MRNY* ECF No. 240 at 2; *State of New York* ECF No. 213 at 2 (internal quotation marks and alteration omitted). The Order required defendants to "cure the deficiencies identified by Plaintiffs," which included this deficiency. Defendants have failed to cure this deficiency and should do so immediately.

      Even if the Court had not already ruled on this issue, the names and positions of agency personnel included on the privilege log must be disclosed. "[A] strong presumption" of

1

access attaches to the type of "judicial document" at issue here—the administrative record. *Lugosch* v. *Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006). The public has a clear interest in knowing the identity of individuals involved in the decision to promulgate the Rule,[1] which affects millions of aspiring immigrants and their families. The agency employees here are not bystanders, but rather federal employees who allegedly played roles in the deliberative process by which the Rule was designed and deployed. Their work is the subject of deep public interest in the plaintiff states and among the immigrant families served by the organizational plaintiffs. *United States* v. *Amodeo*, 71 F.3d 1044, 1053 (2d Cir. 1995) (privacy interest of non-party was lower when representing "institutions with legal and ethical obligations" and because subject matter was "such that [non-party] might reasonably have expected some public scrutiny"); see *State of New York* v. *Wolf*, 20-cv-1127 (JMF), ECF No. 45 (S.D.N.Y. Apr. 29, 2020) (Ex. B) (rejecting similar attempt to withhold the names of agency personnel and prohibiting defendants from redacting the names of agency employees in the administrative record).

Defendants must also provide the job title for each agency employee listed in the privilege log to allow plaintiffs and the Court to assess the invocation of the deliberative process privilege (the "DPP"). "An author or recipient's role is relevant [to the DPP] because it is more likely that a relatively senior-level employee, as opposed to a more junior staffer, would be offering opinions and analyses to assist the agency official responsible for the formulation of significant public policy—the very process the privilege protects." *Auto. Club of N.Y., Inc.* v. *Port Auth. of N.Y. & N.J.*, 297 F.R.D. 55, 60, 63 (S.D.N.Y. 2013) (ordering defendants to update privilege log to include "the roles of the agency employees who authored or received the withheld documents").

### Defendants' Position

Defendants have withheld from the log the names of certain government employees, in almost all cases because they are staff-level employees who may be subject to harassment or threats if their identities are made public.[2] Defendants strongly disagree with Plaintiffs' view that there is not good cause to protect this information from public disclosure. Information such as the names low-level government employees is "largely unrelated to the public interest," and may properly be withheld. *In re Savitt/Adler Litigation*, 1997 U.S. Dist. LEXIS 23671, at *12-13 (N.D.N.Y. Dec. 23, 1997) ("[T]he public can assess the Attorney General's actions without the names of the individual AAGs."); *Kelly v. City of New York*, 2003 U.S. Dist. LEXIS 2553, at *16 (S.D.N.Y. Feb. 24, 2003) ("[T]he public can assess the City's actions in discharging Plaintiffs without the names of the individual employees."). Here, it is appropriate to protect against the disclosure of the identities of lower-level employees because their public association with the public charge rule could lead to harassment and threats of harm. There has been public reporting of death threats against government employees relating to immigration policy. *See, e.g.*, https://www.nytimes.com/2019/06/25/us/sarah-fabian-migrant-lawyer-doj.html. There are also examples of aggressive and threatening statements made towards USCIS officials because of the public charge rule in particular, including an instance in which an individual submitted a

---

[1] Inadmissibility on Public Charge Grounds, 84 Fed. Reg. 41,292 (Aug. 14, 2019).
[2] In one entry, Defendants withheld the name of a senior employee where the name is not necessary to evaluate the privilege assertion.

threatening comment to two officials about the public charge rule stating, "People like me are keeping fucking track of what you are doing and we will NEVER forget it. Your days are numbered, you piece of shit." (Ex. D) Accordingly, DHS is justifiably concerned that disclosure of the names of staff members below the senior executive level creates a risk – an unnecessary risk – of threats, harassment, and possible physical violence. Indeed, courts will sometimes permit *a party to litigation* to remain anonymous "where revealing the plaintiff's name subjects him or her to the risk of public disapproval, harassment, or bodily harm." *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003). If such concerns are sufficient to protect the identity of a party, they are certainly sufficient to protect the identities of government employees listed on a privilege log for an administrative record.

