**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MAKE THE ROAD NEW YORK, AFRICAN
SERVICES COMMITTEE, CENTRAL
AMERICAN REFUGEE CENTER NEW YORK,
CATHOLIC CHARITIES COMMUNITY
SERVICES (ARCHDIOCESE OF NEW YORK),
CATHOLIC LEGAL IMMIGRATION
NETWORK, INC., ALICIA DOE, BRENDA
DOE, CARL DOE, DIANA DOE, and ERIC DOE,

          Plaintiffs,

      - against -

UR JADDOU, in her official capacity as Director
of United States Citizenship and Immigration
Services; the UNITED STATES CITIZENSHIP &
IMMIGRATION SERVICES; and ALEJANDRO
MAYORKAS, in his official capacity as Secretary
of Homeland Security; and the UNITED STATES
DEPARTMENT OF HOMELAND SECURITY,

          Defendants.

No. 19 Civ. 07993 (GBD) (OTW)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR ATTORNEYS' FEES AND EXPENSES**
**UNDER THE EQUAL ACCESS TO JUSTICE ACT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 1

    A.    The Public Charge Rule ...................................................................................... 1

    B.    Procedural History ............................................................................................. 3

    C.    Related Litigation............................................................................................... 5

ARGUMENT ...................................................................................................................... 6

I.    Plaintiffs Meet the Requirements for Entitlement to Attorneys' Fees and Costs ............... 6

    A.    Plaintiffs Are Prevailing Parties in This Action ................................................ 6

    B.    Defendants' Position Was Not Substantially Justified ....................................... 8

        1.    The Merits Rulings Already Have Determined the Government's Positions Were Unreasonable ...................................................... 9

        2.    Defendants Cannot Show Objective Indicia of Substantial Justification ............................................................................ 12

            a.    Objective Indicia Do Not Support Defendants' Position on the APA Claim........................................................... 13

            b.    Objective Indicia Do Not Support Defendants' Position on the Equal Protection Claim .......................................... 16

    C.    There Are No Special Circumstances That Would Make a Fee Award Unjust................................................................................................... 17

    D.    Public Policy Mandates a Fee Award in These Circumstances ........................... 18

II.    THE AMOUNT OF ATTORNEYS' FEES AND EXPENSES IS REASONABLE ....... 19

    A.    Plaintiffs' Hours Are Reasonable. ...................................................................... 19

    B.    Plaintiffs Discount the Lodestar With Extraordinary Billing Judgement Reductions............................................................................................... 21

    C.    Plaintiffs' Counsel's Hourly Rates Are Appropriately Calculated Under EAJA.................................................................................................... 22

    D.    Plaintiffs' Requested Expenses Are Reasonable. ................................................ 23

III.    CONCLUSION................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. United States,*
  154 Fed. Cl. 290 (2021) ...................................................................................22, 24

*Appling v. Kijakazi,*
  No. 21-CV-5091 (SLC), 2023 WL 4863744 (S.D.N.Y. July 31, 2023) ..................................31

*Buckhannon Board & Care Home v. W.V. Dep't of Home and Human Res.,*
  532 U.S. 598 (2001) ...........................................................................................14

*Casa De Maryland, Inc. v. Trump,*
  414 F. Supp. 3d 760 (D. Md. 2019), *rev'd and remanded*, 971 F.3d 220 (4th
  Cir. 2020), *reh'g en banc granted, Casa De Maryland, Inc. v. Trump,* 981
  F.3d 311 (4th Cir. 2020) ...................................................................................13, 22

*Casa De Maryland, Inc. v. Trump,*
  971 F.3d 220 (4th Cir. 2020) ...........................................................................14, 22

*Casa De Maryland, Inc. v. Trump,*
  981 F.3d 311 (4th Cir. 2020) ...............................................................................14

*Chavez- Alvarez v. Commissioner of Social Security,*
  2021 WL 3207035, No. 1:19-cv-01373-EPG (E.D. Cal. 2021) .......................................21, 22

*Chursov v. Miller,*
  2019 WL 5092007 (S.D.N.Y. Oct. 11, 2019) ...........................................................18

*City & Cnty. of San Francisco v. U.S. Citizenship & Immigr. Servs.,*
  408 F. Supp. 3d 1057 (N.D. Cal. 2019), *aff'd*, 981 F.3d 742 (9th Cir. 2020) .........................13

*City & Cnty. of San Francisco v. United States Citizenship & Immigr. Servs.,*
  981 F.3d 742 (9th Cir. 2020) ...........................................................................14, 24

*City and County of San Francisco,* 944 F.3d 944 F.3d 773 (9th Cir. 2019) ................................23

*E.E.O.C. v. Clay Printing Co.,*
  13 F.3d 813 (4th Cir. 1994) ...........................................................................16, 17, 21

*Cody v. Caterisano,*
  631 F.3d 136 (4th Cir. 2011) ...............................................................................21

*Commissioner, INS v. Jean,*
  496 U.S. 154 (1990) ...................................................................................17, 27, 30

*Cook Cnty., Illinois v. McAleenan*,
  417 F. Supp. 3d 1008 (N.D. Ill. 2019), *aff'd on other grounds sub nom. Cook Cnty., Illinois v. Wolf*, 962 F.3d 208 (7th Cir. 2020) ...............................................13

*Cook Cnty., Illinois v. Wolf*,
  962 F.3d 208 (7th Cir. 2020) ............................................................................14

*Crandon v. United States*,
  113 S. Ct. 73 (1992).........................................................................................17

*Crosby v. Halter*,
  152 F.Supp.2d 955 (E.D. Ill. 2001).............................................................19, 25

*Dague v. City of Burlington*,
  976 F.2d 801 (2d Cir. 1991)..........................................................................27, 29

*Dep't of Homeland Sec. v. New York*,
  140 S. Ct. 599 (2020)....................................................................................12, 13

*Dep't of Homeland Sec. v. New York*,
  141 S. Ct. 1370 (2021).......................................................................................13

*Dep't of Homeland Sec. v. New York*,
  No. 20-449 (Mar. 9, 2021)..................................................................................13

*DiMartile v. Hochul*,
  80 F.4th 443 (2d Cir. 2023) ...............................................................................15

*Fed. Election Comm'n v. Pol. Contributions Data, Inc.*,
  995 F.2d 383 (2d Cir. 1993)...............................................................................18

*Fischer v. SJB–P.D. Inc.*,
  214 F.3d 1115 (9th Cir. 2000) ............................................................................15

*Friends of Boundary Waters Wilderness v. Thomas*,
  53 F.3d 881 (8th Cir. 1995) ...............................................................................20

*Gomez-Beleno v. Holder*,
  644 F.3d 139 (2d Cir. 2011)...............................................................................14

*Harris v. Sullivan*,
  968 F.2d 263 (2d Cir. 1992)...............................................................................31

*Healey v. Leavitt*,
  485 F.3d 63 (2d Cir. 2007)............................................................................16, 27

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...............................................................27

*Hines v. City of Albany*,
862 F.3d 215 (2d Cir. 2017)..............................................................30

*HomeAway.com, Inc.* v. *City of New York*,
523 F.Supp.3d 573 (S.D.N.Y. 2021)..................................................16

*Kerin v. U.S. Postal Serv.*, 218 F.3d 185 (2d Cir. 2000) ......................................27, 31

