UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAKE THE ROAD NEW YORK, *et al.*,<br><br>                               *Plaintiffs*,<br>      v.<br><br>MARCO RUBIO,[1] in his official capacity as Secretary of State, *et al.*,<br><br>                               *Defendants*. | No. 19-cv-11633 (GBD) (OTW) |
| MAKE THE ROAD NEW YORK, *et al.*,<br><br>                               *Plaintiffs*,<br>      v.<br><br>JOSEPH EDLOW,[2] in his official capacity as Acting Director of U.S. Citizenship and Immigration Services (USCIS), *et al.*,<br><br>                               *Defendants*. | No. 19-cv-07993 (GBD) (OTW) |

**DEFENDANTS' CONSOLIDATED BRIEF REGARDING PLAINTIFFS'
PENDING APPLICATIONS FOR FEES AND THE EFFECT OF *LACKEY V. STINNIE***

---

[1] Marco Rubio, Secretary of State, is substituted as a defendant in his official capacity under Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Joseph Edlow, Acting Director of USCIS, is substituted as a defendant in his official capacity under Rule 25(d) of the Federal Rules of Civil Procedure.

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................ 1

BACKGROUND .............................................................................................................................. 3

DISCUSSION .................................................................................................................................. 5

      I.    *Lackey* Controls as to the Definition of "Prevailing Party" under EAJA. ............... 5

      II.    The Statutory Text of EAJA Does Not Support Plaintiffs' Interpretation.............. 9

      III.    The Legislative History of EAJA Supports Applying *Lackey* Here. ..................... 11

      IV.    The Argument That The Plaintiffs in Case 19-7993 Are Entitled To Receive Fees Based on A Decision In A Different Case Is Baseless. ......................................... 12

CONCLUSION ............................................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Hum. Res.*,
   532 U.S. 598 (2001) ................................................................................................. 1, 6, 13

*Lackey v. Stinnie*,
   604 U.S. __, 145 S. Ct. 659 (2025) ................................................................................. *passim*

*Ma v. Chertoff*,
   547 F.3d 342 (2d Cir. 2008) ........................................................................................... *passim*

*Marek v. Chesny*,
   473 U.S. 1 (1985) ............................................................................................................. 6

*N.Y. Fed'n of Taxi Drivers v. Westchester Cnty. Taxi & Limousine Comm'n*,
   272 F.3d 154 (2d Cir. 2001) ............................................................................................. 7

*Ramos v. Nielsen*,
   No. 18-cv-01554-EMC, 2025 WL 1953463 (N.D. Ca. July 16, 2025) .......................... 7

*Roberson v. Giuliani*,
   346 F.3d 75 (2d Cir. 2003) ............................................................................................. 13

*Sole v. Wyner*,
   551 U.S. 74 (2007) ............................................................................................................. 6

*University of Texas v. Camenisch*,
   451 U.S. 309 (1981) ......................................................................................................... 14

**STATUTES**

8 U.S.C. § 1182(a)(4) .............................................................................................................. 3

28 U.S.C. § 2412 ................................................................................................................. 1, 10

28 U.S.C. § 2412(d)(2) ............................................................................................................ 10

28 U.S.C. § 2412(d)(1)(A) ................................................................................................... 5, 14

28 U.S.C. § 2412(d)(1)(B) ....................................................................................................... 9

28 U.S.C. § 2412(d)(2)(H) ................................................................................................... 10

42 U.S.C. § 1988(b) ..................................................................................................... *passim*

Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ....................................................... 6

Equal Access to Justice Act, Pub. L. No. 96-481, 94 Stat. 2321 .................................................. 11

Fair Housing Amendments Act, 42 U.S.C. § 3601, *et seq.*. ......................................................... 6

The Civil Rights Attorney's Fees Awards Act of 1976,
  Pub. L. No. 94-559, 90 Stat.2641 (1976) ................................................................................. 12

## RULES

Fed. R. Civ. Pro. 41(a)(1)(A)(i) ........................................................................................... 3

