**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MAKE THE ROAD NEW YORK, AFRICAN
SERVICES COMMITTEE, CENTRAL
AMERICAN REFUGEE CENTER NEW YORK,
CATHOLIC CHARITIES COMMUNITY
SERVICES (ARCHDIOCESE OF NEW YORK),
CATHOLIC LEGAL IMMIGRATION
NETWORK, INC., ALICIA DOE, BRENDA
DOE, CARL DOE, DIANA DOE, and ERIC
DOE,

                              Plaintiffs,

               - against -

UR JADDOU, in her official capacity as Director
of United States Citizenship and Immigration
Services; the UNITED STATES CITIZENSHIP
&
IMMIGRATION SERVICES; and ALEJANDRO
MAYORKAS, in his official capacity as
Secretary
of Homeland Security; and the UNITED
STATES
DEPARTMENT OF HOMELAND SECURITY,

                             Defendants.

No. 19 Civ. 07993 (GBD) (OTW)

---

**PLAINTIFFS' REPLY IN SUPPORT OF CONSOLIDATED
MEMORANDUM OF LAW REGARDING PREVAILING PARTY STATUS**

### I.     Introduction

Defendants' Opposition fails to confront Plaintiffs' controlling statutory argument: the

holding in *Lackey v. Stinnie* does not govern prevailing party status under EAJA. Congress

deliberately structured EAJA in distinct and material ways that distinguish it from 42 U.S.C.

§1988—the statute at issue in *Lackey*. EAJA expressly identifies only one category of cases—

eminent domain—where final judgment is required for prevailing party status, making clear that

in all other contexts, preliminary relief, if granted on the merits and consistent with all other

EAJA requirements, may provide grounds for a fee award in the court's discretion. Defendants

ignore this fundamental principle of statutory construction: specific Congressional language

governs over generalized judicial interpretations. Defendants' remaining arguments, including

those conflating separate procedural filing requirements under EAJA, and the *Jaddou* Plaintiffs'

distinct entitlement under *Lackey*, are equally deficient.

## II.    Defendants Disregard the Specific Meaning of Prevailing Party in EAJA

Defendants argue that the *Lackey* Court's decision to define "prevailing party" as

requiring a final judgment under 42 U.S.C. §1988 necessarily applies in fee-shifting statutes

globally. (*Jaddou,* 19-cv-07993, ECF 388; *Blinken,* 19-cv-11633, ECF 196 ("Opp.") at 5).[1] This

argument states something obvious but still misses the point. The obvious is that "prevailing

party" is a term of art; Plaintiffs do not contest this. (*Jaddou* ECF 385; *Blinken* ECF 193

(Plaintiffs' Memorandum of Law) ("MOL") at 3). The missing point is that where Congress

chooses to enact specific language in one part of a statute and omits it elsewhere, it is presumed

that Congress acts purposely in the disparate exclusion. (MOL at 4-5). Here, due to the express

requirement in §2412(d)(2)(H) that prevailing party status must be based on a final judgment in

eminent domain cases only, and *not* in other areas covered by EAJA, courts must give effect to

Congress's intention that plaintiffs in non-eminent domain cases could be awarded fees based on

judicial orders that are not final judgments. Defendants completely ignore this critical point set

forth in Plaintiffs' opening Memorandum and have effectively conceded it. *Id.*

---

[1]    For consistency with the opening Memorandum and original fee briefing, Plaintiffs continue
to refer to these two cases as *Jaddou* and *Blinken*. (Opp. at n. 1&2).

Similarly, where Congress has chosen to define a common term differently in one statute (EAJA) as opposed to another (Section 1988), courts must presume Congress acted intentionally in the differential treatment, under the related maxim that specific law overrides general law. *See Presbyterian Church of Sudan v. Talisman Energy, Inc.,* 244 F. Supp. 2d 289, 321 (S.D.N.Y. 2003) (applying "particular jurisprudence" of statute governing plaintiffs' claims over "more general analysis," following maxim *lex specialis derogat lex generalis*). Thus, Congress's specific treatment of prevailing party in EAJA, reflecting policies Congress believed unique to fee recovery against federal entities, must be given effect over the general usage applied to other legislation. *See Cities4Life, Inc. v. City of Charlotte*, No. 317CV00670KDBDSC, 2021 WL 724609, at *4 (W.D.N.C. Feb. 24, 2021), *aff'd,* 52 F.4th 576 (4th Cir. 2022) (recognizing that FOIA, 5 U.S.C. §522(a)(4)(E)(ii), allows more expansive definition of prevailing party than would otherwise be allowed under *Buckhannon's* catalyst proscription).

