**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
MAKE THE ROAD NEW YORK, *et al.*,　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Plaintiffs,　　　　　　　:　　　　19-CV-7993 (GBD) (OTW)
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　-against-　　　　　　　　　　　:　　　　**REPORT & RECOMMENDATION TO**
　　　　　　　　　　　　　　　　　　　　　　:　　　　**THE HON. GEORGE B. DANIELS**
UNITED STATES CITIZENSHIP AND　　　　　　:
IMMIGRATIONS SERVICES; DIRECTOR OF　　　:
UNITED STATES CITIZENSHIP AND　　　　　　:
IMMIGRATION SERVICES, *et al.*,　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　Defendants.
----------------------------------------------------------------x

**ONA T. WANG**, **United States Magistrate Judge**:

I.　　**INTRODUCTION**

　　　　　　This case, ("*Make the Road 1*")[1], is one of two related cases by the same five

Organizational Plaintiffs (collectively, "**Plaintiffs**") centering on challenges to the Government's

2018 and 2019 revisions to the so-called "public charge" framework under the First Trump

Administration. The Plaintiffs sued the United States Citizenship and Immigrations Services (the

"**USCIS**"), and the Department of Homeland Security (the "**DHS**"), and their respective directors

and acting secretaries (together, the "**Government**"), challenging the promulgation,

implementation, and enforcement of a rule relating to standards for denying lawful permanent

resident status to immigrants deemed likely to become a "public charge." *Make the Road 1* was

followed by a separate but related case, filed by the same Plaintiffs, along with other individual

plaintiffs who are not party to this action, against the United States Department of State, the

---

[1] *Make the Road 1* was previously captioned as *Make the Road New York v. Cuccinelli* and, later, *Make the Road New York v. Jaddou*.

Secretary of State, the Department of Health and Human Services, its director, and the then-President of the United States. *See Make the Road New York v. United States Dep't. of State*, No. 19-CV-11633 (GBD) (OTW) ("*Make the Road 2*")[2].

On October 11, 2019, Plaintiffs prevailed on a motion seeking a nationwide preliminary injunction enjoining the implementation and enforcement of the Public Charge Grounds Rule by DHS. (ECF 147). The Second Circuit panel unanimously affirmed the preliminary injunction while limiting its geographic scope. *New York v. DHS,* 969 F.3d 42 (2d Cir. 2020)[3].

On March 1, 2024, Plaintiffs moved for attorneys' fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412 (the "**EAJA**"). (ECF Nos. 361-366). Based on Defendants' objections, Plaintiffs revised their initial attorneys' fees calculations and now seek a total of $1,261,171.75 in combined attorneys' fees and expenses in connection with this litigation. (*See* Amended Hrs. Calc., ECF 373-3).

For the following reasons, I respectfully recommend that Plaintiffs' motion for attorneys' fees be **GRANTED IN PART** and Plaintiffs should be awarded **$994,833.39** in attorneys' fees and **$14,987.50** in costs and expenses, for a total of **$1,009,870.89.**

---

[2] *Make the Road 2* was previously captioned *Make the Road New York v. Pompeo* and, later, *Make the Road New York v. Blinken.*

[3] This caption is a consolidation on appeal of *Make the Road 1* and a separate, also related, case brought by the states of New York, Vermont, and Connecticut as well as the City of New York.

II.    **BACKGROUND**

A.    **Factual History**

The Court assumes familiarity with the facts of this case and briefly summarizes here. The facts below are derived from the pleadings and from Judge Daniels's Decision and Order of October 11, 2019, granting Plaintiffs' motion for a preliminary injunction. (*See* ECF 147).

i.    *The Challenged Rule*

Plaintiffs initiated this action on August 27, 2019, seeking declaratory and injunctive relief under the Administrative Procedure Act, 5 U.S.C. §§ 551, 553, 702, 706(2) *et seq.*, the Immigration and Nationality Act (the "**INA**"), 8 U.S.C. §§ 1103, 1255, 1182 *et seq.,* and the Equal Protection and Due Process Clauses of the 5th Amendment in connection with the government's promulgation of the Inadmissibility on Public Charge Grounds rule applying to individuals seeking to become lawful permanent residents of the United States ("**the Rule**"). (ECF 1). The Rule, which was promulgated by the DHS on August 14, 2019, effective February 24, 2020, redefined the term "public charge" and established new, additional criteria for public charge determinations during consular processing. (Compl., ECF 1 at ¶ 3); (Mem. Decision & Order, ECF 147 at 13-15); *and see* 22 C.F.R. § 40.41 (previously, Visas: Ineligibility Based on Public Charge Grounds, 84 Fed. Reg. 54,996 (Oct 11, 2019)).