Indeed, these same concerns led the plaintiffs in parallel litigation in the Northern District of Illinois to agree to a proposed confidentiality order allowing Defendants to designate as confidential "the personally identifying information of current or former government employees below the senior executive level," and the Court in that case entered that order. (Ex. E at 2).[3] The plaintiffs in parallel litigation in the Eastern District of Washington have already agreed to use that same confidentiality order. In the instant case, during the parties' October 9, 2020 teleconference, Defendants counsel offered to provide the employee names if those names could be designated as confidential in this case. Plaintiffs' counsel asked Defendants' counsel to provide a draft confidentiality order, which Defendants' counsel did that same day, but Plaintiffs never responded.

It is puzzling, and deeply concerning, that Plaintiffs apparently are not satisfied with receiving the names of the staff-level employees – they are insisting that those names be made public. There is no legitimate reason why the identities of lower level government employees who worked on the Rule need be publicly disclosed, particularly given the very real concerns about harassment and threats of physical violence discussed above. To the extent that Plaintiffs are pressing for the public disclosure of these names in an attempt to retaliate against these public servants for working on a policy with which Plaintiffs happen to disagree, that obviously is an illegitimate position and a misuse of this litigation.[4]

As for Plaintiffs' request that Defendants provide job titles for every person listed on the log, there is no such requirement in Rule 26, under which a party must only "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); *see also* Local Rule 26.2(a)(2)(A) (listing information that is required by a privilege log but not listing job titles). Plaintiffs do not explain why job titles are necessary to assess Defendants' privilege assertions. To the extent that Plaintiffs explain the need for such information as to particular log entries, Defendants will consider producing the information for those entries. But Plaintiffs' demand for such

---

[3] Ordering the public disclosure of the employee names here would have the effect of undermining Judge Feinerman's confidentiality order in the Northern District of Illinois litigation.

[4] Plaintiffs' description of the employees as being "not bystanders" suggests Plaintiffs believe there is some element of guilt associated with those employees' work. Defendants reject that suggestion in the strongest terms. It should be remembered that multiple Courts of Appeals have held that the Rule on which these employees worked is "unquestionably lawful," *CASA de Md., Inc. v. Trump*, 971 F.3d 220 (4th Cir. 2020) and "easily" passes muster on *Chevron*, *see City & Cty. of S.F. v. U.S. Citizenship & Immigration Servs.*, 944 F.3d 773, 799 (9th Cir. 2019).

information for *every* entry is plainly overbroad. Moreover, providing such information for every log entry would be unduly burdensome, especially for communications with non-party federal agencies, as it would require Defendants to confer with other agencies to obtain the job titles of those agencies' employees who appear on the log.

2. Privilege Descriptions

The parties dispute the sufficiency of several privilege descriptions in the updated privilege log.

**Plaintiffs' Position**

Several of the updated privilege log entries still contain vague descriptions of the subject matter of the withheld documents that fail to satisfy defendants' burden of demonstrating that documents withheld on DPP grounds are predecisional and deliberative. *See, e.g.*, Row 74 (withholding email "regarding the public charge rule, including comments and legal analysis and advice regarding key aspects of the draft version of the final rule"); Row 109 (withholding communications "regarding deliberative draft legal memorandum"); Row 177 (withholding emails "regarding policy considerations for the public charge rule").

As plaintiffs showed in their September 14, 2020 letter, vague descriptions that simply describe withheld communications as "predecisional" and "deliberative" cannot satisfy defendants' burden of showing that the DPP was properly invoked: "'a log of documents withheld on the basis of the deliberative process privilege should provide various pieces of information, including, but not limited to, a description of the decision to which the documents relate, the date of the decision, the subject-matter of the documents in issue, [and] the nature of the opinions and analyses offered . . . .'" *MRNY* ECF No. 240 at 2; *State of New York* ECF No. 213 at 2 (quoting *Auto. Club of N.Y., Inc.* v. *Port Authority of N.Y. & N.J.*, 297 F.R.D. 55, 60 (S.D.N.Y. 2013)). Defendants should update the privilege log to include this information for documents withheld on DPP grounds as required by the Order.[5]