*Kravitz* v. *U.S. Department of Commerce*,
No. 2 8:18-cv- 01041-GJH ................................................................30

*Kuzma v. I.R.S.*,
821 F.2d 930 (2d Cir. 1987)...............................................................31

*Lunday v. City of Albany*,
42 F.3d 131 (2d Cir. 1994) (per curiam)............................................27

*Make the Rd. N.Y. v. Cuccinelli*,
2019 WL 6498283 (S.D.N.Y. Dec. 2, 2019) .....................................12

*Make the Rd. N.Y. v. Cuccinelli*,
419 F. Supp. 3d 647 (S.D.N.Y. 2019)............................................ *passim*

*Make the Road N.Y. v. Blinken*,
No. 1:19-cv-11633-GBD-OTW ..........................................................10

*Marcus v. Shalala*,
17 F.3d 1033 (7th Cir.1994) ...............................................................17

*Merck Eprova AG v. Brookstone Pharms., LLC*,
No. 09-CV-9684 (RJS), 2013 WL 3146768 (S.D.N.Y. June 10, 2013) ................................31

*Myers v. Sullivan*,
916 F.2d 659 (11th Cir. 1990) .............................................................22

*New York v. U.S. Dep't of Homeland Sec.*,
2020 WL 95815 (2d Cir. Jan 8, 2020) .................................................12

*New York v. U.S. Dep't of Homeland Sec.*,
969 F.3d 42 (2d Cir. 2020)............................................................. *passim*

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
711 F.2d 1136 (2d Cir. 1983)..............................................................28

*Oguachuba v. INS*,
706 F.2d 93 (2d Cir. 1983)..................................................................26

*Olson v. Wing*,
No. 02-CV-5873 (NG) (CLP), 2007 WL 680783 (E.D.N.Y. Mar. 2, 2007) ...................15, 27

*Padula v. Colvin*,
    602 Fed. Appx. 25 (2d Cir. 2015) ...................................................................29

*United States v. Paisley*,
    957 F.2d 1161 (4th Cir. 1992) ...............................................................17, 20

*Patrick v. Shinseki*,
    668 F.3d 1325 (Fed. Cir. 2011) ...................................................................18

*People Against Police Violence v. City of Pittsburgh*,
    520 F.3d 226 (3rd Cir. 2008) .......................................................................16

*Pierce v. Underwood*,
    487 U.S. 552 (1988) ....................................................................................20

*R.F.M. v. Nielsen*,
    2020 WL 6393583, No. 18-CV-5068 (LLS) (OTW) (S.D.N.Y. May 4, 2020).....................31

*Rugless v. Comm'r of Soc. Sec.*,
    No. 6:11-CV-6624 MAT, 2014 WL 2648772 (W.D.N.Y. June 13, 2014).............................20

*Sabo v. United States*,
    717 F. Appx. 986 (Fed. Cir. 2017).................................................................30

*Schwebel v. Crandall*,
    2021 WL 2269523 (S.D.N.Y. June 3, 2021) ...................................................17

*Select Milk Producers, Inc. v. Veneman*,
    304 F. Supp. 2d 45 (D.D.C. 2004), *aff'd in relevant part*, 400 F.3d 939 (D.C.
    Cir. 2005) ....................................................................................................16

*Smith ex rel. Smith v. Apfel*,
    2001 WL 199505, No. 99 C 1139 (N.D. Ill. 2001).........................................19, 24

*Sullivan v. Hudson*,
    490 U.S. 877 (1989)......................................................................................27

*Trichilo v. Sec'y of Health & Human Servs.*,
    823 F.2d 702 (2d Cir.), *supplemented by* 832 F.2d 743 (2d Cir. 1987)............................30, 31

*U.S. S.E.C. v. Zahareas*,
    374 F.3d 624 (8th Cir. 2004) ........................................................................21

*Vacchio v. Ashcroft*,
    404 F.3d 664 (2d Cir. 2005)....................................................................14, 15

*Vellone v. Kijakazi*,
    2022 WL 276842 (SDNY 2022).................................................................31

*Vincent v. Comm'r of Soc. Sec.*,
651 F.3d 299 (2d Cir. 2011)..............................................................26

*Washington v. U.S. Dep't of Homeland Sec.*,
408 F. Supp. 3d 1191 (E.D. Wash. 2019), *aff'd in part, vacated in part sub*
*nom. City & Cnty. of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 981
F.3d 742 (9th Cir. 2020) ............................................................14

**Statutes**

28 U.S.C. §§ 2412(a), (d)(1)(A)&(B) ...............................................31

28 U.S.C. § 2412(d) .....................................................................9

28 U.S.C. §2412(d)(1)(A)......................................................16, 26

28 U.S.C. § 2412(d)(2)(A)(ii) .......................................................31

28 U.S.C. § 2412(d)(2)(B) ............................................................26

Administrative Procedure Act, 5 U.S.C. § 706(2)(A)......................11, 23

Immigration and Nationality Act Section 212(a)(4), 8 U.S.C. § 1182(a)(4) ........................ *passim*

**Other Authorities**

8 C.F.R. § 212.21(a).....................................................................10

84 Fed. Reg. 41,292 .......................................................................9

87 Fed. Reg. 55,472-55,473 (Sept. 9, 2022) ....................................13

87 Fed. Reg. 55,473, 55,493 (Sept. 9, 2022) ..................................20

Fourth Circuit Local Rule 35(c)......................................................23

H. Rep. No. 1418, 96th Cong., 2d Sess. 18 (1980)...........................17

S. Rep. No. 253, 96th Cong., 1st Sess. (1979) .................................19

S. Rep. No. 586, 98th Cong., 2d Sess. 11 (1984) .............................17

U.S. Constitution Fifth Amendment ................................11, 12, 18, 19

# INTRODUCTION

Plaintiffs successfully challenged a Department of Homeland Security ("DHS") rule that sought to dramatically expand the government's power to exclude immigrants from lawful permanent residence ("LPR"). The Inadmissibility on Public Charge Grounds Rule (the "Rule") imposed drastic restrictions on the ability of low-income noncitizens (primarily persons already living in the U.S. with their families) to achieve LPR status. For the first time in history, the rule would have imposed a wealth test on the primary pathway to U.S. citizenship for immigrants, fundamentally transforming U.S. immigration law by conditioning lawful permanent residence on ample income and wealth accumulation. Plaintiffs' success was of great importance. Not only does denial of status adjustment subject noncitizens to removal and separation from their families, the Rule's particular formulation of public charge created a tremendous "chilling effect" among immigrant families, causing even non-citizens who are not subject to public charge to forego accessing crucial benefits essential to health, housing, and nutritional needs.

Plaintiffs now, through counsel, seek recovery of fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, for time reasonably expended in this matter. Plaintiffs are entitled to reasonable fees under the EAJA because they are the "prevailing part[ies]" in this litigation and Defendants' position was not "substantially justified." 28 U.S.C. § 2412(d).

# BACKGROUND

## A.      The Public Charge Rule

This lawsuit concerned Defendants' promulgation of the Public Charge Grounds Rule by the Department of Homeland Security on August 14, 2019. 84 Fed. Reg. 41,292. DHS enacted the Rule under the purported rationale that it interpreted and applied Section 212(a)(4) of the

Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(4).[1] The Rule established new criteria for determining whether a noncitizen applying for admission into the United States or for adjustment of status was ineligible because he or she was likely to become a "public charge."