## OTHER AUTHORITIES

Black's Law Dictionary 1352 (rev. 4th ed. 1968) ............................................................... 13

Exec. Order No. 14,012, 86 Fed. Reg. 8277 (Feb. 2, 2021) ............................................. 3

H.R. Rep. No. 96-1418 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 4984 ................................. 12

H.R. Rep. No. 96-1434 (1980) (Conf. Rep.), *as reprinted in* 1980 U.S.C.C.A.N. 5003 .............. 11

H.R. Rep. No. 99-120 (1985), *as reprinted in* 1985 U.S.C.C.A.N. 132 ..................................... 11

S. Rep. No. 96-253 (1979) ................................................................................................... 12

**INTRODUCTION**

The Supreme Court's decision this term in *Lackey v. Stinnie*, 604 U.S. __, 145 S. Ct. 659 (2025), controls the interpretation of "prevailing party" under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. *Lackey* precludes Plaintiffs from qualifying as prevailing parties and therefore from obtaining fees in the above-captioned cases. Although the fee request at issue in *Lackey* concerned the fee-shifting provision in 42 U.S.C. § 1988(b), its holding interprets the "prevailing party" language used in numerous fee-shifting statutes, including EAJA, because that phrase is a legal term of art that the Court interprets consistently. *See Lackey*, 145 S. Ct. at 666-67 (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598 (2001) (*Buckhannon*)).

Indeed, *Lackey* recognized the uniform meaning of "prevailing party" by incorporating the Court's earlier *Buckhannon* decision and explaining that "[w]e assume that when Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word." *Id.* at 666 (citation modified). Likewise, the Second Circuit has held that the meaning of "prevailing party"—as used in both § 1988(b) and EAJA § 2412—is consistent with *Buckhannon*'s interpretation of that term. *Ma v. Chertoff*, 547 F.3d 342, 344 (2d Cir. 2008) (per curiam) (holding that the "prevailing party" term in EAJA § 2412 is consistent with the *Buckhannon* definition and recognizing its prior holdings, including that § 1988(b) is similarly consistent the with definition in *Buckhannon*). Controlling circuit precedent therefore precludes Plaintiffs argument that the same "prevailing party" term has a different meanings in § 1988(b) and EAJA § 2412.

Despite Defendants' citation to *Ma* in their letter to the Court regarding *Lackey*, *see* ECF No. 184, Case No. 1:19-cv-11633-GBD-OTW, Plaintiffs ignore this controlling precedent. Because Plaintiffs' principal argument relies entirely on distinguishing the meaning of "prevailing party" in the EAJA and § 1988, an argument that controlling precedent forecloses, the Court should summarily deny their motion for attorney fees under *Lackey*.

Even beyond the shared controlling definition of "prevailing party," the present cases are on all fours with the facts of *Lackey*—something Plaintiffs do not dispute—and so the Court's rationale would control the outcome here. In *Lackey*, Virginia drivers challenged as unconstitutional a statute relied upon to suspend their drivers' licenses and "[t]he District Court preliminarily enjoined the Commissioner [of the Virginia Department of Motor Vehicles] from enforcing the statute." *Lackey*, 145 S. Ct. at 664. "But[,] before the case reached final judgment, the Virginia General Assembly repealed the challenged law, rending the action moot." *Id.* The Virginia drivers then sought an award of attorneys' fees, and so the question before the Court was whether the drivers qualified as "prevailing parties" under the fee-shifting provisions of 42 U.S.C. § 1988(b). *Id.* The Court held they did not. Specifically, the Court said that "[a] plaintiff who wins a transient victory on a preliminary injunction does not become a 'prevailing party' simply because external events convert the transient victory into a lasting one." *Id.* at 669. Similarly, in the two above-captioned cases, the Plaintiffs obtained preliminary injunctions preventing the enforcement of agency actions by the respective Defendants, but the Administration changed course before the cases reached final judgment. As in *Lackey*, Plaintiffs cannot qualify as prevailing parties based on their preliminary injunction victories in the two cases simply because external events mooted their claims and turned the transient victories into lasting ones.