Defendants avoid these canons of statutory interpretation, preferring their own "natural" reading of EAJA where specifying the requirement of final judgment solely in eminent domain "does not bear on the generally understood meaning." (Opp. at 10). But litigants may not command their own preferred, or natural, reading; the Court is bound by the plain statutory text. In fact, Defendants cannot help but recognize that §2412(d)(2)(H) is, in their own words, "an exception to the normal rule applicable to other EAJA proceedings." (Opp. at 10). That is right: the "normal" rule in EAJA is that prevailing party status does not depend on final judgment, and §(d)(2)(H) is the exception—one that proves the general rule Congress intended.

Defendants also make a "structural" argument about the interpretation of §2412(d)(2)(H), contending it is limited by the introductory clause of §2412(d), which applies the definitions therein to "this subsection." (Opp. at 10). EAJA does not clarify what is meant exactly by "this

subsection." Since EAJA was originally enacted as one of three parts of a single piece of legislation, the most sensible meaning is that "this subsection" refers to the entirety of EAJA and excludes the two other acts. PL 96–481, Oct. 21, 1980, 94 Stat 2321. Regardless, Defendants' interpretation that definitions do not apply outside the definitions section is nonsensical. (Opp. at 10). For example, "demand" is defined in §2412(d)(2)(I), and then is only used in §2412(d)(1)(D). *See U.S. Sec. & Exch. Comm'n v. Lemelson*, 138 F.4th 618, 623 (1st Cir. 2025) (applying EAJA definition of "demand" to claim under §2412(d)(1)(D)). Congress would not define a word and prohibit its application in the only place it is used. Defendants' "structural" argument thus collapses.

Defendants further rely on §2412(d)(2)(H)'s dual requirement of both final judgment and monetary calculation. (Opp. at 10; MOL at 4). But the only logical reason for Congress to include the final judgment requirement as part of this duality was that prevailing party elsewhere in the statute has a different meaning. If prevailing party throughout EAJA were to require final judgment, then including it in §(d)(2)(H) would be redundant; Congress chose to include it as a necessary means of establishing an exception to the EAJA norm.

Failing to find support in the actual language of EAJA, Defendants contend *Lackey* "speaks in general terms" that must apply across-the-board. (Opp. at 8). Certainly, in the many statutes where "prevailing party" is undefined, it may be accorded the general term-of-art definition. But where, as here, the statute specifically defines that very term with markedly different treatment, the specific overrides the general.

Lastly, the case law Defendants rely upon does not address whether the general definition of prevailing party should yield where a different usage is statutorily explicated. (Opp. at 6-7, citing *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human*

*Resources*, 532 U.S. 598 (2001); *Ma v. Chertoff*, 547 F.3d 342 (2d Cir. 2008) (per curiam)).

Defendants do not, and cannot, cite a single case holding that in all instances all aspects of the

prevailing party definition must apply uniformly. Neither *Buckhannon* nor *Ma* suggest that their

general understanding would override a particularized definition Congress ascribes to prevailing

party in a given fee-shifting statute. Such an override would arrogate legislative prerogative to

the judicial branch. Congress has chosen on multiple occasions to make different fee-shifting

rules for different kinds of cases, and while §1988 is generic ("merely a fee-shifting vehicle")

(Opp. at 8), some, like EAJA, are carefully tailored. The courts are not free to alter this

differential design which Congress chose to enact.[2]

### III.    Defendants Misconstrue the EAJA Provision Controlling the Timing of Fee Petitions

The discussion above concerns when a plaintiff may be required to achieve final

judgment as the substantive ground for prevailing party status, *i.e.* a conclusive order on the

merits. "Final judgment" has a second meaning as well, relating to timing, rather than substance,

*i.e.* the final order concluding a case and relieving the court of jurisdiction. Often this is not the

substantive order (such as an injunction) upon which the legal claim was resolved, but is a

subsequent order that closes the case (such as a dismissal). Defendants conflate these two distinct

meanings of final judgment. They point to a provision of EAJA which states that "no party may

seek an award under the EAJA until after entry of final judgment," citing 28 U.S.C.