ii.    *The INA and Public Charge Framework*

Under the INA, a prospective immigrant seeking permanent residence in the United States must apply for and be issued an immigrant visa through consular processing at a United States embassy or consulate. *See* 8 U.S.C. §§ 1202(a), (e); 22 C.F.R. § 42.62. Part of the consular process entails an evaluation of whether the applicant is ineligible for a visa under the INA's so-

called "public charge" provision. *See* 8 U.S.C. § 1182(a)(4). Under this rule, the government may find that a noncitizen is inadmissible if "in the opinion of the consular officer at the time of application for a visa" he "is likely at any time to become a public charge." 8 U.S.C. § 1182(a)(4)(A). When determining whether an applicant is likely to become a public charge, the consular office must consider the applicant's: (1) age; (2) health; (3) family status; (4) assets, resources, and financial status; and (5) education and skills. 8 U.S.C. § 1182(a)(4)(B).

Before the challenged government action, a "public charge" was defined as a noncitizen who had become or was likely to become "primarily dependent on the government for subsistence, as demonstrated by either (1) the receipt of public cash assistance for income maintenance or (2) institutionalization for long term care at government expense." Field Guidance on Deportability and Inadmissibility on Public Charge Grounds, 64 Fed. Reg. 28,689 (May 26, 1999) (internal quotation marks omitted). This definition represented longstanding law. (*See* Mem. Decision & Order, ECF 147 at 13-15). The Rule changed the consular evaluation of whether an applicant was likely to become a public charge. *Id.*

iii.    *The Parties*

This action involves the same five Organizational Plaintiffs (collectively the "**Organizational Plaintiffs**") as *Make the Road 2* but does not include the individual plaintiffs. (ECF 1). The Organizational Plaintiffs, Make the Road New York, African Services Committee, Central American Refugee Center New York, Asian American Federation, Catholic Charities Community Service (Archdiocese of New York) ("**Catholic Charities**"), and Catholic Legal Immigration Network, Inc., are all nonprofit organizations that work with and for immigrants. (ECF 1 at ¶¶21–46). Among other things, the Organizational Plaintiffs provide direct legal,

educational, and health-related services to immigrants, and administer community outreach
programs that disseminate information on immigration policies, make referrals to social service
providers, and host training sessions regarding immigration-related matters. (Compl., ECF 1
at ¶¶21–46). As Judge Daniels noted, the Organizational Plaintiffs not only would have, but
already had expended significant time and resources to provide new services as a direct result
of the Challenged Rules. (Mem. Decision & Order, ECF 147 at 9-10).

### B.  Procedural History

Plaintiffs initiated this action on August 27, 2019. (Compl., ECF 1). Plaintiffs sought: (1) a
declaratory judgment stating that the Challenged Rule is unauthorized by law and contrary to
the Constitution and laws of the United States; (2) *vacatur* of the Challenged Rule; and (3) an
order preliminarily and permanently enjoining the Government from implementing, or taking
any actions to enforce or apply, the Challenged Rule. (*Id*. at 115). On September 9, 2019,
pursuant to Fed. R. Civ. P. 65 and § 705 of the Administrative Procedure Act, Plaintiffs moved for
a preliminary injunction, enjoining the Government from applying or implementing the
Challenged Rule. (ECF 38). The Government opposed the motion on September 27, 2019. (ECF
129).

On October 11, 2019, Judge Daniels granted Plaintiffs' motion for a nationwide
preliminary injunction, enjoining the application or implementation of the rule nationwide, as
well as a stay postponing the effective date of the Rule pending a final ruling on the merits. (ECF
147). The Government's subsequent motions for a stay pending appeal were denied. *New York
v. DHS*, No. 19-CV-7777 (GBD), 2019 WL 6498250, at *3 (S.D.N.Y. Dec. 2, 2019), *aff'd* No. 19-

3591, 2020 WL 95815, at *1 (2d Cir. Jan. 8, 2020).[4] On January 27, 2020, the Supreme Court stayed the preliminary injunction pending appeal but did not issue an opinion explaining its order. *DHS v. New York*, 589 U.S. 1173 (2020). The Government began implementing the Rule in February 2020. On August 4, 2020, the Second Circuit panel unanimously affirmed the preliminary injunction while limiting its geographic scope. *New York v. DHS*, 969 F.3d 42 (2d Cir. 2020). The Government filed a petition for a writ of certiorari, which the Supreme Court granted on February 22, 2021. *DHS v. New York,* 141 S. Ct. 1370 (2021). On March 9, 2021, the Government voluntarily dismissed their petition for certiorari. *DHS v. New York,* No. 20-449 (Mar. 9, 2021). The Supreme Court's stay dissolved, *DHS v. New York*, 589 U.S. 1173 (2020), and the preliminary injunction took effect.