**Defendants' Position**

Out of the 208 entries on the privilege log, Plaintiffs have identified *three* that they believe contain "vague descriptions." Those descriptions – like the 205 descriptions that Plaintiffs do not challenge – fully meet the requirements of Rule 26 and Local Rule 26.2. As to the document in row 74, the log explains that the document is an email discussion about the public charge rule and that it contains comments and legal analysis regarding key aspects of the draft version of the final rule. An email discussing the contents of a non-final draft is at the very heart of the deliberative process privilege because it would reveal internal discussions about what information to include or not include in the draft. *See Judicial Watch, Inc. v. U.S. Dep't of*

---

[5] Notably, several of the entries in the updated privilege log *do* include new descriptions of the "decision to which the documents relate" and the "nature of the opinions and analyses offered." *See, e.g.*, Row 140 (withholding communications containing "questions about public benefits programs relevant to determining whether benefits should be included in the final rule, and responses from [United States Department of Agriculture]"). The fact that defendants were able to include this level of detail for certain entries undermines any argument that they cannot do so for other entries.

4

*State*, Civ. A. No. 16-885, 2018 U.S. Dist. LEXIS 170199, *9 (D.D.C. Oct. 2, 2018) ("[S]oliciting revisions and feedback on a draft is plainly predecisional and deliberative."); *Hunton & Williams LLP v. U.S. EPA*, 346 F. Supp. 3d 61, 78 (D.D.C. 2018) ("emails seeking and giving input on drafts of letters . . . fall squarely within the privilege"). No more information is necessary to evaluate Defendants' deliberative process privilege assertion. The description also is sufficient to justify the attorney-client privilege as it states that the email contains counsel's legal advice regarding aspects of the draft rule. Likewise, the document in row 109 is an email about a legal memorandum, and disclosure would reveal the deliberations regarding the finalization of that memorandum.[6] Finally, the log states that the document in row 177 is a predecisional deliberative email chain regarding policy considerations for the public charge rule, including attorney mental impressions relating to policy considerations. Plaintiffs' counsel have suggested the log must disclose the policy considerations discussed in the email, but that is incorrect. The privilege assertion does not turn on whether the email describes one policy consideration versus another, and Rule 26 is clear that a party need "describe the nature of the documents" withheld "without revealing information itself privileged or protected[.]" Fed. R. Civ. P. 26(b)(5)(A)(ii). Accordingly, Plaintiffs have failed to identify any descriptions in the revised log that are deficient.

3. Identification of Attorneys

The updated privilege logs do not identify which agency personnel are attorneys.

**Plaintiffs' Position**

Plaintiffs have asked defendants to identify which individuals listed in the privilege log are attorneys so that plaintiffs and the Court can assess defendants' decision to withhold documents under the attorney-client privilege (the "ACP"). Defendants have declined. The Court previously settled this issue when plaintiffs showed that the privilege log was deficient because "[s]everal documents withheld on the basis of the ACP . . . do not explicitly identify any attorneys in the 'To,' 'From,' or 'Cc' fields," *MRNY* ECF No. 240 at 3, *State of New York* ECF No. 213 at 3, and the Court ordered defendants to "cure the deficiencies identified by Plaintiffs," Order at 2. In any event, parties routinely identify attorneys when producing privilege logs, and plaintiffs' request would impose only a minimal burden on defendants.

**Defendants' Position**

During the parties' October 9, 2020, Plaintiffs requested Defendants to provide a list all of the attorneys in the log or include an asterisk by the name or title of any attorney. Defendants have considered the request and are willing to do so for any DHS or USCIS employee listed on the log. Defendants do not agree to include such information for employees of federal agencies that are not parties to this litigation – which would require Defendants to confer with those other agencies to determine who is and is not an attorney – unless Plaintiffs identify specific entries for which such information is necessary to assess Defendants' privilege claims. Note that for DHS and USCIS employees, the titles of staff-level employees already identify attorneys (*e.g.*, "DHS

---

[6] Upon further review of the document in row 109, Defendants will remove the attorney-client privilege assertion for that document.

Attorney Advisor") and the roles of senior officials are easily identifiable through an Internet search.

4. Application of the DPP

The parties dispute whether defendants may withhold documents under the DPP in this litigation.