Pursuant to section 1182(a)(4), non-citizens are inadmissible and ineligible for lawful permanent residence (commonly known as "green card" status) if, in the opinion of DHS personnel, they are "likely at any time to become a public charge." 8 U.S.C. § 1182(a)(4). Judicial and administrative opinions for more than a century interpreted the term "public charge" to refer narrowly to noncitizens who are (or are expected to be) unable to work or support themselves.

The Rule sought a drastic change to that long-standing norm by imposing unprecedented restrictions on the ability of low- and moderate-income noncitizens to achieve lawful permanent residence. Under the Rule, a "public charge" was any noncitizen likely, for an aggregate of twelve months over three years at any time in the future, to receive cash or certain supplemental non-cash public benefits (including Medicaid; SNAP (food stamps); and crucial federal housing benefits like Section 8). 8 C.F.R. § 212.21(a). The Rule thus rendered non-citizens inadmissible, and ineligible for LPR status, if they were predicted to receive such benefits, even in small amounts, irrespective of their ability to work and care for themselves. Defendants themselves predicted that the result of adopting this new definition would be that significantly more people would be found inadmissible and would be denied LPR status. For example, the nonpartisan Migration Policy Institute estimated that more than half of all family-based green card applicants could not meet the factor the Rule weights most heavily in favor of an immigrant's adjustment of

---

[1] The Court has related this case to *Make the Road New York v. Blinken*, No. 1:19-cv-11633-GBD-OTW. Plaintiffs in that case have sought attorneys' fees through a motion filed on February 27, 2024. ECF No. 155.

status. ECF No. 1 [Complaint ¶ 4].[2] Moreover, Plaintiffs' experts found that intending immigrants denied admission based on the Rule were more likely to be Black, Latine, and Indigenous people of color from central and south America and the Caribbean, which Plaintiffs alleged in support of the claim that the Rule was motivated by racial animus. Furthermore, beyond the impact of foreclosing the immigration prospects of intending immigrants, the Rule caused tens of thousands of noncitizens to refrain from seeking benefits for which they are eligible for fear of immigration consequences to themselves or their family members.

### B.   Procedural History

On August 27, 2019, Plaintiffs filed a 115-page Complaint requesting that the Court issue a declaratory judgment that the Rule is unauthorized and contrary to the laws of the United States, vacate and set aside the Rule, enjoin Defendants from implementing the Rule or taking any actions to enforce it, and award attorneys' fees. ECF No. 1 [Complaint] at 115. On September 9, 2019, less than a month after the Rule was published, and five weeks before the Rule was to become effective, Plaintiffs filed a motion for a preliminary injunction to enjoin its implementation and enforcement. ECF No. 38. The motion asserted the following legal claims: (1) the Rule was inconsistent with the Public Charge Statute; (2) the Rule was arbitrary and capricious in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A); and (3) the Rule violated the Fifth Amendment to the U.S. Constitution because it was motivated by animus against non-white immigrants. *Id.* Plaintiffs' motion was supported by a 40-page memorandum of law and eleven declarations, including four expert declarations. ECF Nos. 39-50.

---

[2] More extensive factual and procedural background and history are provided in the following prior briefing and court orders: Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction at 5-15 (ECF No. 39); *Make the Rd. N.Y. v. Cuccinelli*, 419 F. Supp. 3d 647, 654-66  (S.D.N.Y. 2019); *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 50-58 (2d Cir. 2020).

After extensive expedited briefing and oral argument, the District Court granted Plaintiffs' motion on October 11, 2019, holding that Plaintiffs were likely to succeed on the merits of their claims, on the grounds that the Rule violated section 1182(a)(4) of the INA, was arbitrary and capricious, and would violate the Fifth Amendment's guarantee of equal protection. *Make the Rd. N.Y. v. Cuccinelli*, 419 F. Supp. 3d 647 (S.D.N.Y. 2019) ("*Cuccinelli*"). The District Court could not have been more forceful, holding that the proposed definition of "public charge" had "*absolutely no support in the history of U.S. immigration law*." *Id.* at 663 (emphasis added).

The District Court and the Second Circuit denied Defendants' subsequent motions for a stay pending appeal. *Make the Rd. N.Y. v. Cuccinelli*, 2019 WL 6498283 (S.D.N.Y. Dec. 2, 2019); *New York v. U.S. Dep't of Homeland Sec.*, 2020 WL 95815 (2d Cir. Jan 8, 2020).[3] On January 27, 2020, the Supreme Court stayed the preliminary injunction pending appeal, but issued no opinion explaining its order. *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599 (2020). Defendants began implementing the Rule in late February 2020.

Following expedited briefing and argument on the merits, on August 4, 2020, in a 110-page opinion, the Second Circuit panel unanimously affirmed the preliminary injunction while limiting its geographic scope. The panel, equally as resounding as the District Court, agreed that the Rule was inconsistent with section 1182(a)(4), holding that "Congress's intended meaning of 'public charge' *unambiguously forecloses* the Rule's expansive interpretation." *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 75 (2d Cir. 2020) (emphasis added) ("*New York v. DHS*").

---

[3] This case was procedurally consolidated for pre-trial purposes with a separate case asserting most of the same claims in *State of New York* v. *U.S. Department of Homeland Security*, No. 19-cv-7777-GBD-OTW (Dkt. No. 178).

The Second Circuit also held the government's rulemaking to be arbitrary and capricious. *Id.* at 80-86.

Defendants filed a petition for a writ of certiorari, which the Supreme Court granted on February 22, 2021. *Dep't of Homeland Sec. v. New York*, 141 S. Ct. 1370 (2021). On March 9, 2021, Defendants voluntarily dismissed their petition for certiorari. *Dep't of Homeland Sec. v. New York*, No. 20-449 (Mar. 9, 2021). The Supreme Court's stay thus dissolved by its own terms, *Dep't of Homeland Sec.* v. *New York*, 140 S. Ct. 599, thereby allowing the preliminary injunction to take effect and leaving the Second Circuit's affirmance as the final adjudication on the merits in this action.

On March 15, 2021, DHS rescinded the Rule. On September 9, 2022, the Department issued a superseding rule, which became effective on December 23, 2022. 87 Fed. Reg. 55,472-55,473 (Sept. 9, 2022). The superseding rule omits the limitations imposed by the prior Rule, and returns the public charge ground of inadmissibility to its previous far narrower scope. Miller Decl. Exh. 8 (DHS Statement). On March 3, 2023, Plaintiffs filed a notice of voluntary dismissal. ECF No. 342.