The Court need not reach Plaintiffs' other arguments; nonetheless Defendants also explain below why Plaintiffs' remaining attempts to sidestep *Lackey* are all unavailing.

## BACKGROUND

Plaintiffs filed suit in these cases to challenge Government actions regarding the "public charge" ground of inadmissibility under the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(4). Plaintiffs obtained preliminary injunctions in both cases. Then, on February 2, 2021, then-President Biden issued an Executive Order calling for the review of the relevant agency actions, *see* Exec. Order No. 14,012, 86 Fed. Reg. 8277 (Feb. 2, 2021). Because this review ultimately led to changes that mooted the Plaintiffs' claims, they voluntarily dismissed the cases, without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). *See* Stip. of Dismissal, ECF No. 148, Case No. 1:19-cv-11633-GBD-OTW ("Case 19-11633"); Notice of Voluntary Dismissal, ECF No. 342, Case No. 1:19-cv-07993-GBD-OTW ("Case 19-7993"). Plaintiffs then sought attorneys' fees in both cases under EAJA § 2412. *See* Mem. of Law in Supp. of Mot. for Award of Att'ys' Fees & Related Costs, ECF No. 155, Case 19-11633; *see also* Mem. of Law in Supp. Of Pls.' Mot. for Att'ys' Fees & Expenses Under the EAJA, ECF No. 362, Case 19-7993.

In Case 19-11633, this Court recommended an award of attorneys' fees to the Plaintiffs based on its determination that the Plaintiffs qualified as "prevailing parties" under EAJA. *See* R. & R. to the Hon. George B. Daniels at 13-16, ECF No. 172 (dated September 4, 2024). Defendants objected to that recommendation in part because of the then-pending *Lackey* case before the Supreme Court. As noted by Defendants, the question presented in *Lackey* included whether a party could qualify as a "prevailing party" based on entry of a preliminary injunction where external events mooted the case before a court reached a final decision. *See* Defs.' Obj. to

3

Magistrate Judge's R. & R. on Pls.' Mot. for Att'ys' Fees, ECF No. 174. Noting the *Lackey* aspect of the Defendants' objection, Judge Daniels recommitted the motion for attorneys' fees to this Court as well. *See* Mem. Decision & Order, ECF No. 175. Although Plaintiffs sought reconsideration, *see* Notice of Pls.' Mot. for Recons., ECF No. 177, there was no ruling on Plaintiffs' request before *Lackey* issued. In February 2025, Defendants filed a letter advising this Court of the Supreme Court's decision in *Lackey*, explaining that *Lackey* foreclosed any fee award to Plaintiffs because they cannot qualify as prevailing parties. *See* ECF No. 184. Defendants' letter also noted that "[a]lthough the fee request in *Lackey* was based on 42 U.S.C. § 1988(b), the Second Circuit has previously held that the same 'prevailing party' analysis is applicable" to EAJA § 2412. *Id.* at 1-2 (citing *Ma,* 547 F.3d at 344).

In Case 19-07993, by contrast, this Court has not yet ruled on Plaintiffs' motion for attorneys' fees under EAJA. Instead, Judge Daniels entered an order recommitting Plaintiffs' motion for attorneys' fees to this Court for renewed review and reconsideration of the effect of *Lackey* on Plaintiffs' eligibility for attorneys' fees. *See* Order, ECF No. 379. Judge Daniels also ordered that Plaintiffs' then-open motions be closed. *See id*. at 2.

In both cases, Plaintiffs then sought leave to file a consolidated motion regarding *Lackey*. *See* ECF No. 190, Case 19-11633; *see also* ECF No. 382, Case 19-7993. This Court granted the motion and directed the parties to submit consolidated briefing on the effect of *Lackey* on Plaintiffs' ability to obtain fees. Order, ECF No. 192, Case 19-11633; Order, ECF No. 384, Case 19-7993. Plaintiffs filed a consolidated memo in both cases. Pls.' Consolidated Mem. of Law Regarding Prevailing Party Status ("Pls.' Memo."), ECF 193, Case 19-11633, and ECF No. 385, Case 19-7993.