§2412(d)(1)(B). (Opp. at 9). This provision must be read alongside it's the related definition that

final judgment means "not appealable." 28 U.S.C. §2412(d)(2)(G). Defendants ignore this

---

[2]    Defendants' reliance on *Ramos v. Nielsen*, No. 18-cv-01554-EMC, 2025 WL 1953463 (N.D. Ca. July 16, 2025) is unavailing. (Opp. at 7 n.4). In *Ramos*, the court held that a 120-day hold on deportation was insufficiently enduring under *Lackey*. The court did not address whether EAJA is distinguishable from §1988.

critical definitional feature of §2412(d)(2)(G). But when taken together, these provisions operate so that a party who prevails must wait until the case fully concludes, and may not file for fees under EAJA until all possible appeals have run their course. *See, e.g., Arnao v. Comm'r of Soc. Sec. Admin.*, No. 18–CV–6801 (KMK), 2024 WL 710410, at *2 (S.D.N.Y. Feb. 21, 2024) ("Plaintiff has satisfied the EAJA requirements" by waiting for the court to enter the parties' stipulated dismissal and waiting for time to appeal to elapse); *Auke Bay Concerned Citizen's Advisory Council v. Marsh*, 779 F.2d 1391, 1392 (9th Cir. 1986) (EAJA fee motion filed shortly after plaintiffs prevailed by obtaining injunction was deemed premature prior to entry of formal judgment); *Coley v. Wilkie*, 32 Vet. App. 284, 288 (2020) (recognizing §2412(d)(1)(B) as a timing requirement).

Defendants contrast 28 U.S.C. §2412(d)(1)(B) with §1988, which "does not expressly require a party to *await* a final judgment before seeking fees." (Opp. at 9) (emphasis added). That is correct: under EAJA, a prevailing party must wait an extra step (or more) until the case is fully concluded and no further appeal is possible; under §1988, a fee petition may be filed at any point upon prevailing in the district court. *Lackey v. Stinnie*, 145 S. Ct. 659, 670, 221 L. Ed. 2d 63 (2025) (recognizing that under §1988, "'Congress contemplated the award of fees *pendente lite* in some cases,'… [including] when conclusive, enduring judicial relief is meted out on an incremental basis"). This comparison between EAJA and §1988 highlights that final judgment in §2412(d)(1)(B) is simply a timing issue. *See also* H.R. REP. 99-120, 7, 1985 U.S.C.C.A.N. 132, 147 (explaining that §2412(d)(2)(G) was written to clarify that filing period for fees commences when parties reach non-appealable judgment). As well, this timing difference comports with Congress's desire to protect federal agencies subject to EAJA from the burden of defending

6

against fee claims on the possibility they may later prevail on appeal (a concern not apparent under §1988).

Here, Plaintiffs prevailed on motions for preliminary injunctions and achieved the enduring relief they had sought, then waited for non-appealable dismissals before filing for fees, just as §2412(d)(1)(B) and (d)(2)(G) require. (*Jaddou* ECF 343; *Blinken* ECF 148). In fact, Defendants joined Plaintiffs, when consenting to a skeletal fee motion process just after the *Jaddou* dismissal was filed, in expressing the understanding that the combination of these two sections merely expresses a statutory timing requirement. (*Jaddou* ECF 344 at 3).

IV.    **Defendants Ignore the Legislative History Supporting Plaintiffs' Interpretation of the EAJA Prevailing Party Requirement**

Defendants ignore the definitive legislative history explaining that prevailing party in EAJA has an "expansive" definition that is not curtailed by the limitation applicable to eminent domain. (MOL at 5-6). Instead, Defendants rely on Congress's requirement of "*both* a final judgment and" a monetary calculation. (Opp. at 11). As above, this is irrelevant: Congress would not have added the final judgment requirement to eminent domain if it understood that the general EAJA prevailing party standard already included such a requirement.