Judge Daniels referred this case to me for general pretrial management on August 27, 2020. (ECF 233). On March 15, 2021, DHS rescinded the Rule. On September 9, 2022, DHS issued a superseding rule, which became effective on December 23, 2022, which omits the limitations imposed by the prior Rule, returning the public charge ground of inadmissibility to its previous scope. 87 Fed. Reg. 55,472, 55,473 (Sept. 9, 2022); *see* Miller Decl., ECF 363-8 at 2. On March 3, 2023, Plaintiffs filed a notice of voluntary dismissal. (ECF 342).

On March 1, 2024, Plaintiffs moved for attorneys' fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412 (the "**EAJA**"). (ECF Nos. 361-366). Plaintiffs now seek $1,258,985.91 in attorneys' fees in connection with this litigation. (ECF 362 at 23). The Government opposed Plaintiff's motion on April 12, 2024. (ECF 369).

---

[4] *Make the Road 1* was procedurally consolidated for pre-trial purposes with *New York v. DHS*, a separate case asserting most of the same claims. *See* No. 19- cv-7777-GBD-OTW at ECF 78.

I had issued a Report and Recommendation on a motion for attorneys' fees in *Make the Road 2,* but I had not issued a Report and Recommendation in this case at the time the United States Supreme Court heard oral argument in *Lackey v. Stinnie,* 604 U.S. 192 (2025). *Lackey* granted *certiorari* on the following questions:

> (1) [w]hether a party must obtain a ruling that conclusively decides the merits in its favor, as opposed to merely predicting a likelihood of later success, to prevail" under a statute for attorneys' fees; and
> (2) [w]hether a party must obtain an enduring change in the parties' legal relationship from a judicial act, as opposed to a non-judicial event that moots the case, to prevail" under a statute for attorneys' fees.

604 U.S. 192.

On February 26, 2025, in response to *Lackey*, Judge Daniels recommitted the Report and Recommendation in *Make the Road 2* to me for purposes of analyzing any impact of *Lackey* on Plaintiff's eligibility for attorney's fees. (ECF 379). This Court also consolidated briefing on that issue in *Make the Road 2* with this case. (ECF 384). Plaintiffs submitted their supplemental briefing on July 2, 2025. (ECF 385); The Government opposed on July 25, 2025. (ECF 388); and Plaintiffs replied on August 12, 2025. (ECF 393).

### III.    ELIGIBILITY FOR EAJA FEES

Under the EAJA,

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

The purpose of the Act is to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government" and to "ensure that certain individuals, partnerships, corporations . . . or other organizations will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved. *Scarborough v. Principi*, 541 U.S. 401, 406–407 (2004) (omission in original) (quoting H.R. Rep. No. 96-1005, pt. 1, at 9 (1980) and H.R. Rep. No. 99-120 at 4 (1985)). "The EAJA renders the United States liable for attorneys' fees for which it would not otherwise be liable, and thus amounts to a partial waiver of sovereign immunity. . . [which] must be strictly construed in favor of the United States." *Ardestani v. INS*, 502 U.S. 129, 137 (1991).

An award for EAJA fees is appropriate where: (1) the movant demonstrates that they are eligible for EAJA fees; (2) the government's position was not substantially justified; (3) no special circumstances make an award unjust; and (4) the fee application was submitted within thirty days of final judgment in the action. *Comm'r, INS v. Jean*, 496 U.S. 154, 158 (1990); *Kerin v. United States Postal Serv.,* 218 F.3d 185, 189 (2d Cir. 2000) (citing 28 U.S.C. § 2412(d)). The applicant bears the burden of showing that they are eligible to receive an award. 28 U.S.C. § 2412(d)(1)(B); *Scarborough*, 541 U.S. at 414. The government "bears the burden of showing that [its] position was substantially justified or that special circumstances make an award unjust." *Ericksson v. Comm'r of Social Security*, 557 F.3d 79, 81–82 (2009) (citing28 U.S.C. § 2412(d)(1)(A).

**A. Only Four of the Five Organizational Plaintiffs are Statutorily Eligible for EAJA Fees**

For the reasons stated in my March 3, 2026, Amended Report and Recommendation in *Make the Road 2*, I find Catholic Charities is ineligible for attorneys' fees here. (*See Make the Road 2*, ECF 394).

**B. Plaintiffs Are the Prevailing Parties**

The Government argues that Plaintiffs are not prevailing parties because the two preliminary injunctions secured in this case were stayed by appellate courts. (Mem. of Law in Opp., ECF 369 at 1). Further, the Government contends that such a victory is merely "transient" and does not confer prevailing party status. (*Id*.). The Government's argument is unconvincing. I find that Plaintiffs have met their burden of demonstrating that they prevailed with respect to the entire litigation, and that they are thus eligible for a full award under the EAJA.