**<u>Plaintiffs' Position</u>**

The DPP cannot be invoked to withhold documents where, as here, the agency's decision-making process itself is squarely at issue in the litigation. The DPP is designed to protect the "decision making processes of the executive branch in order to safeguard the quality and integrity of governmental decisions." *A. Michael's Piano, Inc.* v. *FTC*, 18 F.3d 138, 147 (2d Cir. 1994). But the DPP is a "qualified privilege," and "when the public's interest in effective government would be furthered by disclosure, the justification for the privilege is attenuated. Thus, when the information sought may shed light on alleged government malfeasance, the privilege is denied." *Burbar* v. *Incorporated Village of Garden City*, 303 F.R.D. 9, 13–14 (E.D.N.Y. 2014) (quotation marks and alteration omitted).

Accordingly, as plaintiffs showed in their September 14, 2020 letter, the "historical and overwhelming consensus and body of law within the Second Circuit is that when the decision-making process itself is the subject of the litigation, the deliberative process privilege cannot be a bar to discovery and the privilege evaporates." *Id.* at 14; *accord Dukes* v. *NYCERS*, 331 F.R.D. 464, 471 (S.D.N.Y. 2019) ("[T]he decision-making process is the subject of this case, and any deliberative process privilege must give way"); *Greater N.Y. Taxi Assoc.* v. *City of New York*, No. 13-cv-3089 (VSB) (JCF), 2017 WL 4012051, at *10 (S.D.N.Y. Sept. 11, 2017) ("[W]hen the decision-making process itself is the subject of the litigation, the deliberative process privilege cannot be a bar to discovery."); *New York* v. *Salazar*, 701 F. Supp. 2d 224, 237–38 (N.D.N.Y. 2010) (determining DPP did not apply when central theme of APA claim was that the "deliberative process itself was fatally flawed and infected by arbitrary conduct and abuse of discretion"); *Children First Found., Inc.* v. *Martinez*, No. 04-cv-0927 (NPM/RFT), 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10, 2007); *Azon* v. *Long Island R.R.*, No. 00-cv-6031 (HB), 2001 WL 1658219, at *3 (S.D.N.Y. Dec. 26, 2001); *see In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998) ("If the plaintiff's cause of action is directed at the government's intent . . . it makes no sense to permit the government to use the [deliberative process] privilege as a shield.").[7]

---

[7] Some courts in the Second Circuit have determined that the DPP does not apply when the agency's decision-making process is at issue in the litigation, not based on a categorical rule, but instead based on a balancing test that weighs the litigants' need for the documents against the agency's interest in non-disclosure. *See, e.g., In re Delphi Corp.*, 276 F.R.D. 81, 85 (S.D.N.Y. 2011). This is a distinction without a difference because "[b]oth approaches tend to yield the same result[;] [i]n cases where the information is a central issue, the need for the documents will likely outweigh any negative consequences of disclosure." *Burbar*, 303 F.R.D. at 14; *see Five Borough Bicycle Club* v. *City of New York*, 2008 WL 4302696, at *1 (S.D.N.Y Sept. 16, 2008) ("whether the privilege is categorically inapplicable or dependent on a balancing of factors where the information sought is important to resolution of the dispute is more stylistic than substantive.").

Defendants' decision-making process is squarely at issue in these consolidated cases. Plaintiffs allege that the Rule violates the Equal Protection guarantee of the Fifth Amendment because it was motivated by racial animus against nonwhite immigrants. *MRNY* Compl. ¶¶ 201–34; *State of New York* Compl. ¶¶ 174–78. The district court held that plaintiffs have a strong likelihood of success on the merits of this claim. *Make the Road N.Y.* v. *Cuccinelli*, 419 F. Supp. 3d 647, 664 (S.D.N.Y. 2019). And this Court recently found that plaintiffs made a "strong showing of bad faith or improper behavior" sufficient to permit discovery beyond the administrative record. *MRNY* ECF No. 249 at 2 n.1; *State of New York* ECF No. 222 at 2 n.1. Because plaintiffs' claims challenge defendants' decision-making process in promulgating the Rule, the DPP does not apply, and defendants should promptly produce all documents withheld on the basis of the DPP. Alternatively, plaintiffs request that the Court review the documents withheld on the basis of the DPP in camera to determine whether plaintiffs' and the public's interest in disclosure outweighs the government's interest in keeping its decision-making process a secret.