### C. Related Litigation

Four other federal district courts heard challenges to the Rule, and all of them granted preliminary injunctions prohibiting Defendants from implementing or enforcing it. *Casa De Maryland, Inc. v. Trump*, 414 F. Supp. 3d 760 (D. Md. 2019), *rev'd and remanded*, 971 F.3d 220 (4th Cir. 2020), *reh'g en banc granted*, *Casa De Maryland, Inc. v. Trump*, 981 F.3d 311 (4th Cir. 2020); *Cook Cnty., Illinois v. McAleenan*, 417 F. Supp. 3d 1008 (N.D. Ill. 2019), *aff'd on other grounds sub nom. Cook Cnty., Illinois v. Wolf*, 962 F.3d 208 (7th Cir. 2020); *City & Cnty. of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 408 F. Supp. 3d 1057 (N.D. Cal. 2019), *aff'd*, 981 F.3d 742 (9th Cir. 2020); *Washington v. U.S. Dep't of Homeland Sec.*, 408 F. Supp. 3d 1191

(E.D. Wash. 2019), *aff'd in part, vacated in part sub nom. City & Cnty. of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 981 F.3d 742 (9th Cir. 2020). Like the Second Circuit, the Seventh and Ninth Circuits affirmed the preliminary injunctions issued by district courts in their jurisdictions. *See Cook Cnty., Illinois v. Wolf*, 962 F.3d at 234; *City & Cnty. of San Francisco v. United States Citizenship & Immigr. Servs.*, 981 F.3d at 763. While a panel of the Fourth Circuit reversed a preliminary injunction issued by the District of Maryland, *Casa De Maryland, Inc. v. Trump*, 971 F.3d at 263, the Circuit subsequently granted rehearing en banc, vacating the panel decision. *Casa De Maryland, Inc. v. Trump*, 981 F.3d at 314. All of these other actions have been voluntarily withdrawn in light of the issuance of the superseding rule.

## ARGUMENT

### I. Plaintiffs Meet the Requirements for Entitlement to Attorneys' Fees and Costs

Under the EAJA, "eligibility for a fee award in any civil action requires: (1) that the claimant be a 'prevailing party'; (2) that the Government's position was not 'substantially justified'; [and] (3) that no 'special circumstances make an award unjust.'" *Gomez-Beleno v. Holder*, 644 F.3d 139, 144 (2d Cir. 2011) (quoting *Commissioner, INS v. Jean,* 496 U.S. 154, 158 (1990)). Plaintiffs satisfy all of these requirements.

#### A. Plaintiffs Are Prevailing Parties in This Action

A litigant is entitled to reasonable fees and expenses under the EAJA if it is a "prevailing party" within the meaning of the statute. Status as a prevailing party is conferred "whenever there is a 'court ordered chang[e] [in] the legal relationship between [the plaintiff] and the defendant' or a 'material alteration of the legal relationship of the parties.'" *Vacchio v. Ashcroft*, 404 F.3d 664, 674 (2d Cir. 2005) (quoting *Pres. Coal. of Erie Cnty. v. Fed. Transit Admin.*, 356 F.3d 444, 452 (2d Cir. 2004)) (alterations in original); *see also Buckhannon Board & Care Home v. W.V. Dep't of Home and Human Res.*, 532 U.S. 598, 602 (2001); *Fischer v. SJB–P.D. Inc.*, 214

F.3d 1115, 1118 (9th Cir. 2000) (material alteration of the parties' legal relationship occurs when "the plaintiff can force the defendant to do something he otherwise would not have to do"). When a party succeeds in obtaining a "preliminary injunction but never obtains a final judgment, attorney's fees are proper if the court's action in granting the preliminary injunction is governed by its assessment of the merits." *Vacchio,* 404 F.3d at 673 (quoting *Haley v. Pataki*, 106 F.3d 478, 483 (2d Cir. 1997)); *DiMartile v. Hochul*, 80 F.4th 443, 451 (2d Cir. 2023) ("'prevailing party' is one who obtains 'actual relief on the merits,'" which may include preliminary injunction, that "'alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff'") (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)).

Plaintiffs here are prevailing parties. The District Court granted Plaintiffs the relief they sought—a preliminary injunction—based on a thorough assessment of the merits of Plaintiffs' claims, and the Second Circuit unanimously affirmed in a ruling that has become the final adjudication on the merits. The District Court was ardent that, absent an injunction, meaningful and irreparable harm would be "immediate and significant," noting that the government itself has recognized that the Rule would cause "economic and public health harms." *Cuccinelli*, 419 F. Supp. 3d at 665-66 (citing 83 Fed. Reg. at 51,270). The Second Circuit's decision was similarly detailed and emphatic, finding that "the Rule has *already* had a chilling effect on non-citizen use of public benefits," and affirming the conclusion that the Rule would result in "established actual imminent" harms. *New York v. DHS*, 969 F.3d at 59, 86-87 (emphasis added); *see also Olson v. Wing,* No. 02-CV-5873 (NG) (CLP), 2007 WL 680783, at *1 (E.D.N.Y. Mar. 2, 2007) (plaintiff is prevailing party where the "preliminary injunction orders were based upon a finding of irreparable harm and an analysis of the merits of plaintiff's due process claims, as well as a

consideration of the equities"). Ultimately, Plaintiffs' position was vindicated and the harms imposed by the Rule were allayed when the government withdrew from the litigation in the Supreme Court, resulting in a return to implementation of section 1182(a)(4) consistent with its long-standing pre-2019 meaning. *See HomeAway.com, Inc.* v. *City of New York*, 523 F.Supp.3d 573, 583 (S.D.N.Y. 2021) (plaintiff was prevailing party where it obtained preliminary injunction which was later stayed, followed by city amending the challenged ordinance consistent with plaintiffs' position); *Select Milk Producers, Inc. v. Veneman*, 304 F. Supp. 2d 45, 52 (D.D.C. 2004) (plaintiffs who obtained preliminary injunction providing relief sought, and where claim was later mooted when agency promulgated new regulation consistent with plaintiffs' position, were "prevailing parties"), *aff'd in relevant part*, 400 F.3d 939, 942 (D.C. Cir. 2005); *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 228, 233 (3rd Cir. 2008) (plaintiffs were prevailing parties by obtaining preliminary injunction, which was lifted upon passage of a revised city ordinance that corrected the infirmities raised by the complaint).

### B. Defendants' Position Was Not Substantially Justified

The government may attempt to defeat a claim for attorneys' fees under the EAJA by satisfying its burden of showing that its position was "substantially justified." *Healey v. Leavitt*, 485 F.3d 63, 67 (2d Cir. 2007). The EAJA statute provides that a court "shall award" fees to the prevailing private party "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. §2412(d)(1)(A); *E.E.O.C. v. Clay Printing Co.*, 13 F.3d 813, 815 (4th Cir. 1994) ("The award is mandatory *unless* the government can demonstrate that its position was 'substantially justified.'"). To meet this burden, the government must "make a 'strong showing'" that both the agency action giving rise to the litigation and its positions taken during the litigation had a

reasonable basis in law and fact. *Jean*, 496 U.S. at 159 n.7; *see also* H. Rep. No. 1418, 96th

Cong., 2d Sess. 18 (1980) ("it is particularly appropriate to place the burden on the government"

to defeat a fee application under EAJA); S. Rep. No. 586, 98th Cong., 2d Sess. 11 (1984) (the

government "must [m]ake a 'strong showing' that its position was substantially justified.").

Defendants here are unable to shoulder that burden.

### 1. The Merits Rulings Already Have Determined the Government's Positions Were Unreasonable

Where a court has evaluated the merits of the government's position thoroughly and

persuasively, that ruling stands as the primary determinant of whether the government's position

was substantially justified. *See Clay Printing Co.*, 13 F.3d at 816 (holding that emphatic merits

decision was "essentially dispositive on the substantial justification issue"); *United States v.