4

**DISCUSSION**

Plaintiffs have sought attorneys' fees in these cases under EAJA § 2412(d)(1)(A), which provides that "a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States. . . ." 28 U.S.C. 2412(d)(1)(A). "[A] threshold requirement for a party seeking fees is to establish that he is a 'prevailing party' within the Act's definition." *Ma*, 547 F.3d at 343 (citation omitted). Because *Lackey* interprets the phrase "prevailing party"—a legal term of art also used in EAJA § 2412—in a manner that precludes the Plaintiffs from qualifying as prevailing parties, *Lackey*'s holding forecloses Plaintiffs' ability to receive fees.

Plaintiffs do not dispute that these cases are on all fours with the facts of *Lackey*, as explained above. *See generally* Pls.' Memo. Instead, Plaintiffs argue the decision should not apply to the "prevailing party" term used in EAJA due to EAJA's purportedly distinguishable structure and language, and arguments about EAJA's legislative history. Pls.' Memo. at 2-6. Plaintiffs also argue, in the alternative, that the Case 19-7993 Plaintiffs can qualify as prevailing parties based on a separate Northern District of Illinois case outcome. *Id.* at 6-9. As explained below, Plaintiffs' arguments are precluded by controlling Circuit precedent and meritless.

I. *Lackey* **Controls as to the Definition of "Prevailing Party" under EAJA.**

Plaintiffs first argue that *Lackey* addressed only the "prevailing party" phrase in the context of 42 U.S.C. § 1988(b) and its holding should not be applied to EAJA § 2412. Pls.' Memo. at 2-3. This argument ignores two major points: (1) *Lackey* itself recognizes the phrase's status as a legal term of art with a consistent meaning across numerous fee-shifting regimes; and

(2) the Second Circuit has held that the meaning of the "prevailing party" term is consistent in both EAJA § 2412 and 42 U.S.C. § 1988(b). *See Ma*, 547 F.3d at 343-44.

As to *Lackey*, itself, Plaintiffs offer an overly narrow view. To be sure, *Lackey* arises in the context of 42 U.S.C. § 1988(b). But *Lackey*'s reasoning and holding sweeps more broadly. In particular, the *Lackey* Court itself incorporated its prior "prevailing party" holding in *Buckhannon* and expressly identifies that *Lackey* is consistent with *Buckhannon*'s "prevailing party" definition. *Lackey,* 145 S. Ct. at 666, 669.[3] Although *Buckhannon* arose under yet another statutory context—the Fair Housing Amendments Act (FHAA), 42 U.S.C. § 3601, *et seq*., and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*.—it held that the "prevailing party" phrase had a consistent meaning across many fee-shifting statutes. *Buckhannon*, 532 U.S. at 603. *Lackey* cites to the portion of the *Buckhannon* decision that explicitly refers to numerous federal fee-shifting statutes and then cites to over 100 such fee-shifting statutes contained in the appendix in *Marek v. Chesny*, 473 U.S. 1 (1985). *Buckhannon*, 532 U.S. at 603 (citing *Marek,* 473 U.S. at 43-51). Notably, the Marek appendix includes both § 1988(b) and EAJA § 2412. *Marek*, 473 U.S. at 46, 49. In a footnote immediately after citing the *Marek* appendix, the *Buckhannon* decision states that the Court has "interpreted these fee-shifting provisions consistently[.]" *Buckhannon*, 532 U.S. at 603 n. 4. Thus, *Buckhannon* acknowledges that § 1988(b) and EAJA § 2412 are among the fee-shifting statutes that

---

[3] *Lackey* identifies that its decision "follows naturally" from its prior holdings in *Buckhannon* and *Sole v. Wyner*, 551 U.S. 74 (2007). *Lackey*, 145 S. Ct. at 669. In *Buckhannon* the Court rejected the "catalyst theory" that a plaintiff qualified as a prevailing party because the lawsuit prompted a voluntary change in the defendant's conduct, as it "lacked the necessary judicial *imprimatur*." *Id.* at 668 (citing *Buckhannon*, 532 U.S. at 605-06). In *Sole*, the Court decided that a plaintiff who obtained "a preliminary injunction after an abbreviated hearing, but was denied a permanent injunction after a dispositive adjudication on the merits, did not qualify as a 'prevailing party[.]'" *Id.* (citation modified) (citing *Sole* 551 U.S. at 77).