The only additional legislative history Defendants cite is a general statement that the understanding of prevailing party "is to be consistent with the law that has developed under existing [fee-shifting] statutes." (Opp. at 11-12). As discussed in Section I, the specific governs the general, and the Committee's statements as to the specific terms of the statute are more relevant to interpretation than a general statement of consistency with other laws. Moreover, the majority interpretation of prevailing party at the time EAJA was enacted in 1980 was that courts *could* exercise discretion to award fees for *preliminary* success. *See, e.g., Haley v. Pataki*, 106 F.3d 478, 483 (2d Cir. 1997) (recognizing established understanding that fees may be awarded

for preliminary injunctions); *F. & M. Schaefer Corp. v. C. Schmidt & Sons, Inc.*, 476 F. Supp. 203, 205 (S.D.N.Y. 1979) (awarding fees for success on preliminary injunction under "substantially prevailing" standard); *see also United States v. Kozminski*, 487 U.S. 931, 948(1988) (legislative intent determined in context "at the time [the statute] was enacted").

### V.       The *Jaddou* Plaintiffs Have Complied with the *Lackey* Requirements

Defendants create a straw man to misconstrue the *Jaddou* Plaintiffs' compliance with the *Lackey* requirements, characterizing Plaintiffs as gaining relief "gratuitously" that others received by judicial order, and arguing that this "happens routinely" against the Government. (Opp. at 12-13). But Plaintiffs achieved enduring changes to draconian government policy with dramatic wide-ranging impact. *Jaddou* presents the narrow situation where two related cases involve the exact same government misconduct based on the exact same legal grounds, where all plaintiffs would receive the exact same benefit, and where a final judgment or its equivalent has been enunciated by the appellate courts (MOL at 8)–all of which is *uncontested* by Defendants here. In this particular context, Plaintiffs have shown that "a court conclusively resolve[d] a claim by granting enduring judicial relief." (MOL 7-8; *Lackey*, 145 S. Ct. at 669). Plaintiffs do not propose that litigants be allowed to routinely claim the success of others to warrant fee awards, and the Government need not fear opening a Pandora's Box of widespread fee exposure.[3]

Lastly, the fact that Cook County did not obtain attorney fees is irrelevant. (Opp. at 13). Plaintiffs' position here has nothing to do with whether Cook County could meet all the

---

[3]    Defendants misconstrue the citation to *Roberson v. Giuliani*, 346 F.3d 75 (2d Cir. 2003), which Plaintiffs do not rely upon as direct authority for qualifying as a prevailing party based on separate litigation. (Opp. at 13; MOL 7-8). Rather, the holding and logic of *Roberson*, that judicial imprimatur extends beyond judgment on the merits, support Plaintiffs' focus on judicial action, which here came from the court in *Cook County*.

requirements for fees. The only relevance of *Cook County* is that the partial summary judgment order provides the enduring judicial relief from "a court" required by *Lackey.*

## VI.    Conclusion

The Court should order that the Supreme Court opinion in *Lackey v. Stinnie* does not prevent Plaintiffs from being deemed prevailing parties in their fee petitions under the Equal Access to Justice Act.

Dated: August 12, 2025
New York, New York

**CENTER FOR CONSTITUTIONAL RIGHTS**
By: /s/ *Samuel Miller*
Samuel Miller
Baher Azmy
666 Broadway
7th Floor
New York, New York 10012
(212) 614-6445
samrmiller@yahoo.com
bazmy@ccrjustice.org

**THE LEGAL AID SOCIETY**
By: /s/ *Susan E. Welber*
Susan E. Welber
Bronx Neighborhood Office
260 East 161st Street, 8th Floor
Bronx, New York 10451
(646) 234-4326
sewelber@legal-aid.org

Judith Goldiner
Deborah Lee
49 Thomas Street, 5th Floor
New York, New York
(212) 577-3915
jgoldiner@legal-aid.org
dslee@legal-aid.org

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: /s/ *Andrew J. Ehrlich*
    Andrew J. Ehrlich
    Leah J. Park

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
aehrlich@paulweiss.com
abowles@paulweiss.com
lpark@paulweiss.com

*Attorneys for Plaintiffs*

10

## CERTIFICATION OF COUNSEL

In accordance with Local Civil Rule 7.1(c), I hereby certify that the foregoing document contains 2,347 words and complies with the word count limitations in Section V.(d) of this Court's *Individual Practices in Civil Cases*.

*/s/ Samuel Miller*
Samuel Miller

Attorney for Plaintiffs