To show that they are eligible to receive an award under the EAJA, a plaintiff must demonstrate that they are a prevailing party. 28 U.S.C. § 2412(d)(1)(A). A party is "prevailing" where there is either "a court ordered chang[e] [in] the legal relationship between [the plaintiff] and the defendant," or "a material alteration of the legal relationship." *Vacchio v. Ashcroft*, 404 F.3d 444, 451 (2d Cir. 2004) (citing *Pres. Coal. of Erie Cnty. v. Fed. Transit Admin*, 356 F.3d 444, 452 (2d Cir. 2004) (quoting *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 604 (2005))). In determining whether to award attorneys' fees in connection with an injunction or stay, the Court must assess whether the applicant prevailed on the merits by analyzing the decisional circumstances and reasoning underlying the grant of preliminary relief. *Vacchio*, 404 F.3d at 673 (citing *Haley v. Pataki*, 106 F.3d 478, 483 (2d Cir. 1997)); *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) (citing

*LaRouche v. Kezer*, 20 F.3d 68 (2d Cir. 1994). Courts have acknowledged "the fine line that sometimes divides successful from unsuccessful work" and held that "a plaintiff who has substantially prevailed in the outcome of the underlying claim is entitled to be awarded counsel's fees and expenses incurred for all work reasonably performed in pursuit of the ultimate result achieved, including efforts expended on unsuccessful issues." *McClain v. Barnhart*, 186 F. Supp. 2d 435, 438 (S.D.N.Y. 2002) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983)). *See also Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 539 (S.D.N.Y. 2008). The Second Circuit has also affirmed full awards under the EAJA where counsel's efforts advanced the legal relationship between the parties, and the parties have settled on the merits prior to a preliminary injunction. *E.g.*, *Env't Def. Fund, Inc. v. Watt*, 722 F.2d 1081, 1083–84 (2d Cir. 1983). In contrast, a party who has achieved a desired result because his lawsuit brought about a voluntary change in their opponent's conduct, but who failed to secure a judgment on the merits is not a "prevailing party" for the purposes of EAJA fees. *Ma v. Chertoff*, 547 F.3d 342, 344 (2d Cir. 2008) (per curiam) (citing *Buckhannon Bd.*, 532 U.S. at 601, 605 (2001).

   ***i.   Plaintiffs prevailed because they achieved a court-ordered change in the legal
   relationship between the parties***

   I find that the preliminary injunction represented a court-ordered change in the legal relationship between the parties. The Court's grant of the preliminary injunction included a careful, detailed assessment that Plaintiffs had demonstrated a likelihood of success on the merits and that a nationwide injunction was therefore warranted. (ECF 147 at 6-21). Second, it is clear from the record that counsels' efforts at both earlier and later stages in the litigation advanced the legal relationship between the parties, including preparing the Complaint, Plaintiffs moving for a preliminary injunction, the Government's opposition, the Government's

subsequent appeal of the grant a preliminary injunction and ultimately Plaintiffs filing for

voluntary dismissal. This case involved a common core of facts and related legal theories

challenging the inextricably intertwined actions of USCIS and DHS, and Plaintiffs are entitled to

an award of counsels' fees incurred for all work reasonably performed in pursuit of the ultimate

result achieved. *See McClain*, 186 F. Supp. 2d at 438.

 *ii.* *The Government did not voluntarily change the parties' legal relationship*

 The Government contends that Plaintiffs are not prevailing parties because the

preliminary injunction was stayed pending appeal in January 2020. (Mem. of Law in Opp., ECF

369 at 8). The Government cites to *Dimartile v. Hochul*, 80 F.4th 443, 445 (2d Cir. 2023) to

support this contention. (*Id.*). However, the Government's reliance is misplaced. In *Dimartile*,

the preliminary injunction was stayed and then the case became moot. 80 F.4th 443, 445 (2d

Cir. 2023). Here, the timeline is not so straightforward. The Supreme Court granted a stay of the

preliminary injunction pending appeal in Second Circuit. *DHS v. New York*, 589 U.S. 1173 (2020).

The Second Circuit panel unanimously affirmed the preliminary injunction while limiting its

geographic scope. *New York v. DHS*, 969 F.3d 42 (2d Cir. 2020). Afterward, the Government

filed a petition for a writ of certiorari, which the Supreme Court granted. *DHS v. New York,* 141

S. Ct. 1370 (2021).  The Government then voluntarily dismissed its own petition, *DHS. v. New*

*York,* No. 20-CV-0449 (Mar. 9, 2021), dissolving the Supreme Court's stay, thereby allowing the

preliminary injunction to take effect. The net effect was to leave the Second Circuit's affirmance

of the preliminary injunction as the final adjudication on the merits of this action. *DHS v. New*

*York*, 589 U.S. 1173 (2020). Only *after* the preliminary injunction was in effect did DHS rescind

the Rule and issue a superseding rule, rendering the case moot. This was not a "voluntary"

change by the Government. *See Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 605 (2001) (concluding that a judicially sanctioned change in the legal relationship of the parties, not a voluntary change, confers prevailing party status).