### Defendants' Position

#### A. The Deliberative Process Privilege Should Be Evaluated as to Particular Documents or Categories of Documents, Not As to the Case Overall

Plaintiffs claim, incorrectly, that the deliberative process privilege categorically does not apply when "the agency's decision-making process itself is squarely at issue in the litigation." Plaintiffs' request that the Court issue a blanket order precluding Defendants from invoking the privilege as to *any* documents is contrary to the practice of most courts and is not justified here. Indeed, last year, the Ninth Circuit granted mandamus relief to the federal government where a district court "conducted a single deliberative process privilege analysis covering all withheld documents[.]" *Karnoski v. Trump*, 926 F.3d 1180, 1206 (9th Cir. 2019). Just as application of "the deliberative process privilege is . . . dependent upon the individual document and the role it plays in the administrative process," *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980), so too is the analysis undertaken in determining whether the privilege is overcome. It would be error to conduct the balancing *en masse*, rather than by assessing specific documents or categories of documents. Moreover, courts routinely reject the argument that the privilege is inapplicable because the government's intent is at issue. *See, e.g., In re Delphi Corp.*, 276 F.R.D. 81, 84–85 (S.D.N.Y. 2011) (rejecting plaintiff's argument that the deliberative process privilege "is not applicable where the litigation 'involves a question concerning the intent of the governmental decisionmakers or the decisionmaking process itself'"); *Vietnam Veterans of Am. v. C.I.A.*, 2011 WL 4635139, at *10 (N.D. Cal. Oct. 5, 2011) (declining to adopt a categorical rule that the deliberative process privilege is inapplicable when plaintiffs challenge intent, and explaining that the issue of "intent is properly considered as a factor in the substantial need analysis"); *State of New York v. Dep't of Commerce*, No. 18-cv-02921 (S.D.N.Y. Aug. 14, 2018), Dkt. 241, at 2 ("conclud[ing] that a 'balancing approach that considers the competing interests of the party seeking disclosure and of the government—specifically, its need to engage in policy deliberations without the omnipresent threat of disclosure—is more appropriate than a per se rule' providing that the deliberative-process privilege does not apply to any claim challenging governmental decisionmaking") (Ex. F); *Stone v. Trump*, 402 F. Supp. 3d 153, 156, 158-59 (D. Md. Sept. 3, 2019) (granting in part a motion to reconsider an earlier ruling that the "deliberative process privilege does not apply to the

documents Plaintiffs requested because the government's intent is at the heart of the issue in this case"); *In re United States*, 678 Fed. Appx. 981, 990 (Fed. Cir. 2017) ("The privilege would be meaningless if all a litigant had to do was raise a question of intent to warrant disclosure.").

Even under Plaintiff's rationale for overcoming the deliberative process privilege – to provide evidence of the agency's intent – an order prohibiting Defendants from asserting the deliberative process privilege as to *any* document at *any* point in this litigation would be plainly overbroad. Plaintiffs do not assert that every document over which Defendants may assert the privilege in this litigation will necessarily reveal the decisionmaker's intent.

### B. Plaintiffs Have Not Shown, or Even Argued, that the Documents Are Relevant

In fact, Plaintiffs have not shown, or even argued, that *any* of the documents contained on the privilege log are relevant to their claims. *See In re Delphi Corp.*, 276 F.R.D. at 85 (in evaluating deliberative process assertions, courts should consider, *inter alia*, "the relevance of the evidence the agency seeks to protect"). The documents listed on the privilege log primarily consist of internal emails discussing various aspects of the draft Rule, legal memoranda analyzing the proposed Rule, and various drafts including drafts of the Rule and the notice of proposed rulemaking. Those documents are irrelevant to Plaintiffs' claims, and Plaintiffs make no attempt to show otherwise. For instance, Plaintiffs' APA claims allege that the Rule is allegedly contrary to certain federal statutes (the Immigration and Nationality Act and the Rehabilitation Act) and is arbitrary and capricious. Documents relating to the agency's internal deliberations are simply not relevant to those claims. The contrary-to-law claims require a determination of the meaning of the statutory term "public charge," and Defendants are aware of no decision holding that courts should interpret statutes by considering internal agency emails or memoranda. *See New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 64 (2d Cir. 2020) (discussing canons of statutory construction relevant to Plaintiffs' contrary-to-law claims, which did not include examining internal agency deliberative documents).