Paisley*, 957 F.2d 1161, 1167 (4th Cir. 1992), cert. denied *sub nom. Crandon v. United States*,

113 S. Ct. 73 (1992) (decisions on the merits and the rationales underlying them "are the most

powerful available indicators of the strength, hence reasonableness, of the ultimately rejected

position"). As in the present case, where the agency's statutory interpretation was plainly

unreasonable, the merits decisions direct the result. *See Marcus v. Shalala*, 17 F.3d 1033, 1038

(7th Cir.1994) (strong language criticizing the Government's position in an opinion discussing

the merits of a key issue is evidence in support of a fee award). Rulings on the merits are

factored with particular weight during the EAJA analysis when those rulings directly address the

unreasonableness of the government's administrative action and/or litigation position, including

when the court has found arbitrary and capricious action or intentional discrimination. *See

Schwebel v. Crandall*, 2021 WL 2269523 (S.D.N.Y. June 3, 2021) (government's position was

not substantially justified where court had deemed government's conduct arbitrary and

capricious);

The District Court's issuance of the preliminary injunction was grounded in a forceful determination that Defendants' promulgation of the Rule, and the government's defense of that rule, have no reasonable basis in law or fact. The Court held that Plaintiffs were likely to succeed on their claims that Defendants acted in excess of statutory authority under section 1182(a)(4), arbitrarily and capriciously, and in violation of the Fifth Amendment's guarantee of equal protection. *Cuccinelli*, 419 F. Supp. 3d at 660–64. With respect to statutory authority, it was "abundantly clear" that "'public charge' has never been understood" to fit the definition proffered in the Rule, and "Defendants lack the authority to redefine 'public charge' as they have." *Id.* at 661; *see also Fed. Election Comm'n v. Pol. Contributions Data, Inc*., 995 F.2d 383 (2d Cir. 1993) (government's position was not substantially justified where Federal Election Commission's statutory interpretation was unreasonable in light of the plain language and legislative history of the statute); *Patrick v. Shinseki*, 668 F.3d 1325, 1333 & n. 6 (Fed. Cir. 2011) (reversing denial of EAJA fees on ground that determination of substantial justification must account for fact that court of appeals had "soundly rejected" defendants' position on the merits by holding that government's interpretation of statute "was wholly unsupported by either the plain language of the statute or its legislative history").

The District Court further held the Rule was arbitrary and capricious because "Defendants fail[ed] to provide any reasonable explanation for changing the definition of 'public charge' or the framework for evaluating whether a citizen is likely to become a public charge," and because "[t]here is no logic to [the Rule's] framework." *Cuccinelli*, 419 F. Supp. 3d at 663 (emphasis added); *see also* ECF No. 1 [Complaint] at ¶¶ 131-178; *Chursov v. Miller*, 2019 WL 5092007 (S.D.N.Y. Oct. 11, 2019) (government's position not substantially justified where denial of plaintiff's visa was "arbitrary, capricious, and without foundation in the record"); *Smith*

*ex rel. Smith v. Apfel*, 2001 WL 199505, No. 99 C 1139 (N.D. Ill. 2001) ("an examination of the decision on the merits is important in the EAJA determination … a finding that the government's position on the merits was "arbitrary and capricious" may be at odds with a later conclusion that the government's position was "substantially justified.") (quoting *United States v. Hallmark*, 200 F.3d 1076, 1081 (7th Cir. 2000)); *Crosby v. Halter*, 152 F.Supp.2d 955 (E.D. Ill. 2001) (same).[4] Furthermore, the District Court held that the Rule likely violated the Equal Protection guarantees of the Fifth Amendment because Defendants did not dispute that the Rule would disparately impact noncitizens of color and failed "to articulate a rational relationship between the disparity of treatment and some legitimate government purpose." *Cuccinelli*, 419 F. Supp. 3d at 664; *see also* ECF No. 1 [Complaint] at ¶¶ 16, 201-39.

The Second Circuit's unanimous decision affirming the preliminary injunction further demonstrates that Defendants' position was not substantially justified. The Court of Appeals found that the statutory meaning of public charge "unambiguously forecloses" DHS's expansive interpretation. *New York v. DHS*, 969 F.3d at 75. The Second Circuit also agreed with the District Court's conclusion that the promulgation of the Rule was arbitrary and capricious because Defendants' justifications for their interpretation of section 1182(a)(4) did not provide a "satisfactory explanation" for DHS's actions. *Id*. at 81. The District Court and Second Circuit's conclusions compel a finding that the government's position was not substantially justified.

Further support for the conclusion of the District Court and Second Circuit is found in the government's own actions in rescinding the Rule and promulgating a superseding rule. In so

---

[4] The government has admitted that arbitrary action cannot be substantially justified. In 1979, the Department of Justice proposed that fees should be awarded only when the government action is "arbitrary, frivolous, unreasonable or groundless." S. Rep. No. 253, 96th Cong., 1st Sess. (1979) at 15.

doing, Defendants explained that, "in contrast to the [Rule], [the superseding rule] would effectuate a more faithful interpretation" of the public charge ground of inadmissibility and "mitigate[] the risk of unequal treatment of similarly situated individuals." 87 Fed. Reg. 55,473, 55,493 (Sept. 9, 2022).

### 2. Defendants Cannot Show Objective Indicia of Substantial Justification

As a factor secondary to the predominance of a well-reasoned opinion on the merits, the views of other judges on the *same* legal issues may provide "objective indicia" of the reasonableness of the government's position. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). In *Pierce* the Court upheld a finding of no substantial justification despite the government's assertion that stays issued by another circuit and the Supreme Court on the same issue provided objective indicia of reasonableness. *Id.* In doing so, the Court held "the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified." *Id.*; *see also Friends of Boundary Waters Wilderness v. Thomas*, 53 F.3d 881, 885 (8th Cir. 1995) ("our conclusion that the Chief's position was plainly contrary to existing law counsels so strongly against the conclusion that the Chief's position was substantially justified that it must determine the outcome"); *Paisley*, 957 F.2d at 1167 (to find in a "judicial determination of merit in the Government's position proof that the position was at least one that 'could satisfy a reasonable person' … cannot be allowed to determine the matter"); *Rugless v. Comm'r of Soc. Sec.*, No. 6:11-CV-6624 MAT, 2014 WL 2648772, at *3 (W.D.N.Y. June 13, 2014) (a litigant's position "is not presumptively reasonable simply because two courts disagreed").

Defendants have attempted to meet their burden (in the opposition to Plaintiffs' Skeletal Fees Motion), by arguing that "[t]he reasonableness of Defendants' positions is underscored by

the fact that numerous federal judges—including a now-sitting Supreme Court Justice—agreed with the legal positions Defendants took in this case." ECF No. 348 at 3. On close inspection, this assertion collapses.