6

consistently use the term "prevailing party." Given that *Lackey* cites to this portion of the *Buckhannon* decision to begin its analysis of the "prevailing party" term, Plaintiffs' contention that the holding is limited to the meaning of "prevailing party" in § 1988(b) is meritless.[4]

And, as noted above, Plaintiffs' position also ignores that the Second Circuit has held that the term "prevailing party" has a consistent meaning in both § 1988(b) and EAJA § 2412. Specifically, in *Ma,* the Second Circuit looked to the same *Buckhannon* decision cited in *Lackey* and said that "[w]hile *Buckhannon* arose in the context of the FHAA and the ADA, this Court has recognized that its definition of 'prevailing party' extends well beyond those two statutes." *Ma,* 547 F.3d at 343-44. The Second Circuit "f[ou]nd nothing in the language or structure of the EAJA to indicate that the term 'prevailing party' should bear a different meaning than it has been given in other, similar contexts." *Id.* at 344. And so, the Court "join[ed] all of the Circuit Courts to have considered this issue and h[e]ld that *Buckhannon*'s definition of 'prevailing party' applies to fee requests under the EAJA." *Id.*

Even more, as part of the Second Circuit's analysis in *Ma*, it identified other Second Circuit cases that applied the same *Buckhannon* "prevailing party" definition to different fee-shifting regimes. Among those considered was its holding that *Buckhannon*'s "prevailing party" definition applied for fee-shifting under § 1988(b). *Ma,* 547 F.3d at 344 (citing *N.Y. Fed'n of Taxi Drivers v. Westchester Cnty. Taxi & Limousine Comm'n*, 272 F.3d 154, 158-59 (2d Cir. 2001)). In light of this holding, there is no question that the definition of "prevailing party" must

---

[4] *Lackey*'s holding has already been applied to limit a fee request under EAJA § 2412 retroactively in a pending case. *See, e.g.,* Order Denying Plaintiffs' Motion for Attorneys' Fees, ECF 269; *Ramos v. Nielsen*, No. 18-cv-01554-EMC, 2025 WL 1953463 (N.D. Ca. July 16, 2025) (rejecting the plaintiffs' argument that a stipulated order staying district proceedings pending appeal of the preliminary injunction made plaintiffs a "prevailing party" under EAJA). In a footnote the *Ramos* court rejected the contention that *Lackey* has no relevance or application to the instant case because this case involves the EAJA and not § 1988. *Id.* at *6 n.3.

7

be interpreted consistently under both EAJA § 2412 and § 1988(b), which forecloses Plaintiffs' argument to the contrary.

Even if Plaintiffs were not foreclosed from arguing that *Lackey*'s definition of "prevailing party" does not apply to the EAJA, their interpretation should nevertheless be rejected. Plaintiffs' position—that the essentially identical circumstances present in this case can be distinguished merely because Plaintiffs seek fees through EAJA—is not supported by any reasonable reading of *Lackey*. *Lackey* speaks in general terms about the nature of preliminary injunctive relief and its implications for prevailing party status.

Among other conclusions, *Lackey* states broadly that "[p]reliminary injunctions . . . do not conclusively resolve legal disputes[,]" have a "transient nature," and indicate that a plaintiff "has achieved only temporary success at an intermediary stage of the suit." *Lackey,* 145 S. Ct. at 667 (citation omitted). To qualify as a prevailing party, "the plaintiff must succeed on the merits" not merely demonstrate a likelihood of success. *Id.* at 668. None of these conclusions rely in any way on the features of § 1988, which is merely a fee-shifting vehicle and unrelated to the substantive determinations in a case. Nor, consequently, does *Lackey*'s general holding, premised on these aspects of preliminary relief, turn on § 1988. *Lackey*'s finding that "[b]ecause preliminary injunctions do not conclusively resolve the rights of the parties on the merits, they do not confer prevailing party status[,]" is the same in any circumstance where prevailing party status is assessed. *Id.* at 667.