      *iii.  Lackey does not affect Plaintiffs' eligibility for attorneys' fees*

For substantially the same reasons articulated in the Amended Report and Recommendation in *Make the Road 2*, I also find -- and respectfully recommend that the Court find -- that *Lackey* does not affect Plaintiff's entitlement to attorneys' fees under the EAJA here. (*See Make the Road 2*, at ECF 394).

**C.  The Government's Position Was Not Substantially Justified**

If the prevailing party can show that they are eligible for EAJA fees the burden then shifts to the Government to demonstrate that its position was substantially justified. 28 U.S.C. § 2412(d)(1)(A); *Pierce v. Underwood*, 487 U.S. 552, 559 (1988). The movant must "allege that the position of the United States was not substantially justified," but the burden resides with the Government to demonstrate to the contrary. 28 U.S.C. § 2412(d)(2)(B); *Scarborough*, 541 U.S. at 414–15. The Government's position encompasses "the position taken by the United States in the civil action [and] the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D). *See also Healey v. Leavitt*, 485 F.3d 63, 67 (2d Cir. 2007). When evaluating the Government's position, the court makes one threshold determination for the entire civil action, treating the case as an inclusive whole. *Jean*, 496 U.S. at 160. For EAJA purposes, a court should inquire into both the underlying agency

determination affecting the party, and also the Government's litigation strategy in defense of that determination. *Ericksson*, 557 F.3d at 81–82.

A position is substantially justified if it is "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Gomez-Beleno v. Holder*, 644 F.3d 139, 145 (2d Cir. 2011). The Government must demonstrate reasonableness by a "strong showing." *Cohen v. Bowen*, 837 F.2d 582, 585 (2d Cir. 1988). The Government's position must have a reasonable basis in law and fact. *Healey*, 485 F.3d at 67 (citing *Pierce*, 487 U.S. at 566 n.2). It is not presumed "that the Government's position was not substantially justified simply because it lost the case." *Scarborough*, 541 U.S. at 415 (internal citations omitted). However, either "the Government's prelitigation conduct or its litigation position could be sufficiently unreasonable by itself to render the entire Government position not 'substantially justified.'" *Healey*, 485 F.3d at 67 (citing *United States v. $19,047.00 in U.S. Currency*, 95 F.3d 248, 252 (2d Cir. 1996)). *See also Watt*, 722 F.2d at 1086 ("The government may lack substantial justification for its position even though it does not insist upon an unreasonable stance through to the resolution of a case.").

The Government has not met its burden of showing that its position on the Challenged Rule was substantially justified, because the Rule is both arbitrary and capricious and violates the INA.

### i. *The Rule is Arbitrary and Capricious*

Judge Daniels found that the Rule was arbitrary and capricious:

Defendants do not articulate why they are changing the public charge definition, why this new definition is needed now, or why the definition set forth in the Rule–which has absolutely no support in the history of U.S. immigration law–is reasonable. It is repugnant to the American Dream of the opportunity for

prosperity and success through hard work and upward mobility. Immigrants have always come to this country seeking a better life for themselves and their posterity. With or without help, most succeed.

ECF 147 at 17-19.

The Second Circuit, in no uncertain terms, affirmed Judge Daniel's findings:

DHS anchors its decision to change its interpretation in the perceived shortcomings of the prior interpretation, and then fails to identify any actual defect, it has not provided a "reasoned explanation" for its actions – particularly when it bases its changed position on its reading of a statute, and it is the new Rule, rather than the old Guidance, that strays from congressional intent.

*New York v. DHS*, 969 F.3d at 81.

   ii.    <u>The Rule is contrary to the INA</u>

The Second Circuit also unanimously determined that the Rule is contrary to the INA: The Rule categorically renders non-citizens public charges – i.e., not self-sufficient – if they are likely to access any quantity of the enumerated benefits for a limited number of months. We think it plain on the face of these different interpretations that the Rule falls outside the statutory bounds marked out by Congress. Our conclusion is bolstered by the fact that many of the benefits newly considered by the Rule have relatively generous eligibility criteria and are designed to provide supplemental assistance to those living well above the poverty level…

*New York v. DHS*, 969 F.3d at 75. (internal citations omitted).

   The Second Circuit reasoned that historical determinations of public charge considered instances of public benefits usage that were likely to regularly reoccur, *not* merely temporary usage. *Id.* at 76. Historically, receipt of public benefits alone has not rendered immigrants to be public charges. *Id.* Accordingly, the Government's position in adopting and defending the Rule did not have "a reasonable basis in law and fact." *Healey*, 485 F.3d at 67.