Similarly, the arbitrary-and-capricious claims turn on, for example, whether DHS provided an adequate explanation for its changed definition and for the expanded list of relevant public benefits, and whether commenters had a sufficient opportunity to comment on the Rule's definition of "public charge." *Id*. at 81-86; *New York v. United States Dep't of Homeland Sec.*, 2020 U.S. Dist. LEXIS 134494, at *26-28 (S.D.N.Y. July 29, 2020). Plaintiffs do not, and cannot, explain how internal emails, memoranda, or drafts could possibly be relevant to those claims, which can be decided solely by considering the Notice of Proposed Rulemaking and the Rule.[8]

To the extent that Plaintiffs believe the documents are relevant to their equal protection claims, that position is surprising because Plaintiffs argued for, and the Court authorized, discovery on their equal protection claims. Plaintiffs cannot have it both ways – they cannot simultaneously insist on discovery for their equal protection claims and also demand that the

---

[8] Plaintiffs' position is especially perplexing because the Second Circuit *has already ruled in their favor* on their APA claims, making Plaintiffs' insistence that the government expand the administrative record pertaining to those claims all the more baseless.

claims be decided on the basis of an administrative record. If Plaintiffs believe Defendants are in the possession of documents relevant to their equal protection claims, they may serve Rule 34 requests targeted to those documents. *See In re Delphi Corp.*, 276 F.R.D. at 85 (in evaluating deliberative process assertions, courts should consider, *inter alia*, "the availability of other evidence"). But even if the administrative record were somehow still relevant to Plaintiffs' equal protection claims, Plaintiffs do not identify any document listed on the administrative record privilege log that is actually relevant to their equal protection claims. The mere fact that a document was included on the log pursuant to an order in the *Washington* case does not imply that it goes to the issue of discriminatory intent. Again, Plaintiffs have not even attempted to show otherwise.

### C. The Documents Listed on the Privilege Log Are Not the Types of Documents That Are Included in an Administrative Record

Even if the Court were to determine that the deliberative process privilege does not apply to the documents listed on the privilege log, it would not follow that those documents should be produced to Plaintiffs. The documents were listed on a privilege log for the administrative record. But Defendants have always maintained that internal emails, memoranda, drafts, and other documents relating to the agency's process of formulating the Rule are *not* part of an administrative record in the first place. *See, e.g.*, Case No. 19-7777, ECF No. 215, at 2 ("predecisional and deliberative documents 'are not part of the administrative record to begin with'"); *Washington v. DHS*, No. 19-5210, ECF No. 198, at 2, 9-15 (E.D. Wash.) (arguing that such documents "are not properly part of an administrative record").

Defendants' position that these documents – by their nature and regardless of whether they are privileged – are not part of an administrative record is well supported. For example, the privilege log lists various memoranda, but it has been the law for almost 75 years that "internal memoranda made during the decisional process . . . are never included in a record." *Norris & Hirschberg, Inc. v. SEC*, 163 F.2d 689, 693 (D.C. Cir. 1947); *see also Madison Cty. Bldg. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 622 F.2d 393, 395 n.3 (8th Cir. 1980) (stating that "staff memoranda and recommendations . . . used by an agency in reaching a decision . . . may be excluded from the record"). More generally, "courts have consistently recognized that, for the purpose of judicial review of agency action, deliberative materials antecedent to the agency's decision fall outside the administrative record." *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 312 (S.D.N.Y. 2012). This is because APA review is of the "agency's stated justification, not the predecisional process that led up to the final, articulated decision." *Tafas v. Dudas*, 530 F. Supp. 2d 786, 794 (E.D. Va. 2008). In sum, whether or not the Court determines that these documents are privileged, they are not the types of documents that belong in an administrative record in the first place.

### D. An Inquiry Into Executive Motivation Is, At Best, Premature Before the Standard of Review Is Determined

The Court has not yet determined the relevant standard of review for Plaintiffs' equal protection claims. *See New York*, 2020 U.S. Dist. LEXIS 134494, at *28-29. If those claims are governed by the deferential standard of review in *Hawaii v. Trump*, 138 S. Ct. 2392 (2018), as

9

Defendants have argued previously, *see e.g.*, Case No. 19-7777, ECF No. 131 at 3-4; ECF No. 141 at 41-42; ECF No. 206 at 3-4, then intrusions into executive branch motivation would be unnecessary and, indeed, improper. *See Mayor of Balt. v. Trump*, 2019 U.S. Dist. LEXIS 219262, at *27-33 (D. Md. Dec. 19, 2019) (holding *Hawaii* standard applicable to challenge to State Department public charge guidance and finding discovery inconsistent with *Hawaii*); *cf. CASA de Md., Inc. v. Trump*, 971 F.3d 220 (4th Cir. 2020) (the Rule falls within "an area where the Constitution commands 'special judicial deference' to the political branches in light of the intricacies and sensitivities inherent in immigration policy"). The Court should first determine the appropriate standard of review before evaluating whether to overrule any deliberative process privilege assertions.