### a. Objective Indicia Do Not Support Defendants' Position on the APA Claim

Both the District Court and the Second Circuit ruled that Defendants violated the APA by enacting the Rule in an arbitrary and capricious manner. *Cuccinelli*, 419 F. Supp. 3d at 661-64; *New York v. DHS*, 969 F.3d at 80-86. This aspect of both rulings was independently sufficient to support the preliminary injunction, regardless of any other legal claims in the case. Most of the judges in the comparator cases identified by Defendants did *not* address the APA claim whatsoever. It is not enough that these few judges opined contrary to the case at bar on *some* claims; the opinions would only be relevant if they were to have analyzed the *same* legal claims that underpinned Plaintiffs' success here. In other words, the only objective indicia of the reasonableness of Defendants' position must come in the *analysis* of the *same* law and essential facts between the comparator case(s) and the rulings at bar. *See Cody v. Caterisano*, 631 F.3d 136, 145 (4th Cir. 2011) (objective indicia determination requires analyzing whether "reasonable arguments existed on both sides of *outcome determinative issues*") (emphasis added). A proposed comparator case will *not* be credited as evidence of substantial justification where "the main rationale[s]" between the two cases differed." *Chavez- Alvarez v. Commissioner of Social Security*, 2021 WL 3207035, No. 1:19-cv-01373-EPG, at *3 (E.D. Cal. 2021); *see also E.E.O.C. v. Clay Printing Co.*, 13 F.3d 813, 815 (4th Cir. 1994) ("*Why* a decision on the merits was made can be of particular importance" to determining substantial justification) (emphasis in original); *U.S. S.E.C. v. Zahareas*, 374 F.3d 624, 628 (8th Cir. 2004) (defendant's success "at various

stages in the litigation does not automatically grant the government immunity from EAJA liability … Instead, we must fully analyze the facts and law under the applicable standards.").

Defendants cannot meet their burden of establishing substantial justification by identifying other judges who declined to support a preliminary injunction in another case where the *reasoning* of those judges does not address the grounds upon which the injunction here was based—*viz.*, the APA and Equal Protection claims. As the court explained in *Chavez- Alvarez v. Comm'r of Soc. Sec.,* No. 1:19-CV-01373-EPG, 2021 WL 3207035, at *3 (E.D. Cal. July 29, 2021), reversing a denial of EAJA fees, "any other opinion by another court is not outcome determinative of the substantial justification of the Defendant's position in this case," where the cases proffered as "objective indicia" of substantial justification were inadequate due to "differences in the factual circumstances and legal underpinnings between them and the case at bar."

Plaintiffs analyze each of the three cases identified by Defendants as purportedly providing objective indicia of reasonableness as follows. First, the District Court of Maryland granted a preliminary injunction prohibiting Defendants from implementing or enforcing the Rule. *Casa De Maryland*, 414 F. Supp. 3d 760. That injunction was briefly invalidated by a 2-1 appellate panel decision, in which the majority engaged in *no analysis* of whether the policymaking process under the APA was arbitrary and capricious (the district court also did not rule on that claim). *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220 (2020). The Fourth Circuit then granted en banc review, thereby vacating the panel opinion, and the case was subsequently withdrawn. *See* Fourth Circuit Local Rule 35(c) (grant of rehearing *en banc* has effect of "vacat[ing] the previous panel judgment and opinion"). The opinion of the two judges in the vacated panel opinion has no force of law, but even if considered would be irrelevant here

because of the absence of any APA analysis. Since the preliminary injunction in the case at bar is fully supported by the ruling on the APA alone, as discussed above, the Fourth Circuit panel opinion provides *no* objective indicia of judicial disagreement.

In contrast, and in support of Plaintiffs' position, in the Seventh Circuit *Cook County* litigation, the Court of Appeals did rely upon the APA in upholding a preliminary injunction, holding that the Rule is not a permissible interpretation of the statute, and that the rulemaking process was arbitrary and capricious. *Cook County*, 962 F.3d at 229-233. Then-Judge Barrett dissented, and Defendants erroneously hang the weight of their "substantially justified" argument on a superficial reading of her position. The dissent addressed *only* the statutory interpretation ground, explicitly stating: "I *express no view*, however, on the majority's analysis of the plaintiffs' other challenges to the rule under the Administrative Procedure Act," and that the matter should be remanded to the district court, where the plaintiffs would be "free to develop their other arguments." *Id.* at 235 (emphasis added). Thus, like the Fourth Circuit panel majority, Judge Barrett did not express a dissenting opinion on the merits of the APA claim upon which Plaintiffs here actually prevailed.

In the Ninth Circuit, after the district court granted a preliminary injunction, a motions panel granted a stay by a 2-1 majority. *City and Cty. of S.F.*, 944 F.3d 773, 807 (9th Cir. 2019). Subsequently, a Court of Appeals merits panel reversed the motions panel's determinations, and upheld the preliminary injunction. *City and Cty. of S.F.*, 981 F.3d at 756-62.[5] Two of the motions panel judges did address the APA claims, ruling against plaintiffs. However, that ruling was deemed unsound by both the Ninth Circuit merits panel, and most importantly, by the Court of

---

[5] One judge on the merits panel dissented, adopting by reference the motions panel ruling and others, without any further explanation. *City and Cty. of S.F.*, 981 F.3d at 763 (VanDyke, dissenting).

Appeals in the case at bar. *Id.* at 758-62; *New York v. DHS*, 969 F.3d at 73. Indeed, the Second

Circuit explained that the Ninth Circuit motions panel had gone "astray." *New York v. DHS*, 969

F.3d at 73.[6] The Second Circuit's explicit rejection of the Ninth Circuit motions panel opinion

should lead this Court to give that opinion little to no weight. *See, e.g., Smith*, 2001 WL 199505

at *3 (in a case where the ALJ, the Magistrate Judge, and a dissenting appellate judge all sided

with the government, the district court nonetheless granted EAJA fees because "the Seventh

Circuit majority [made] clear" the government's position "was simply not adequate" to justify its

action); *Adkins*, 154 Fed. Cl. at 304 (even in light of "the trial and remand decisions that this

court issued in defendant's favor, the existence of supporting precedent from other circuit courts

of appeals [], [and] the lack of contrary precedent from other appellate courts," the appellate

court's "resounding rejection of defendant's position in its most recent decision in this case"

warranted a finding that defendant's position was not substantially justified); *Crosby v. Halter*,

152 F. Supp. 2d 955, 960 (E.D. Ill. 2001) (even though ALJ and district court ruled for the

government, EAJA fees were awarded because court of appeals "strongly disapproved" of

government's position, thereby establishing no substantial justification).

### b. Objective Indicia Do Not Support Defendants' Position on the Equal Protection Claim

Not a single judge in the country has, as Defendants contend, "agreed with the legal

positions Defendants took in this case" (ECF No. 348 at 3) with regard to Equal Protection,

---

[6] The Ninth Circuit motions panel issued its order on an emergency basis in a very compressed time frame, thereby preventing the court from the full consideration, in contrast to the Second and Ninth Circuit merits panels. Miller Decl. Exh. 9 (Ninth Circuit Docket in *City & Cty. of S.F. v. D.H.S.*, Dkt. Nos. 20, 26, 30, 39). The Ninth Circuit merits panel concluded that the motion panel's decision was "based on a prediction of what this panel would hold in reviewing the merits of the preliminary injunctions," and was rendered without full briefing or oral argument, and without the benefit of decisions from the other courts of appeals. *City and Cty. of S.F.*, 981 F.3d at 753.

which provided an independent and sufficient legal basis for the preliminary injunction in the District Court's order. The District Court was again emphatic, holding that the government had no plausible defense to the glaring concerns of unconstitutional discrimination in the case:

> Defendants have yet to articulate a "rational relationship between the disparity of treatment and some legitimate government purpose." [citation omitted] Defendants do not dispute that the Rule will disparately impact noncitizens of color. At oral argument, when asked whether the Rule "will have a greater impact on people of Hispanic and African descent," for example, Defendants' response was that they "don't know" and that "that's the same issue that would have applied under the [Field Guidance], which [Defendants] assume also would have had a disproportionate impact."