The same is true of the Court's overall holding. Although the parties seeking fees in *Lackey* were specifically determined not to be prevailing parties under § 1988, the fee-shifting provision they invoked, the reasoning supporting that determination relies on general principles untethered to that statute. The Court stated in no uncertain terms that:

8

> A party 'prevails' when a court conclusively resolves his claim by granting enduring relief on the merits that alters the legal relationship between the parties. Critically, both the change in relationship and its permanence must result from a judicial order. A preliminary injunction, which temporarily preserves the parties' litigating positions based in part on a prediction of the likelihood of success on the merits, does not render a plaintiff a 'prevailing party.' Nor do external events that moot the action and prevent the court from conclusively adjudicating the claim.

*Id.* at 671. Aside from reliance on a different fee-shifting statute, which is in any event the same in all relevant ways to § 1988, the circumstances of the instant cases are exactly those described as insufficient to permit fees in *Lackey*. *See supra* at 2.

### II. The Statutory Text of EAJA Does Not Support Plaintiffs' Interpretation.

Neither EAJA's text nor its structure supports Plaintiffs' position. As an initial matter, no party may seek an award under the EAJA until after entry of final judgment. 28 U.S.C. § 2412(d)(1)(B). That party must then demonstrate that it is the prevailing party. *Id.* By contrast, although the *Lackey* Court held that § 1988 does not permit the payment of fees for interim relief, the text of § 1988 does not expressly require a party to await a final judgment before seeking fees. *See* 42 U.S.C. § 1988(b). Consequently, the natural reading of the EAJA is that it is more likely, not less likely, than § 1988 that Congress intended to require parties to obtain final judgment to justify awards.

Plaintiffs contend that the EAJA "expressly delineates only one area of law – eminent domain – in which a final judgment is required to achieve prevailing party status[,]" because only § 2412(d)(2)(H) uses the term "final judgment." Pls.' Memo. at 4. They argue that "standard rules of statutory interpretation dictate the presumption that Congress purposely *did not* require a final judgment" in other EAJA actions. *Id.* (emphasis in original). But Plaintiffs ignore the natural reading of the subsection.

9

Sections 2412(a); (b); and (d)(1) contain EAJA's general use of the term "prevailing party." Meanwhile, § 2412(d)(2) is explicitly a definition section laying out the particular meanings of specific terms "[f]or the purposes of this subsection[.]" Contrary to Plaintiffs' description, a natural reading of § 2412(d)(2)(H) makes clear that it is identifying an exception to the normal rule applicable to other EAJA proceedings. First, § 2412(d)(2)(H) explicitly does not purport to define "prevailing party" in the statute generally, but rather states that "'prevailing party,' in the case of eminent domain proceedings, means . . . ." *Id.* Congress has clearly signaled that the use of the term in eminent domain is separate from and does not bear on the generally understood meaning. Second, contrary to the implication of Plaintiffs' incomplete quotation of § 2412(d)(2)(H), the statue actually makes clear that unlike in every other scenario, it is *insufficient* in an eminent domain proceeding to merely obtain a final judgment. Under § 2412(d)(2)(H) a party to an eminent domain proceeding is only prevailing if he:

> obtains a final judgment (other than by settlement), exclusive of interest, the amount of which is at least as close to the highest valuation of the property involved that is attested to at trial on behalf of the property owner as it is to the highest valuation of the property involved that is attested to at trial on behalf of the Government[.]

On the face of § 2412(d)(2)(H), therefore, it is clear that Congress intended to add additional conditions to eminent domain proceedings beyond obtaining a final judgment to secure prevailing party status. Plaintiffs' position therefore is contradicted by the natural reading of the text—that prevailing party status for eminent domain proceedings requires both a final judgment and that the amount awarded be closest to the party's trial testimony on the property's valuation.