**D.** <u>**There Are No Special Circumstances That Would Render an Award Unjust**</u>

The EAJA's special circumstances provision "explicitly directs a court to apply traditional equitable principles in ruling upon an application for counsel fees by a prevailing party" and gives the district court discretion to deny awards where equitable considerations dictate that an award should not be made. *United States v. 27.09 Acres of Land, More or Less, Situated in Town of Harrison & Town of N. Castle*, 43 F.3d 769, 772 (2d Cir. 1994) (citing *Oguachuba v. I.N.S.,* 706 F.2d 93, 98 (2d Cir. 1983), H.R. Rep. No. 1418, 96th Cong., 2d Sess. at 11 (1980)). Neither party contends that special circumstances apply here.

Accordingly, I find that Plaintiffs with the exception of Catholic Charities are entitled to EAJA fees.

**IV.    CALCULATION OF AWARD**

The EAJA provides that the fees awarded "shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A); *Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 189 (2d Cir. 2000). The district court has broad discretion in ruling on fee awards under the EAJA and "need not scrutinize the time spent on each itemized task for which fees are requested." *Salvo v. Comm'r of Soc. Sec.*, 751 F. Supp. 2d 666, 674 (S.D.N.Y. 2010) (citing *Aston v. Sec'y of Health & Human Servs.*, 808 F.2d 9, 11 (2d Cir. 1986). When analyzing requests for fees under the EAJA, the court does have a duty to discount any "exorbitant, unfounded, or procedurally defective fee applications." *Salvo*, 751 F. Supp. 2d at 674.

As Plaintiffs are entitled to attorneys' fees under the EAJA, the Court must determine the scope of the award. In determining what constitutes a reasonable attorney fee, a court calculates a "lodestar" by multiplying the reasonable number of hours that it finds the prevailing party expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). There is a strong presumption that the lodestar figure is reasonable. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).

The requested fee award in this action is large, but it reflects the unique and complex issues litigated in the action, exactly the kind of "special factor" the Second Circuit contemplated in *Kerin*. *See* 218 F.3d at 189. In a similar action in this district, the plaintiffs obtained a fee award of $592,954.26, inclusive of costs, for a team of twenty-four timekeepers. *Nielsen*, 2020 WL 6393583 at *4. *See also J.L. v Cuccinelli*, 18-CV-4914 (NC) (ECF 245) (where parties in the Northern District of California settled for a fee and cost award of $875,000, consisting of $860,870.70 in fees and $14,129,30 in costs, for 4,481.7 hours of work by twenty-three timekeepers). Thus, there is precedent for a fee and cost award of the size requested by Plaintiffs. For the reasons that follow, I respectfully recommend Plaintiffs be awarded their requested costs as to their expert expenses only and 80% of their requested fees

### A. Cost of Living Adjustment ("COLA")

Plaintiffs' counsel argues that they are entitled to a COLA, which the Government does not challenge. (ECF 369). As described above, the EAJA sets a maximum billing rate of $125 per hour but permits a court to adjust for annual increases in the cost of living. 28 U.S.C. § 2412(d)(2)(A); *Torres v. Barnhart*, 02-CV-9209 (AJP), 2007 WL 1810238, at *15 (S.D.N.Y. 2007) (citing *Trichilo v. Sec'y of Health & Human Servs.*, 823 F.2d 702, 706–07 (2d Cir.

1987); *Caplash v. Nielson*, 294 F. Supp. 3d 123, 136 (W.D.N.Y. 2018). The court must apply a

different COLA, as measured by the Consumer Price Index (the "**CPI-U**") for each year in which

legal work was performed, rather than applying a single adjustment to the total hours billed.

*Torres*, 2007 WL 1810238, at *15 (citing *Kerin*, 218 F.3d at 194). *See also*, *Harris v. Sullivan*, 968

F.2d 263, 265 (2d Cir. 1992). Courts calculate the COLA by multiplying the $125 statutory rate

by the annual average CPI-U for the years in which counsel's work was performed, and then

dividing by the CPI-U figure for March 1996, the effective date of the EAJA's $125 statutory

rate. *Cutajar v. Comm'r of Soc. Sec.*, 19-CV-05569 (SDA), 2020 WL 2999232, at *2 (S.D.N.Y.