### E. Holding the Deliberative Process Privilege Inapplicable Would Harm the Federal Government's Decisionmaking Process

The object of the deliberative process privilege "is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government." *In re Delphi Corp.*, 276 F.R.D. at 84 (quoting *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001)). "If deliberative communications were not protected from discovery, there could be a chilling effect on candid discussions among agency employees." *Id.* Accordingly, courts consider "the possibility that disclosure will inhibit future candid debate among agency decision-makers." *Id.* at 85. Finding the privilege inapplicable here would discourage open and frank discussion among agency officials, particularly on high-profile policies that are likely to lead to litigation. *See N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51 (1975) ("[H]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process.'"). The effect would be to harm the decisionmaking process and ultimately the quality of agency decisions. Indeed, Plaintiffs' purported deliberative process privilege exception would generally discourage open discussion even if the relevant agency action is ultimately never subject to a legal claim turning on intent. When agency officials are deliberating about a prospective policy, they cannot know ex ante which claims a hypothetical plaintiff will bring in a future litigation. The mere prospect that a plaintiff could bring a claim implicating an agency's intent—which would thus obviate the privilege, under Plaintiffs' rule—would thus chill open discussion among agency officials to the detriment of the decisionmaking process.

5. Completion of Privilege Review

The parties dispute whether defendants should commit to a date certain to complete their privilege review and produce a final privilege log.

**Plaintiffs' Position**

Defendants produced their first partial privilege log more than four months ago, on June 12, 2020. Yet defendants' review of the administrative record is still ongoing, and they refuse to commit to completing their review by a date certain. Defendants indicated in a recent filing that their privilege review is far from complete, and suggested that they may yet add

10

thousands more entries to the privilege log—which currently includes only 208 entries. In defendants' last status report in *State of Washington* v. *U.S. Dep't of Homeland Security*, they explained that they had nearly completed their initial privilege review of 48,339 documents batched for review, but expected that "less than 10,000 of the documents will require a second level review," which had not yet begun. No. 19-cv-5210-RMP, ECF No. 252 at 2 (E.D. Wash. Oct. 2, 2020) (Ex. C). The documents awaiting second level review "include many documents that contain third party equities and which Defendants expect to include in future installments of the privilege log after consulting with the appropriate third parties." *Id.* at 3. Defendants should not be allowed to drag out the privilege review process indefinitely, and should complete the review and produce a final privilege log by November 16, 2020.[9]

### Defendants' Position

Defendants strongly oppose Plaintiffs' request that Defendants produce a final privilege log for the administrative record by November 16, 2020.[10] Plaintiffs do not identify any reason why they supposedly need the log by that date. And considering that Plaintiffs have not identified any relevance of the privilege log documents to their claims, as discussed above, it is difficult to imagine why the log must be completed by then.

In any event, Plaintiffs appear not to understand the process that Defendants are undergoing to produce the privilege log. It is not a "review of the administrative record," as Plaintiffs claim. Rather, Defendants collected a vast amount of electronic data from numerous custodians and have been reviewing those roughly 50,000 documents to identify materials that appear to fall within the scope of the order in *Washington v. DHS*, to identify any applicable privileges for those documents, and to consult with other agencies as necessary. It is an enormous undertaking requiring significant agency resources to complete. The agencies are committed to finishing the privilege log in a timely manner and, in recent weeks, USCIS assigned many agency attorneys to a temporary detail to conduct an initial review of the remaining documents, and that has greatly increased the pace of the review.