*Cuccinelli*, 419 F. Supp. 3d at 664 (brackets in original).[7] None of the appellate courts— including the Ninth Circuit motions panel, the Fourth Circuit vacated panel majority, or Judge Barrett—addressed this legal claim. Thus, no judge in any comparator case has provided any indication that the government's position on Equal Protection was reasonable, so there are *no* objective indicia of reasonableness to counterbalance the District Court's unequivocal ruling. The finding of intentional and unconstitutional discrimination cannot possibly be consistent with a ruling that the government's actions were substantially justified.

### C.     There Are No Special Circumstances That Would Make a Fee Award Unjust

A court may deny or reduce fees under the EAJA if the government can show that "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The courts look to traditional rules of equity to determine whether or not an award would be unjust, particularly whether the plaintiff has acted in bad faith. *See Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 302–03 (2d Cir. 2011) (the "special circumstances" exception may apply "when [a prevailing

---

[7] The 1999 Interim Field Guidance described the criteria the government considered in making a public charge determination, consistent with a proposed rule that had not been finalized. When the 2019 Rule was vacated in March 2021, USCIS returned to applying the statute consistent with the 1999 Interim Field Guidance to make public charge inadmissibility and deportability determinations. *See also New York v. DHS*, 969 F.3d at 53.

party's] own misconduct created the circumstances that led to the litigation, and when that party's contributions to the litigation's success were marginal, duplicative and unnecessary."); *Oguachuba v. INS*, 706 F.2d 93, 98 (2d Cir. 1983). In this case, neither Plaintiffs nor their counsel has engaged in any type of misconduct that would render an award unjust.[8]

### D.  Public Policy Mandates a Fee Award in These Circumstances

The United States attempted to enact a dramatic reconstruction of fundamental principles of immigration law that had prevailed in this country for over 100 years, and in a manner that would have devastated communities in the New York region and beyond. Plaintiffs undertook many thousands of hours of work to research the history of public charge understandings, the operation of the APA and Equal Protection, and otherwise marshalled overwhelming intellectual, financial, and time resources to mount a sophisticated and ultimately successful challenge to this arbitrary and punitive change in law. It is precisely this kind of effort that fee-shifting statutes are designed to incentivize and, in the case of success, reward because of their profound public benefit.

In this context, this case squarely meets the purpose of the EAJA, which has been recognized by the Supreme Court as eliminating "the financial disincentive to challenge unreasonable governmental actions." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990). Indeed, Congress enacted the EAJA largely to attract private counsel to represent meritorious claimants, out of concern that persons "may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved." *Sullivan v. Hudson*, 490 U.S. 877, 883 (1989); *see also RFM*, 2020 WL 6393583 at \*5.

---

[8] To meet the final prevailing party factor, it is uncontested that Plaintiffs are organizations with tax-exempt status under 501(c)(3) of the Internal Revenue Code and are thus "part[ies]" eligible to receive fees under the meaning of the EAJA. 28 U.S.C. § 2412(d)(2)(B). Furthermore, Plaintiffs have met the timeliness factor of the EAJA. Miller Decl. ¶ 11.

## II.     THE AMOUNT OF ATTORNEYS' FEES AND EXPENSES IS REASONABLE

Having established their eligibility for fees, Plaintiffs are entitled to a reasonable fee award, based on multiplying the hours reasonably expended by the mandated EAJA hourly rate to reach the "lodestar" amount. *Comm'r, I.N.S.*, 496 U.S. at 161; *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "There is a 'strong presumption' that the lodestar amount represents a reasonable fee . . . ." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) (per curiam) (citations omitted); *Dague*, 505 U.S. at 562. Here, Plaintiffs present the Court with complete documentation to support a lodestar fee, and have made extraordinary billing judgment reductions to provide the Court with assurance that the request is reasonable and fully compensable.

### A.     Plaintiffs' Hours Are Reasonable.

Plaintiffs' request is based on a reasonable number of hours billed in the case from 2019 to its conclusion in 2021, as well as recent time spent on this fees motion. Since Plaintiffs fully prevailed in achieving their goals, especially in the face of Defendants' vigorous opposition at every turn, all of Plaintiffs' counsel's time is compensable. *See Healey*, 485 F.3d at 72; *Hensley*, 461 U.S. at 436, 434; *Kerin v. U.S. Postal Serv.,* 218 F.3d 185, 194 n.6 (2d Cir. 2000) (courts may award fees for the entire litigation where claims are "inextricably intertwined" and "involve a common core of facts or [are] based on related legal theories."); *Olson*, 2007 WL 680783, at *2 ("As for the reasonableness of the hours expended, it must be remembered that defendants vigorously fought the award of relief both in this court and in the Court of Appeals.").

Plaintiffs submit time entries based on contemporaneous records attached to the declarations of Jonathan Hurwitz (Paul Weiss), Susan Welber (Legal Aid Society) ("LAS"), Baher Azmy (Center for Constitutional Rights) ("CCR"), and Samuel Miller (CCR), showing the

reasonable time for each attorney for whom a fee award is sought. *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983).

Plaintiffs' attorneys and paralegals have worked thousands of hours on this complex litigation. That work includes:

- Filing a 117-page complaint on August 27, 2019, less than two weeks after Defendants' promulgated the Rule on August 14, 2019 (ECF No. 1);

- Filing a motion for a preliminary injunction less than two weeks later, accompanied by a 40-page memorandum of law, and supported by seven fact declarations and four expert declarations, which had the support of thirteen expert amici briefs (ECF Nos. 38-50 54, 59, 62, 68, 75, 89, 90, 106, 115);

- Participating in a three-hour-long oral argument before the District Court on Plaintiffs' motion for a preliminary injunction on October 7, 2019;

- Successfully opposing Defendants' motions to stay the preliminary injunction pending appeal in the District Court and in the Second Circuit;

- Opposing Defendants' motions to dismiss plaintiffs' complaint and other related actions (ECF No. 181);

- Conducting discovery, including review of the voluminous administrative record with more than 266,000 public comments.

- Expedited briefing and oral argument in the Second Circuit on the merits of Plaintiffs' claims;

- Opposing Defendants' motions for a stay pending appeal and petition for certiorari in the Supreme Court.[9]

---

[9] Plaintiffs include in this motion time spent throughout the course of the litigation, including appellate hours. Plaintiffs filed a skeletal fees motion (mirroring the one filed in the District Court) with the Second Circuit, which granted the requested indefinite stay. *Make the Road v. Cuccinelli*, Second Cir. Nos. 19-3591, 19-3595, Dkt. Nos. 490, 494. In accordance with Second Circuit authority, it is appropriate for this Court to address Plaintiffs' counsel's work for the entire case. *See Dague v. City of Burlington*, 976 F.2d 801, 803 (2d Cir. 1991); *Padula v. Colvin*, 602 Fed. Appx. 25, 28 (2d Cir. 2015) ("We take no position on whether the amount of Padula's [EAJA] fee request is reasonable, leaving that determination to the district court to make in the first instance.").