Thus, Plaintiffs' arguments are contradicted by both the structure of EAJA and the text of the provisions upon which Plaintiffs rely. EAJA cannot reasonably be read to suggest that final judgment is *only* required in the case of eminent domain.

### III. The Legislative History of EAJA Supports Applying *Lackey* Here.

The legislative history likewise lends no support for Plaintiffs' position. Plaintiffs cherry-pick a portion of the history to argue Congress attempted to "cabin the requirement of a final judgment specifically to eminent domain cases alone." Pls.' Memo. at 5-6 (citing to H.R. Rep. No. 99-120, at 19 (1985), *as reprinted in* 1985 U.S.C.C.A.N 132, 147). But a review of the cited House Report reveals otherwise. The report expressly identifies that the eminent domain "prevailing party" provision was added to make clear that for condemnation cases the prevailing party standard requires more than just a final judgement; it requires the party to have provided "testimony in court" on the property's valuation that "is closer to the [ultimate] award" and "[i]f the award is exactly in the middle, [EAJA] gives the benefit to the property owner." H.R. Rep. No. 99-120, at 18 (1985), *as reprinted in* 1985 U.S.C.C.A.N. 132, 147. This portion of the legislative history therefore supports Defendants' position, above, that EAJA's prevailing party standard for eminent domain proceedings requires *both* a final judgment and trial testimony from the party that places their valuation closest to the amount awarded.

Indeed, a further review of the Congressional Reports issued in conjunction passage of the Equal Access to Justice Act, Pub. L. No. 96-481, 94 Stat. 2321, also supports Defendants' position that, other than in condemnation cases, EAJA's use of "prevailing party" is consistent with the terms use in other fee-shifting statutes, including § 1988(b). *See* H.R. Rep. No. 96-1434, at 21 (1980) (Conf. Rep.), *as reprinted in* 1980 U.S.C.C.A.N. 5003, 5010 (noting that the interpretation of the term "prevailing party" "is to be consistent with the law that has developed

11

under existing [fee-shifting] statutes"); H.R. Rep. No. 96-1418, at 11 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 4984, 4990 (same); S. Rep. No. 96-253, at 7 (1979) (same). Section 1988(b) is one of those pre-existing fee-shifting statutes, as it was first passed as part of The Civil Rights Attorney's Fees Awards Act of 1976, Pub. L. No. 94-559, 90 Stat. 2641 (1976). Thus, Plaintiffs reliance on legislative history is inapt. In reality, the legislative history supports Defendants' position that "prevailing party" has the same meaning under both EAJA § 2412 and 42 U.S.C. § 1988(b), and *Lackey's* interpretation of the term controls its meaning in both of these cases.

### IV. The Argument That The Plaintiffs in Case 19-7993 Are Entitled To Receive Fees Based on A Decision In A Different Case Is Baseless.

Plaintiffs in Case 19-7993 also argue in the alternative that they are entitled to collect EAJA fees as prevailing parties because a partial summary judgment was issued in a different case, *Cook Cnty. v. Wolf*, No. 1:19-cv-6334 (N.D. Ill.), to which the Case 19-7993 Plaintiffs were not parties. This argument is wholly without merit and the Court should not give it any consideration.

Plaintiffs state that "reliance on a final judgment in a different judicial district is an unusual scenario," Pls.' Memo. at 7, but this is a misrepresentation. Plaintiffs fail to identify a single case in which a court awarded fees to litigants based on a decision in a case to which those litigants were not parties. The reasons for this lack of precedent are obvious. Plaintiffs' suggestion is contrary to the underlying purpose of fee-shifting statutes and the underpinnings of federal practice in general. Moreover, such a precedent would establish a bizarre and unmanageable system contrary to the intent of Congress. Plaintiffs are not, as they seem to imply, in some unique situation where special circumstances have deprived them of fees to which they were otherwise entitled. The situation identified by Plaintiffs, where a party receives the same relief gratuitously, at an early stage of a case, that other litigants received by virtue of a

judicial order, happens routinely, particularly with the Government as a defendant. But a party does not become a "prevailing party" in these situations because they have not "successfully prosecute[d] the action or successfully defend[ed] against it." *Lackey* 145 S. Ct. at 667 (quoting *Prevailing Party*, Black's Law Dictionary 1352 (rev. 4th ed. 1968)). Allowing a plaintiff to qualify for "prevailing party" status by filing a lawsuit that reaches the sought-after destination due to separate litigants in an entirely different case, as Plaintiffs contend, would render the Supreme Court's decisions in *Lackey* and its predecessor cases meaningless. *See, generally, supra* at n. 3.