2020) (citing *Caplash*, 294 F. Supp. at 136 (collecting cases)). Plaintiffs propose using the CPI-U

for the Northeast region, (ECF 363 at 3), which I find to be reasonable. *See Santos v. Astrue*, 752

F. Supp. 2d 312, 417 (S.D.N.Y. 2010) (adopting CPI-U); *Caplash*, 294 F. Supp. 2d at 136. The CPI-

U figure for the Northeast Region for March 1996 was 166.5, and the CPI-Us for the Northeast

region and resulting adjusted rates are as follows: [5]

| Year | CPI-U | Adjusted Rate = [(CPI-U) x 125]/166.50 |
|------|-------|----------------------------------------|
| 2018 | 273.641 | 205.436 |
| 2019 | 278.164 | 208.832 |
| 2020 | 282.920 | 212.402 |
| 2021 | 292.303 | 219.447 |
| 2022 | 310.141 | 232.839 |
| 2023 | 321.998 | 241.740 |
| 2024 | 328.006 | 246.251 |

---

[5] U.S. Bureau of Labor Statistics, Consumer Price Index – New York-Newark-Jersey City, NY-NJ-PA (1982-84 = 100: Northeast Information Office: U.S. Bureau of Labor Statistics (https://www.bls.gov/regions/northeast/data/xg-tables/ro2xgcpiny.htm).

As calculated above, and as requested by Plaintiffs, Plaintiffs' rates shall be: **$205.44** per hour for time billed in 2018; **$208.83** per hour for time billed in 2019; **$212.40** per hour for time billed in 2020; **$219.45** per hour for time billed in 2021; **$232.84** per hour for time billed in 2022; **$241.74** per hour for time billed in 2023; and **$246.25** per hour for time billed in 2024.

B. **The Government's Objections and Requested Reductions**

The Government first argues for a 20% reduction in Plaintiffs' overall fees because Catholic Charities is ineligible to recover fees under the EAJA. (*See* § III.A *supra)*. For the reasons previously stated, I agree. Excluding Catholic Charities brings the number of plaintiffs in this case down from 5 to 4, or by 20%. Accordingly, a 20% reduction in the total award of fees is required. *See Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383, 393–394 (2d Cir. 1985) (holding when one or more plaintiffs are ineligible for EAJA fees, the court must reduce the fees award in proportion to the number of ineligible plaintiffs.)

The Government next argues that Plaintiffs are not entitled to fees for work unrelated to securing the preliminary injunction.(ECF 369 at 27-28). I disagree.

"The district court has the discretion to award fees for the entire litigation where the claims are inextricably intertwined and involve a common core of facts or [are] based on related legal theories." *Kerin*, 218 F.3d at 194 (citing *Dominic v. Consolidated Edison Co.,* 822 F.2d 1249, 1259 (2d Cir. 1987) (internal quotation marks omitted) (holding that EAJA fees should not be reduced where an applicant who had prevailed only on his contract claim was still entitled to fees in connection with his failed unjust enrichment claim because the two claims overlapped). Where the successful and the unsuccessful claims are interrelated and have required essentially the same proof, a party's lack of success on some of his claims does not

require the court to reduce the fee award. *See Murphy v. Lynn*, 118 F.3d 938, 952 (2d Cir. 1997).

A fine line may divide successful from unsuccessful work, and a plaintiff who has substantially

prevailed "is entitled to be awarded counsel's fees and expenses incurred for all work

reasonably performed in pursuit of the ultimate result achieved, including efforts expended on

unsuccessful issues." *McClain v. Barnhart*, 186 F. Supp. 2d 435, 438 (S.D.N.Y. 2002) (citing

*Hensley*, 461 U.S. at 434–35). *See also Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 539 (S.D.N.Y.

2008). As the Supreme Court has noted, in cases such as these,

> Much of counsel's time will be devoted generally to the litigation as a whole,
> making it difficult to divide the hours expended on a claim-by-claim basis. Such a
> lawsuit cannot be viewed as a series of discrete claims. Instead, the district court
> should focus on the significance of the overall relief obtained by the plaintiff in
> relation to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S. at 435. As discussed above, (*see supra* § III.B), Plaintiffs are the prevailing

party with respect to the entire litigation. Counsel's efforts before and beyond their efforts to

obtain a preliminary injunction merit an award of attorneys' fees.

The Government next objects that Plaintiffs' fees are excessive due to overstaffing. (ECF

369 at 29). It is true that Courts in the Second Circuit have reduced fee awards for that reason,

however no such reduction is warranted here because Plaintiffs have already made significant

reductions to their billing records before filing the instant fees motion. *c.f. R.F.M. v. Nielsen*,

18-CV-5068 (LLS) (OTW), 2020 WL 6393583 (S.D.N.Y. 2020), at \*7, *R. & R. adopted at* 18-CV-

5068 (LLS), 2020 WL 6393718, at \*1 (S.D.N.Y. 2020) (recommending adopting the plaintiff's

proposed 10% reduction for overstaffing). For example, Paul Weiss, who by far accounts for the

largest share of billable hours, has already reduced its 13,600 diaried hours by 8,300 because it

is only billing time for the six "core team members" and not every other attorney and staff member who worked on the case. (*See* ECF 366 at ¶14).