Nevertheless, a substantial amount of work remains, which cannot reasonably be completed by November 16. There are approximately 8,500 documents which require a second level review and a significant number of those are expected to require privilege descriptions, which are time consuming to draft. Moreover, many of those documents are expected to involve other agency equities, and Defendants may have to confer with those agencies to determine appropriate privileges. Defendants currently anticipate completing the log by the end of December. That timeframe takes into account the fact that Defendants are also currently reviewing documents in connection with discovery in parallel cases in the Eastern District of Washington and the Northern District of Illinois, and that Defendants expect to soon receive discovery requests in this case as well. If Plaintiffs here continue to insist on unreasonable

---

[9] Plaintiffs intend to confer with defendants after reviewing any additional entries and, if necessary, raise additional issues with the Court at that time. Plaintiffs also reserve their right to challenge specific assertions of privilege after the outstanding issues regarding defendants' deficient entries have been resolved.

[10] As Defendants have stated previously, Defendants agreed to provide a copy of the *Washington* privilege log to Plaintiffs here as a courtesy and only to the extent Defendants produced it in *Washington*. Defendants have always disputed that a privilege log is required in this case, and Defendants' position is supported by the majority of courts to have considered the question. *See* Case No. 19-7777, ECF No. 215 at 2-3.

timeframes that fail to consider Defendants' competing discovery obligations in parallel litigation, it may be appropriate to seek consolidation of this matter with the other parallel cases by the Judicial Panel on Multidistrict Litigation so that discovery can be managed by one court across the various cases.

* * *

The parties are prepared to further address these issues in whatever manner is most convenient for the Court, and to answer any questions the Court may have.

Respectfully,

By: */s/ Daniel S. Sinnreich*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Andrew J. Ehrlich
Jonathan H. Hurwitz
Elana R. Beale
Robert J. O'Loughlin
Daniel S. Sinnreich
Amy K. Bowles
Leah J. Park

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
aehrlich@paulweiss.com
jhurwitz@paulweiss.com
ebeale@paulweiss.com
roloughlin@paulweiss.com
dsinnreich@paulweiss.com
abowles@paulweiss.com
lpark@paulweiss.com

**CENTER FOR CONSTITUTIONAL RIGHTS**
Ghita Schwarz
Brittany Thomas
Baher Azmy

666 Broadway
7th Floor
New York, New York 10012
(212) 614-6445

gschwarz@ccrjustice.org
bthomas@ccrjustice.org
bazmy@ccrjustice.org

**THE LEGAL AID SOCIETY**
Susan E. Welber, Staff Attorney, Law Reform Unit
Kathleen Kelleher, Staff Attorney, Law Reform Unit
Susan Cameron, Supervising Attorney, Law Reform Unit
Hasan Shafiqullah, Attorney-in-Charge, Immigration Law Unit

199 Water Street, 3rd Floor
New York, New York 10038
(212) 577-3320
sewelber@legal-aid.org
kkelleher@legal-aid.org
scameron@legal-aid.org
hhshafiqullah@legal-aid.org

*Attorneys for Plaintiffs Make the Road New York, African Services Committee, Asian American Federation, Catholic Charities Community Services (Archdiocese of New York), and Catholic Legal Immigration Network, Inc.*

**LETITIA JAMES**
*Attorney General of the State of New York*

By: /s/ *Ming-Qi Chu*
Ming-Qi Chu
  *Section Chief, Labor Bureau*
Matthew Colangelo
  *Chief Counsel for Federal Initiatives*
Elena Goldstein
  *Deputy Bureau Chief, Civil Rights*
Amanda Meyer, *Assistant Attorney General*
Abigail Rosner, *Assistant Attorney General*
Office of the New York State Attorney General
New York, New York 10005
Phone: (212) 416-8689
Ming-qi.chu@ag.ny.gov

*Attorneys for the States of New York, Connecticut, and Vermont and the City of New York*

| | |
|---|---|
| AUDREY STRAUSS<br>Acting United States Attorney | JEFFREY BOSSERT CLARK<br>Acting Assistant Attorney General |
| | ALEXANDER K. HAAS<br>Director, Federal Programs Branch |
| | /s/ *Joshua M. Kolsky*<br>ERIC J. SOSKIN<br>Senior Trial Counsel<br>KERI L. BERMAN<br>KUNTAL V. CHOLERA<br>JOSHUA M. KOLSKY, DC Bar No. 993430<br>U.S. Dept. of Justice, Civil Division,<br>Federal Programs Branch<br>1100 L Street, N.W., Rm. 12002<br>Washington, DC 20001<br>Phone: (202) 305-7664<br>Fax: (202) 616-8470<br>Email: joshua.kolsky@usdoj.gov |
| | *Counsel for Defendants* |