### B. Plaintiffs Discount the Lodestar With Extraordinary Billing Judgement Reductions

While all of the time spent on this case is compensable, Plaintiffs voluntarily narrow the request by making billing judgment reductions that are unprecedented in scope. These billing judgments amount to a greater than 70% reduction in the total lodestar. Hurwitz Decl. ¶¶ 13-15; Azmy Decl. ¶ 11; Miller Decl. ¶ 3. In particular, Plaintiffs have excluded from their billings time spent on the following activities:

- Case preparation prior to publication of the Notice of Proposed Rulemaking (NPRM) (prior to 10/10/18)
- Litigation of the stay in the Supreme Court (1/8/20 to 1/27/20)
- Litigation of the COVID-based preliminary injunction (4/1/20 to 6/1/20)
- Litigation of Defendants' petition for certiorari (after 10/7/20)

*Id.*; Welber Decl. ¶ 12. Additionally, while this case has demanded the contributions and collaboration of many lawyers over the years, each organization has excluded the work of all but core sets of attorneys, thereby seeking compensation for only six attorneys at Paul, Weiss, three attorneys at LAS, and two attorneys at CCR. *Id.* Plaintiffs' counsel also have made line-item billing judgment reductions in their detailed review of each office's timesheets. *Id.*

Based on the work Plaintiffs' counsel necessarily conducted to achieve success in this case, and the substantial billing judgment reductions, the requested lodestar is entirely reasonable and is well within the range of EAJA awards and settlements in comparably complex matters challenging significant regulatory action. *See, e.g.*, Miller Decl., Exhs. 5-6 (Settlement Agreement and Specific Release, *New York Immigration Coalition et al.* v. *United States Department of Commerce et al.* ($2,550,000 settlement agreement for attorneys' fees and expenses in connection with action that successfully enjoined a proposed addition of a citizenship question to the 2020 census); Settlement Agreement and Release, *Kravitz* v. *U.S.*

*Department of Commerce*, No. 2 8:18-cv- 01041-GJH [$2,200,000 settlement agreement in case similar to *NYIC*); *Sabo* v. *United States*, 717 F. Appx. 986 (Fed. Cir. 2017) (affirming $3,862,924.53 EAJA judgment for attorneys' fees and expenses in connection with class action by veterans with Post-Traumatic Stress Disorder who claimed Department of Defense wrongfully classified their disabilities).

Additionally, Plaintiffs who are eligible for an award under EAJA are also entitled to recover fees for the time they expend on their request for fees, without regard to whether the government's position regarding the fee request itself is substantially justified. *Comm'r, I.N.S.*, 496 U.S. at 158-59; *see Hines v. City of Albany*, 862 F.3d 215, 223 (2d Cir. 2017) (prevailing civil rights litigants are entitled to recover a reasonable fee for preparing and defending a fee application); *Trichilo v. Sec'y of Health & Human Servs.*, 823 F.2d 702, 707 (2d Cir.), *supplemented by* 832 F.2d 743 (2d Cir. 1987) (*per curiam*). Initial work on this EAJA fees motion is reflected in the records submitted with this Memorandum (with billing judgment reductions), and Plaintiffs will file a supplemental request with their reply. Miller Decl. ¶ 3 & Exh. 1.

### C. Plaintiffs' Counsel's Hourly Rates Are Appropriately Calculated Under EAJA.

To calculate their hourly rates, Plaintiffs have modified the EAJA statutory capped rate of $125 for cost of living adjustments for each calendar year. Such adjustments to the base statutory EAJA rate are regularly made by courts when calculating reasonable fees, and comport with "the legislative intent … to build a cost-of-living escalator into the cap on recoverable fees." *Trichilo v. Sec'y of Health & Human Servs.*, 823 F.2d 702, 705 (2d Cir. 1987), *supplemented by* 832 F.2d 743 (2d Cir. 1987) (per curiam); *R.F.M. v. Nielsen*, 2020 WL 6393583, No. 18-CV-5068 (LLS) (OTW) (S.D.N.Y. May 4, 2020); *Appling v. Kijakazi*, No. 21-CV-5091 (SLC), 2023 WL 4863744, at *4 (S.D.N.Y. July 31, 2023); 28 U.S.C. § 2412(d)(2)(A)(ii). A different rate is used

for each year reflecting the cost-of-living increase for that year. *Kerin*, 218 F.3d at 194; *Harris v. Sullivan*, 968 F.2d 263, 265 (2d Cir. 1992). Each year's figure is derived from the Bureau of Labor Statistics' Consumer Price Index for the New York Metro area. *See, e.g., Vellone o/b/o Vellone v. Kijakazi*, 2022 WL 276842 (SDNY 2022). The precise calculations and rates are reflected in the declaration and charts submitted with this motion. Miller Decl. ¶¶ 6-8 & Exhs. 2-5.

Plaintiffs' counsel's total fees for all work at issue in this motion, heavily discounted by billing judgment reductions, thus comes to a total of $1,223,583.56. Miller Decl. Exh. 3.

### D. Plaintiffs' Requested Expenses Are Reasonable.

Plaintiffs are entitled to reimbursement for their costs and expenses as prevailing parties. 28 U.S.C. §§ 2412(a), (d)(1)(A)&(B); *Merck Eprova AG v. Brookstone Pharms., LLC,* No. 09-CV-9684 (RJS), 2013 WL 3146768, at *5 (S.D.N.Y. June 10, 2013); *Kuzma v. I.R.S.,* 821 F.2d 930, 933–34 (2d Cir. 1987). Plaintiffs seek to be compensated $14,987.50 as reimbursement for payments to experts, and $20,414.85 for compensable litigation costs, as itemized in the submitted declaration of counsel. Hurwitz Decl. ¶ 16 & Exhs. 2-6. Plaintiffs' total request for costs and expenses is $35,402.35. *Id.*; Miller Decl. Exh. 3. Plaintiffs' total discounted claim for fees and expenses therefore is $1,258,985.91. Miller Decl. Exh. 3.

## III.   CONCLUSION

Plaintiffs are entitled to reasonable fees and expenses under the EAJA as prevailing parties in this litigation where Defendants' position was not substantially justified. Plaintiffs committed substantial time, energy, and financial resources in the public interest, and respectfully request that the Court award them $1,258,985.91 as reasonable attorneys' fees and expenses.

Dated: New York, New York

March 1, 2024

**CENTER FOR CONSTITUTIONAL RIGHTS**
By: /s/ *Samuel Miller*
Samuel Miller
Baher Azmy
666 Broadway
7th Floor
New York, New York 10012
(212) 614-6445
samrmiller@yahoo.com
bazmy@ccrjustice.org


**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Jonathan H. Hurwitz
Andrew J. Ehrlich
Robert J. O'Loughlin
Leah J. Park
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
aehrlich@paulweiss.com
jhurwitz@paulweiss.com
abowles@paulweiss.com
lpark@paulweiss.com


**THE LEGAL AID SOCIETY**
By: /s/ *Susan E. Welber*
Susan E. Welber
Bronx Neighborhood Office
260 East 161st Street, 8th Floor
Bronx, New York 10451
(646) 234-4326
sewelber@legal-aid.org

Judith Goldiner
Debbie Lee
49 Thomas Street, 5th Floor
New York, New York
(212) 577-3915
jgoldiner@legal-aid.org
dlsee@legal-aid.org

*Attorneys for Plaintiffs Make the Road New York, African Services Committee, Asian American Federation, Catholic Charities Community Services (Archdiocese of New York), and Catholic Legal Immigration Network, Inc.*