Plaintiffs cite *Roberson v. Giuliani*, 346 F.3d 75 (2d Cir. 2003) for its recognition that a fees award can be based upon "judicial action other than a judgment on the merits or a consent decree . . . so long as the action carries with it sufficient judicial imprimatur," Pls.' Memo. at 8 (citing 346 F.3d at 81), but nothing in *Roberson* says that a party can qualify as a "prevailing party" based on a decision in separate litigation. Indeed, the *Roberson* decision turned on that court's express retention of continuing jurisdiction over a private settlement agreement entered in the case and the court's resultant ability to enforce "court-ordered change[s] in the legal relationship between the plaintiff and the defendant." *Roberson*, 346 F.3d at 83 (quoting *Buckhannon*, 532 U.S. at 604). Thus, *Roberson* clearly concerns whether prevailing party status can be based on something other than final judgment or a consent decree entered *in the same case*, and as explained *supra Lackey* controls that question on these facts.

Beyond the facial unreasonableness of Plaintiffs' position, their proposal suffers from several other deficiencies. First, the Plaintiffs in *Cook County* neither sought nor obtained attorney fees, so Plaintiffs' attempt to bootstrap some entitlement to fees to the result in that case is even more incoherent than it would otherwise be. Second, permitting a fee recovery on the

13

basis of the judgment in another case, which Plaintiffs admit would be necessary if a final judgment is required by EAJA, *see* Pls.' Memo. at 6, would also perpetuate one of the central problems *Lackey* seeks to avoid. The *Lackey* Court specifically "cautioned against 'improperly equating likelihood of success with success' and treating preliminary injunctions as 'tantamount to decisions on the underlying merits.'" 145 S. Ct. at 667 (citation modified) (quoting *University of Texas v. Camenisch*, 451 U.S. 309, 394 (1981)). Allowing the type of pendent recovery proposed by Plaintiffs simply because the outcome of *Cook County* was the same as the relief sought, but not obtained, by the Plaintiffs in Case 19-7993 would completely erase any distinction between temporary relief to maintain the status quo and ultimate relief on the merits.

## CONCLUSION

For these reasons and those discussed in Defendants' prior briefs, the Court should find that *Lackey v. Stinnie*, 604 U.S. __, 145 S. Ct. 659 (2025), controls the meaning of "prevailing party" under the EAJA § 2412(d)(1)(A), and forecloses the Plaintiffs from obtaining attorneys' fees.

Date: July 25, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Branch Director

*/s/ Olivia Hussey Scott*
OLIVIA HUSSEY SCOTT
Senior Counsel

KERI L. BERMAN
Trial Attorney

U.S. Department of Justice

14

>Civil Division, Federal Programs Branch
>1100 L Street, N.W.
>Washington, D.C. 20005
>Tel. (202) 616-8491
>Fax: (202) 616-8460
>Olivia.Hussey.Scott@usdoj.gov
>
>*Counsel for Defendants*

## **CERTIFICATION OF COUNSEL**

In accordance with Local Civil Rule 7.1(c), I hereby certify that the foregoing document complies with the word count limitations in Section 5(d) of this Court's *Individual Practices in Civil Cases*, available at https://www.nysd.uscourts.gov/sites/default/files/practice_documents/OTW%20Wang%20Individual%20Practices%20April%202025.pdf (last accessed on July 19, 2025).

>*/s/ Olivia Hussey Scott*
>OLIVIA HUSSEY SCOTT
>Senior Counsel

15