The Government's remaining objections are that Plaintiffs have improperly billed for non-compensable time, have provided only "vague" entries, and/or have engaged in "block billing." (ECF 369 at 26). None of these allegations are supported by any citations or examples. Nonetheless, Plaintiff has submitted an additional, and substantial, declaration which identifies and addresses Defendants' objections. (*See* ECF Nos. 373; 373-2; 373-3; 373-4; 373-5; 373-6; 373-7). Moreover, Paul Weiss concedes an additional 149 hours in response to the Defendants' objections. (ECF Nos. 373; 373-7). After the Court has undertaken its own review of the nearly 5,250 hours sought, I find that is sufficient. *See S.H.W. v. New York City Dep't of Educ.*, No. 21-CV-7003 (PGG) (OTW), 2023 WL 8480699 at *2 (S.D.N.Y. Mar. 21, 2023) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011); (the goal of fee shifting is to achieve rough justice, not auditing perfection).

### C. Final EAJA Fees Award

Thus, the Plaintiffs' fee award should be reduced as follows:

| Counsel | Total Fees Requested | 80% of Requested Fees |
|---|---|---|
| Paul Weiss | 857,033.62 | 685,626.90 |
| Legal Aid | 132,554.47 | 106,043.58 |
| CCR | 211,125.54 | 168,900.43 |
| Sam Miller | 42,890.06 | 34,312.48 |
| Totals | 1,243,603.69 | 994,833.39 |

### D. Costs and Expenses

Here, Plaintiffs submit an itemized breakdown of non- expert expenses at ECF 375-1 as follows:

| Expense Type | Expenses | Fee |
|---|---|---|
| Reproduction | "NYO PARALEGAL INV...08/13/2019" | 19.63 |
| Reproduction | "Filing Service—Filing Fee—USCOA-2D" | 952.66 |
| Reporting Services | "transcript of proceedings 10/7/19" | 562.48 |
| Reporting Services | "transcript of 9/30 appearance in State of NY v" [sic.] | 99.90 |
| Reporting Services | "Transcript of 4/28 appearance in State of NY v. Dept. of Homeland" [sic.] | 99.90 |
| "Misc. Court Expense" | "[S.D.N.Y] case commencement fee" | 400.00 |
| "Misc. Court Expense" | "Southern District of New York Reporters transcript fee" | 455.99 |
| TOTAL | | 2,580.56 |

Paul Weiss also seeks recovery of the following uncontested expert expenses, itemized at ECF

373-1 as follows:

| Expert | Expenses |
|---|---|
| Ryan Patrick Allen | 5,625.00 |
| Ryan Patrick Allen's Research Assistant | 3,750.00 |
| Leighton Ku | 600.00 |
| Jennifer Lynne van Hook | 4,162.50 |
| Diane Schanzenbach's[6] Research Assistant | 850 |
| TOTAL | 14,987.50 |

Upon review, I find that Paul Weiss's non-expert fees represent "charges—such as

Westlaw research, PACER fees, printing, word processing, and shipping charges—that would

not ordinarily be charged to clients and thus should not be recovered."  *See John Wiley & Sons,

Inc. V. Book Dog Books*, *LLC*, 327 F. Supp. 3d 606, 648 (S.D.N.Y. 2018). However, as Defendants

do not contest Paul Weiss's expert expenses, I respectfully recommend that they should be

awarded in the full amount of $14,987.50.

---

[6] Paul Weiss's expert expense totals do not include an entry for Diane Schanzenbach.

## V.    CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiffs' motion for

attorneys' fees be **GRANTED IN PART** as follows:

| Counsel | Attorneys' Fee | Expenses | Allowed Total (Fees and Costs) |
|---|---|---|---|
| Paul Weiss | 685,626.90 | 14,987.50 | 700,614.40 |
| Legal Aid | 106,043.58 | 0 | 106,043.58 |
| CCR | 168,900.43 | 0 | 168,900.43 |
| Sam Miller (CCR) | 34,312.48 | 0 | 34,312.48 |
| TOTALS | 994,833.39 | 14,987.50 | 1,009,870.89 |

## VI.    OBJECTIONS

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

fourteen (14) days (including weekends and holidays) from receipt of this Report to file written

objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). A

party may respond to any objections within fourteen (14) days after being served. Such

objections, and any responses to objections, shall be addressed to the Honorable George B.

Daniels, United States District Judge. Any requests for an extension of time for filing objections

must be directed to Judge Daniels.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER**

**OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140,

155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v.

Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir.

1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir. 1983).


Respectfully submitted,


Dated: March 5, 2026
     New York, New York

/s/ *Ona T. Wang*
_____

**Ona T. Wang**
United States Magistrate Judge