**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MAKE THE ROAD NEW YORK, *et al.*, <br><br>                     *Plaintiffs*, <br><br> v. <br><br> MARCO RUBIO,[1] in his official capacity as Secretary of State, *et al.*, <br><br>                     *Defendants*. | **No. 19-cv-11633 (GBD) (OTW)** |
| MAKE THE ROAD NEW YORK, *et al.*, <br><br>                     *Plaintiffs*, <br><br> v. <br><br> JOSEPH EDLOW,[2] in his official capacity as Acting Director of U.S. Citizenship and Immigration Services (USCIS), *et al.*, <br><br>                     *Defendants*. | **No. 19-cv-07993 (GBD) (OTW)** |

**DEFENDANTS' CONSOLIDATED OBJECTION TO THE MAGISTRATE JUDGE'S REPORTS AND RECOMMENDATIONS REGARDING PLAINTIFFS' MOTIONS FOR ATTORNEYS' FEES**

---

[1] Marco Rubio, Secretary of State, is substituted as a defendant in his official capacity under Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Joseph Edlow, Acting Director of USCIS, is substituted as a defendant in his official capacity under Rule 25(d) of the Federal Rules of Civil Procedure.

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

DISCUSSION ..................................................................................................................... 6

     I.       The Magistrate Erred in Finding that *Lackey* Does Not Control "Prevailing Party" Status Under EAJA. ...................................................................................... 7

     II.      The Magistrate Erred in Concluding that the Government's Defense Not Substantially Justified. ......................................................................................... 10

     III.    The Magistrate Erred in Finding Individual Plaintiffs Eligible for Fees in *Make the Road II*................................................................................................................ 14

     IV.    The Award $1,386,318.47 of in Fees and Costs is Excessive Given the Fleeting Nature of Plaintiffs' Preliminary Injunction. .......................................................... 14

CONCLUSION................................................................................................................... 17

i

**TABLE OF AUTHORITIES**

**Cases**

*Arizona v. City & County of San Francisco,*
596 U.S. 763 (2022).................................................................................................... 12

*Barfield v. N.Y.C. Health & Hosps. Corp.*,
537 F.3d 132 (2d Cir. 2008) ...................................................................................... 15

*Casa de Md., Inc. v. Trump*,
971 F.3d 220 (4th Cir. 2020) ..................................................................................... 11

*City & Cnty. of San Francisco v. USCIS*,
981 F.3d 742 (9t Cir. 2020) ....................................................................................... 11

*City & Cnty. of San Francisco v. USCIS*,
944 F.3d 773 (9th Cir. 2019) ..................................................................................... 11

*Cook Cnty.v. Wolf*,
962 F.3d 208 (7t Cir. 2020) ....................................................................................... 11

*De La Cruz v. Noem*,
No. C25-150-LTS, 2025 WL 3110876 (N.D. Iowa Oct. 20, 2025) ............................ 9

*Dep't of Homeland Sec. v. New York*,
141 S.Ct. 1370 (2021).......................................................................................... 3, 11

*Dep't of Homeland Sec. v. New York*,
589 U.S. 1173 (2020).......................................................................................*passim*

*Est. of Merchant v. Comm'r*,
947 F.2d 1390 (9th Cir. 1991).................................................................................... 12

*Hasou v. Jaddou*,
No. 23-7225-CV, 2024 WL 3264142 (2d Cir. July 2, 2024)...................................... 10

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).................................................................................... 14, 15, 16

*Holman v. Rollins*,
-- S. Ct. --, 2025 WL 3620423 (Dec. 15, 2025) ........................................................ 9

*Holman v. Rollins*,
No. 23-5493, 2026 WL 384150 (6th Cir. Feb. 11, 2026)............................................ 9

*Kashikov v. Noem*,
No. 25-cv-00081-HRH, 2025 WL 2320319 (D. Alaska Aug. 12, 2025) ................... 9

*Kerin v. U.S. Postal Svc.*,
   218 F.3d 185 (2d Cir. 2000) ........................................................................ 15, 16

*Lackey v. Stinnie*,
   604 U.S. 192 (2025)......................................................................................... *passim*

*Lugo v. Driscoll*,
   No. EA-25-1352, 2026 WL 309033 (D. Md. Feb. 5, 2026)...................................... 9

*Ma v. Chertoff,*
   547 F.3d 342 (2d Cir. 2008) .......................................................................... *passim*

*New York v. U.S. Dep't of Homeland Sec.*,
   475 F. Supp. 3d 208 (S.D.N.Y. 2020) .................................................................... 3

*New York v. U.S. Dep't of Homeland Sec.*,
   969 F.3d 42 (2d Cir. 2020) ..................................................................................... 3

*New York v. U.S. Dep't of Homeland Sec.*,
   974 F.3d 210 (2d Cir.) ............................................................................................ 3

*Pierce v. Underwood*,
   487 U.S. 552 (1988)...................................................................................... 10, 12

*Ramos v. Neilson*,
   No. 18-cv-01554-EMC, 2025 WL 1953463 (N.D. Cal. July 16, 2025)...................... 9

*Sampson v. Stony Brook Univ.*,
   No. 24-615, 2025 WL 686036 (2d Cir. Mar. 4, 2025) .............................................. 8

*Scarborough v. Principi*,
   541 U.S. 401 (2004)...................................................................................... 10, 11

*United States v. Ross*,
   161 F.4th 100 (2d Cir. 1015)............................................................................... 8, 9

*Wolf v. Cook Cnty.*,
   589 U.S. 1190 (2020).......................................................................................... 11

**Statutes**

8 U.S.C. § 1182(a)(4)................................................................................................. 2

8 U.S.C. § 1182(a)(4)(A) .......................................................................................... 2

28 U.S.C. § 2412....................................................................................... *passim*

28 U.S.C. § 2465(b)(1) ............................................................................................. 9

31 U.S.C. § 3727(b) ............................................................................................................ 14

42 U.S.C. § 1988(b) ...................................................................................................... 1, 5, 8

42 U.S.C. § 12205 ................................................................................................................ 8

42 U.S.C. § 1988 ............................................................................................................ 7, 16

**Regulations**

22 C.F.R. § 40.41 ................................................................................................................. 2

*Inadmissibility on Public Charge Ground*s, 84 Fed. Reg. 41,292 (Aug. 14, 2019)......................... 2

Proclamation No. 9945, 84 Fed. Reg. 53,991 (Oct. 4, 2019) ......................................... 2

*Restoring Faith in Our Legal Immigration Systems & Strengthening Integration & Inclusion Efforts for New Americans,* Exec. Order No. 14,012, 86 Fed. Reg. 8277 (Feb. 2, 2021) .......... 3

*Visas: Ineligibility Based on Public Charge Grounds*, 84 Fed. Reg. 54,996 (Oct. 11, 2019) ........ 2

**INTRODUCTION**

The Magistrate recommends that this Court ignore Supreme Court and Second Circuit precedent and award to Plaintiffs nearly $1.4 million in attorneys' fees based on the preliminary injunctions entered in the two above-captioned cases related to the Government's public charge rulemaking in 2018-2019. Respectfully, Defendants object to both of the Magistrate's report and recommendations. The Magistrate incorrectly found that the Supreme Court's decision in *Lackey v. Stinnie*, 604 U.S. 192 (2025)—which held that a party cannot qualify as a "prevailing party" if they obtain only a preliminary injunction—does not control the interpretation of "prevailing party" under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. The Magistrate reached this conclusion based on a flawed interpretation of EAJA that ignores the Second Circuit's holding in *Ma v. Chertoff,* 547 F.3d 342, 344 (2d Cir. 2008) (per curiam) that the term "prevailing party" in EAJA is a term of art with a consistent meaning across numerous fee-shifting provisions, including 42 U.S.C. § 1988(b), the fee-shifting statute at issue in *Lackey*. As such, controlling circuit precedent requires applying *Lackey* here, which precludes Plaintiffs from qualifying as prevailing parties. The Court should deny the Plaintiffs' requests for attorneys' fees on this basis alone.

Defendants also object to the Magistrate's report and recommendations because they incorrectly conclude that Government's positions in these cases were not "substantially justified." Whether the Government is substantially justified requires only that the Government possesses a reasonable basis in law and fact in defending its position. Even though it did not ultimately prevail in the preliminary injunction proceedings, the Government's position was substantially justified because the Government relied on reasonable arguments and there was no binding precedent foreclosing the Government's defenses. Indeed, the Supreme Court ultimately stayed the preliminary injunction in *Make the Road I* based on those precise arguments, which

1

establishes the de facto reasonableness of those positions.  Relying only on the preliminary injunction assessments of this Court and the Second Circuit, without accounting for the objective indicia of reasonableness shown through favorable decisions in other courts, constitutes legal error.  In addition, the Magistrate erred by finding the individual Plaintiffs in *Make the Road II* met their burden of showing eligibility for fees because they have not identified themselves to the Government.  Finally, even if the Court does not deny Plaintiffs' requests for fees outright, the Magistrate's recommended amount is unduly high and should be sharply reduced to account for the limited success in these cases and the ineligibility of Plaintiffs to qualify for EAJA fees.

## BACKGROUND

Plaintiffs filed suit in these cases to challenge Government actions regarding the "[p]ublic charge" ground of inadmissibility under the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(4).  *See* Compl., ECF No. 1, Case No. 1:19-cv-07993-GBD-OTW ("*Make the Road I*" or "MTR1");[3] *see also* Compl., ECF No. 1, Case No. 1:19-cv-11633-GBD-OTW ("*Make the Road II*" or "MTR2").[4]  Plaintiffs obtained preliminary injunctions in both cases.

In *Make the Road I*, this Court issued a nationwide preliminary injunction in October 2019 against enforcement of the DHS Public Charge Rule.  Mem. Decision & Order, MTR1 ECF

---

[3] In *Make the Road I,* Plaintiffs challenged the DHS rule published on August 14, 2019, *Inadmissibility on Public Charge Grounds*, 84 Fed. Reg. 41,292, that amended DHS regulations for how DHS would determine whether a noncitizen was admissible because he or she "is likely at any time to become a public charge" under 8 U.S.C. § 1182(a)(4)(A) (hereinafter referred to as "challenged rule" or "challenged rulemaking").

[4] In *Make the Road II*, Plaintiffs challenged three agency actions: (1) a January 2018 revision to portions of the Department of State Foreign Affairs Manual, 9 FAM § 302.8-2, pertaining to evaluation of whether a via applicant is likely to become a public charge under 8 U.S.C. § 1182(a)(4); (2) the President's October 2019 Proclamation, No. 9945, 84 Fed. Reg. 53,991 (Oct. 4, 2019); and (3) an October 2019 interim final rule published by the Department of State, 22 C.F.R. § 40.41, *Visas: Ineligibility Based on Public Charge Grounds,* 84 Fed. Reg. 54,996 (Oct. 11, 2019) (collectively referred to as "challenged rule" or "challenged rulemaking").

Nos. 146 & 147.  Defendants filed a notice of appeal and sought a stay of the preliminary injunction.  MTR1 ECF No. 152.

In January 2020, the Supreme Court stayed this Court's preliminary injunction in its entirety, allowing the DHS Public Charge Rule to go into effect.  *Dep't of Homeland Sec. v. New York*, 589 U.S. 1173 (2020).[5]  In August 2020, the Second Circuit affirmed the October 2019 preliminary injunction, but limited the scope geographically.  *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 88 (2d Cir. 2020).  But the October 2019 preliminary injunction remained stayed pursuant to the Supreme Court's January 2020 Order.  In February 2021, the Supreme Court granted the Government's petition for writ of certiorari seeking review of the Second Circuit's decision affirming in part this Court's October 2019 preliminary injunction. *Dep't of Homeland Sec. v. New York*, 141 S.Ct. 1370 (2021).

In *Make the Road II*, this Court issued a nationwide preliminary injunction in July 2019 against the State Department's rulemaking efforts.  Mem. Decision & Order, MTR2 ECF No. 88. Defendants filed notices of appeal and sought stays of the preliminary injunction, MTR2 ECF Nos. 95 & 96.

Shortly after taking office, in February 2021, then-President Biden issued an Executive Order calling for the review of the relevant agency actions, *see Restoring Faith in Our Legal Immigration Systems and Strengthening Integration and Inclusion Efforts for New Americans,* Exec. Order No. 14,012, 86 Fed. Reg. 8277 (Feb. 2, 2021).  Defendants requested and the Court granted several stays in these cases.  *See, e.g.,* Order, MTR1 ECF No. 308; *see also, e.g.,* Order, MTR2 ECF No. 110.  Because the Government then reversed the challenged rulemaking in both

---

[5] While the Court's first preliminary injunction was stayed, Plaintiffs moved for a new preliminary injunction based on the COVID-19 pandemic and, in July 2020, this Court granted that motion issuing a nationwide injunction for the duration of the COVID-19 national emergency.  *See New York v. U.S. Dep't of Homeland Sec.*, 475 F. Supp. 3d 208, 231 (S.D.N.Y. 2020).  In September 2020, the Second Circuit stayed the July 2020 preliminary injunction, holding that the government had "shown that it is likely to succeed on the merits" of the appeal. *New York v. U.S. Dep't of Homeland Sec.*, 974 F.3d 210, 214 (2d Cir.).  Following the Second Circuit's stay of the July 2020 preliminary injunction order, DHS resumed implementation of its Public Charge Rule.

*Make the Road I* and *Make the Road II*, Plaintiffs voluntarily dismissed the cases, without prejudice. *See* Notice of Voluntary Dismissal, MTR1 ECF No. 342; Stipulation of Dismissal, MTR2 ECF No. 148. The parties also filed a joint stipulation to dismiss the *Make the Road I* case in the Supreme Court, *see* Jt. Stip. To Dismiss, *Dep't of Homeland Sec. v. New York*, No. 20-449 (Mar. 9, 2021), and, in *Make the Road II*, parties also stipulated to dismissal of Defendants appeal from the preliminary injunction ruling, *see* Mandate, MTR2 ECF No. 118.

Plaintiffs then sought attorneys' fees in both cases under EAJA § 2412. *See* Mem. of Law in Supp. of Mot. for Award of Att'ys' Fees & Related Costs, MTR2 ECF No. 155; *see also* Mem. of Law in Supp. of Pls.' Mot. for Att'ys' Fees & Expenses Under the EAJA, MTR1 ECF No. 362. This Court referred both fee requests to Magistrate Judge Wang.

In September 2024, the Magistrate issued an initial report and recommendation in *Make the Road II*, recommending an award of attorneys' fees in the amount of $376,447.58 to the Plaintiffs, an amount that included a 10 percent fee reduction because plaintiff Catholic Charities Community Services is not eligible for fees. R. & R., at 13, 34, MTR2 ECF No. 172. Defendants objected for several reasons, including because the Magistrate's recommendation was based in part on its determination that Plaintiffs qualified as prevailing parties under EAJA given that the then-pending *Lackey* case before the Supreme Court would shed light on the meaning of that statutory term. Indeed, the question presented in *Lackey* included whether a party could qualify as a "prevailing party" for fee-shifting purposes based on the entry of a preliminary injunction where external events mooted the case before a court reached a final decision. *See* Defs.' Obj., MTR2 ECF No. 174. Noting the *Lackey* aspect of the Defendants' objection, this Court recommitted the motion for attorneys' fees to the Magistrate. *See* Mem. Decision & Order, MTR2 ECF No. 175. Although Plaintiffs sought reconsideration, *see* Notice of Pls.' Mot. for Recons., MTR2 ECF No. 177, there was no ruling on Plaintiffs' request before *Lackey* issued. In February 2025, Defendants filed a letter advising the Magistrate of the Supreme Court's decision in *Lackey*, explaining that *Lackey* foreclosed any fee award to Plaintiffs because they cannot qualify as prevailing parties. *See* MTR2 ECF No. 184.

Defendants' letter also noted that "[a]lthough the fee request in *Lackey* was based on 42 U.S.C. § 1988(b), the Second Circuit has previously held that the same 'prevailing party' analysis is applicable" to EAJA § 2412.  *Id.* at 1-2 (citing *Ma,* 547 F.3d at 344) (per curiam).

In *Make the Road I*, by contrast, the Magistrate had not yet ruled on Plaintiffs' motion for attorneys' fees under EAJA when *Lackey* issued.  But as in *Make the Road II*, this Court directed the Magistrate to review and consider the effect of *Lackey* on Plaintiffs' eligibility for attorneys' fees.  *See* Order, MTR1 ECF No. 379.

In both cases, Plaintiffs then sought leave to file a consolidated motion regarding *Lackey*. *See* MTR2 ECF No. 190; *see also* MTR1 ECF No. 382.  The Magistrate granted the motion and directed the parties to submit consolidated briefing on the effect of *Lackey* on Plaintiffs' ability to obtain fees.  Order, MTR2 ECF No. 192; Order, MTR1 ECF No. 384.  Plaintiffs filed a consolidated memo in both cases.  Pls.' Consol. Mem. of L. Regarding Prevailing Party Status ("Pls.' Mem."), MTR2 ECF No. 193, and MTR1 ECF No. 385.  Defendants filed a consolidated response as well.  Defs.' Consol. Br. Regarding Pls.' Pending Applications for Fees and the Effect of *Lackey v. Stinnie*, MTR1 ECF No. 388 & MTR2 ECF No. 196 ("Defs.' *Lackey* Br.").

On March 3, 2026, the Magistrate issued an amended report and recommendation in *Make the Road II*, distinguishing the Supreme Court's *Lackey* decision by finding that EAJA's "prevailing party" term is "not a 'term of art' as contemplated by the Court in *Lackey*." Am. R. & R., at 17-19, MTR2 ECF No. 199 (dated March 3, 2026).  As such, the Magistrate reiterated its same holdings as before, namely that: (1) Catholic Charities Community Services was not eligible for fees but that the remaining Plaintiffs were eligible; (2) those Plaintiffs qualified as prevailing parties because they obtained a preliminary injunction; (3) the Government's defense of the lawsuit was not "substantially justified;" and (4) no other circumstances justified additional exclusions from or reductions to the fee award. *See generally id*.  Ultimately, the Magistrate again recommended an award of attorneys' fees in the amount of $376,447.58.  *Id.*

On March 5, 2026, the Magistrate issued its initial report and recommendation in *Make the Road I* recommending that the Court grant the Plaintiffs' fee request in part and award fees

5

and expenses in the amount of $1,009,870.89.  R. & R., MTR1 ECF No. 394 (dated March 5, 2026).  That report and recommendation incorporated the Magistrate's findings from its *Make the Road II* amended report and recommendation that the plaintiff Catholic Charities Community Services is ineligible for fees and that the Supreme Court's *Lackey* holding does not affect Plaintiffs' eligibility to claim fees as prevailing parties under EAJA.  *Id.* at 9, 12.  As in *Make the Road II,* therefore, the report and recommendation concluded that the remaining four Plaintiffs qualified as prevailing parties based on the award of the preliminary injunction in the case, that the United States' defense of the lawsuit was not "substantially justified," and that no other circumstances justified additional exclusions from or reductions to the fee award.  *Id.*

## DISCUSSION

The Magistrate's recommendation for an award of nearly $1.4 million to counsel as purported "prevailing parties" in these cases is improper and legally erroneous.  The Supreme Court's holding in *Lackey v. Stinnie, supra*, that a party cannot qualify as a "prevailing party" based on the temporary relief afforded by a preliminary injunction, applies to fee requests under EAJA and renders Plaintiffs ineligible for fees as a matter of law.  The Magistrate also erred in finding Defendants' positions were not substantially justified, that the individual Plaintiffs in *Make the Road II* met their burden of showing eligibility, and in recommending fees at all, especially given the preliminary injunctions offered only limited success, at most.  As contemplated by the 2026 Committee Note for Local Civil Rule 72.1,[6] Defendants incorporate, without repetition, the arguments made in their prior filings specific to each case.  *See* Defs.' Opp., at 11-26, MTR1 ECF No. 369; *see also* Obj. to R. & R., at 13-18, MTR2 ECF No. 174; Defs.' Opp., at 8-13, MTR2 ECF No. 164; Defs.' *Lackey* Br., MTR1 ECF No. 388 & MTR2 ECF No. 196.

---

[6] The 2026 Committee Note identifies that "Local Civil Rule 72.1 was amended to impose length limitations and formatting requirements on briefs submitted in connection with objections to decisions of magistrate judges . . . [b]ecause the issues will usually have been addressed in prior briefing or argument[.]"

**I.    The Magistrate Erred in Finding that *Lackey* Does Not Control "Prevailing Party" Status Under EAJA.**

The Magistrate's report and recommendations err in finding the Supreme Court's holding in *Lackey* inapplicable.  The Magistrate reached this conclusion by finding that the term "prevailing party" in EAJA § 2412 is not a term of art with a consistent meaning across fee-shifting statutes.  *See* Am. R. & R., at 17-19, MTR2 ECF No. 199; R.&R., at 12, MTR1 ECF No. 394.  But the Magistrate disregarded controlling Second Circuit precedent that recognizes that "prevailing party" used in EAJA § 2412(d)(1)(A) is a term of art with a consistent meaning across fee-shifting statutes, including 42 U.S.C. § 1988(b), the statute at issue in *Lackey*.  *Ma*, 547 F.3d at 343-44 (holding that "prevailing party" is a term of art with a consistent meaning in EAJA § 2412(d)(1)(A) and 42 U.S.C. § 1988(b), among others).  Given that, this Court must not adopt the Magistrate's erroneous finding; the Court should apply *Lackey's* holding to the meaning of "prevailing party" and find that *Lackey* precludes Plaintiffs from qualifying as prevailing parties based upon the preliminary injunctions awarded in these cases.

The Magistrate's error stems from an inaccurate reading EAJA.  Specifically, the Magistrate mistakenly finds that *Lackey's* final judgment requirement cannot apply to the general prevailing party term found in EAJA § 2412(d)(1)(A) because the specialized definition—for prevailing party status in eminent domain proceedings only, EAJA § 2412(d)(2)(H)—includes a final judgment requirement.  But the specialized provision requires more than a mere final judgment; it requires a certain type of final judgment that awards the successful party a property value that is "at least as close to the highest valuation of the property involved that is attested to at trial on behalf of the property owner as it is to the highest valuation of the property involved that is attested to at trial on behalf of the Government[.]"  *Id*.  In other words, a winning final judgment is not enough to be the "prevailing party" in eminent domain cases—the final judgment must also assign a certain value to the property that satisfies the provision's mathematical calculation (as compared to certain evidence presented at trial).  By ignoring that there must be a certain value awarded, the Magistrate has inappropriately truncated the

7

specialized definition in subsection (d)(2)(H) and used it to draw the following flawed

conclusion: "[i]f Congress's intention was to restrict *all* "prevailing party" status under EAJA to

those who received final judgment, its specific inclusion for eminent domain proceedings under

subsection (2)(H) would not be necessary."  Am. R.&R., at 18-19, MTR2 ECF No. 199.[7]  But

this conclusion fails because eminent domain proceedings call for a certain type of final

judgment, necessary because it requires more than just a final judgment of any sort.  *See*

*generally* Defs.' *Lackey* Br., at 5-11.

Another of the Magistrate's errors is in footnote 6, which says that "the Second Circuit has

not found that *Lackey* applies to statutes other than § 1988(b)."  *See* Am. R. & R. at 18 n. 6, MTR2

ECF No. 199.  Not so.  Indeed, one of the cases cited in footnote 6 itself applies the *Lackey* holding

to fee-shifting under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12205.  *See id.*

(citing *Sampson v. Stony Brook Univ.*, No. 24-615, 2025 WL 686036 (2d Cir. Mar. 4, 2025)).  The

Second Circuit's decision to apply *Lackey* to the ADA's fee-shifting provision supports

Defendants' position; it is another fee-shifting statute, along with 42 U.S.C. § 1988(b) and EAJA

§ 2412, where the Second Circuit has held that "prevailing party" is a term of art with a consistent

meaning across statutes.  *See Ma*, 547 F.3d at 343-44 (collecting cases showing that the definition

of "prevailing party" is consistent in EAJA, 42 U.S.C. § 1988, the ADA).  The Second Circuit

recently reaffirmed that view in *United States v. Ross*, 161 F.4th 100 (2d Cir. 1015).  *Id.* at 117 n.12

(pointing out that the phrase "prevailing party" is used consistently across EAJA § 2412(b), 42

U.S.C. § 1988(b), and ADA § 12205).  In *Ross*, the Second Circuit applied, *inter alia*, *Lackey*'s

interpretation of the "prevailing party" term of art to the fee-shifting phrase "substantially prevails"

---

[7] In footnote 7, the Magistrate cites to a portion of Justice Jackson's dissent in *Lackey* that points to EAJA § 2412(d)(2)(H).  There, Justice Jackson defines a prevailing party for eminent domain proceedings to mean "a party who obtains a final judgement *of a certain amount*."  Am. R.&R. at 18 n.7, MTR2 ECF No. 199 (emphasis added) (citing *Lackey*, 604 U.S. at 212) (Jackson, J., dissenting).  But this supports Defendants' position, and not the Magistrate's conclusion, because Justice Jackson acknowledges that subsection (d)(2)(H) requires *more than* a final judgment; it requires a final judgment *of a certain amount.*  Absent that "certain amount," a favorable final judgment is insufficient to qualify the winning party as the "prevailing party" for purposes of eminent domain proceedings.

found in the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 28 U.S.C. § 2465(b)(1), because both "require a litigant to 'prevail' to some degree." *Id.* at 117. As such, if anything, the Second Circuit decisions since *Lackey* indicate that the meaning of "prevailing party" in EAJA § 2412(d)(1)(A) is still consistent with the terms meaning in § 1988(b) and the other fee-shifting provisions. This Court must apply *Lackey* in both *Make the Road I* and *II* with equal force.

Several courts outside the Second Circuit have also applied *Lackey* to EAJA fee-shifting.[8] After the Supreme Court vacated a Sixth Circuit judgment involving EAJA fees and remanded the case for reconsideration in light of its *Lackey* holding, *Holman v. Rollins*, -- S. Ct. --, 2025 WL 3620423, at *1 (Dec. 15, 2025), the Sixth Circuit held that "*Lackey* fully resolve[d] Holman's appeal" for fees under EAJA. *Rollins*, 2026 WL 384150, at *2 (citing *Lackey*, 604 U.S. at 201, 203). As here, the *Holman* plaintiff had been awarded a preliminary injunction that "temporarily enjoin[ed] the implementation of [a] challenged program" before external events mooted his case. *Id.* In applying Lackey, the Sixth Circuit determined that fees were inappropriate because a preliminary injunction does not "conclusively resolve the rights of the parties on the merits" and the external event that mooted the case "did not convert Holman's temporary relief into an adjudication of the merits." *Id.* (citing *Lackey*, 604 U.S. at 201, 203).

As in *Holman*, both *Make the Road I* and *II* were ultimately mooted and then resolved by joint stipulations of dismissal, without the entry of any final judgments. *Supra*; *see also* Defs.' Obj. at 12-13, MTR2 ECF No. 174. "[A] party who has achieved the desired result because his lawsuit

---

[8] See *Holman v. Rollins*, No. 23-5493, 2026 WL 384150 (6th Cir. Feb. 11, 2026), *Ramos v. Neilson*, No. 18-cv-01554-EMC, 2025 WL 1953463, at *3-6, 6 n.3 (N.D. Cal. July 16, 2025) *appeal filed sub. nom. Ramos v. Noem*, No. 25-5739 (9th Cir. Sept. 10, 2025); *Lugo v. Driscoll*, No. EA-25-1352, 2026 WL 309033, at *1 n.2 (D. Md. Feb. 5, 2026) (applying *Lackey* to EAJA fees claim and noting that the phrase "prevailing party" is interpreted "consistently across all federal fee-shifting statutes[.]"); *Kashikov v. Noem*, No. 25-cv-00081-HRH, 2025 WL 2320319, at *2, n.8 (D. Alaska Aug. 12, 2025) (recognized *Lackey*'s application to EAJA fees cases, noting that "[c]ases interpreting other civil rights statutes that provide for fee-shifting based on "prevailing party" status are applicable to the EAJA," and awarding fees on different facts) (citation omitted); *De La Cruz v. Noem*, No. C25-150-LTS, 2025 WL 3110876, at *6-7 (N.D. Iowa Oct. 20, 2025) (notes *Lackey* applies to EAJA fees before holding fee request premature), *appeal filed*, No. 25-3153 (8th Cir. Oct. 29, 2025).

brought about a voluntary change in the defendants conduct, but who failed to secure a judgment on the merits" is not a prevailing party under EAJA. *Ma*, 547 F.3d at 344 (per curiam). As such, "[e]ven assuming *arguendo* that the [preliminary injunctions] triggered the [agency's] decision to resolve the action, that alleged motivation does not transform the agency's voluntary act into the requisite judicially sanctioned relief" to obtain prevailing party status. *Hasou v. Jaddou*, No. 23-7225-CV, 2024 WL 3264142, at *2-3 (2d Cir. July 2, 2024) (footnote omitted). [9]

*Lackey's* holding should be applied here as it was in *Holman* to entirely bar Plaintiffs' fee requests in both *Make the Road I* and *II*, and the Court need not consider Defendants' remaining objections to the Magistrate's report and recommendation, included below.

## II.     The Magistrate Erred in Concluding that the Government's Defense Not Substantially Justified.

Defendants' positions were "substantially justified" under EAJA, a standard that is met if the position is "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). There is not a "presumption that the Government position was not substantially justified simply because it lost the case." *Scarborough v. Principi*, 541 U.S. 401, 415 (2004) (citation omitted). "[A] position can be justified even though it is not correct, and we believe it can be substantially . . . justified if a reasonable person could think it

---

[9] The Magistrate's finding that the Government did not voluntarily moot these cases entirely lacks merit. R. & R. at 11-12, MTR1 ECF No. 394; Am. R. & R. at 16-17, MTR2 ECF No. 199. The Magistrate bases this conclusion on the Governments voluntary dismissal of its petition for certiorari, then pending in the Supreme Court, assessing that "[t]he net effect was to leave the Second Circuit's affirmance of the preliminary injunction *as the final adjudication on the merits of this action*" and "[o]nly *after* the preliminary injunction was in effect did DHS rescind the rule[.]" R. & R. 11, MTR1 ECF No. 394 (emphasis added); *see also* Am. R. & R. at 16, MTR2 ECF No. 199 (finding the Government's decision to rescind the challenged rulemaking was not voluntary because it "occurred well after the nationwide injunction in *Make the Road I*). This view is incorrect for two reasons. First, the Government's dismissal of its petition in March 2021 followed the Government's decisions to reverse course on the 2018-2019 rulemaking and its request for stays in these cases to assess next steps, *see e.g.,* Letters, MTR1 ECF Nos. 296 & 297 (filed in February 2021); Letters, MTR2 ECF Nos. 108 & 109 (same). Second, neither the preliminary injunction nor its affirmance in the Second Circuit constituted a *final judgment on the merits of this action*; at most, those holdings are only preliminary assessments as to the likelihood of success at the merits phase of the case.

correct, that is, if it has a reasonable basis in law and fact." *Pierce*, 487 U.S. at 566 n.2; *see also id*. at 568-69 (noting the standard "is no different from the 'reasonable basis both in law and fact' formulation" of the standard). Courts should consider relevant objective indicia, including "the stage in the proceedings at which the merits were decided" and "the views of other courts on the merits." *Id.* at 568-69 (a "string of losses can be indicative; and even more so a string of successes" by the government).

In *Make the Road I*, the Magistrate treats the October 2019 preliminary injunction and the Second Circuit's affirmance as if those decisions alone fully resolve the "substantial justification" fee-shifting question. *See* R. & R. at 14, MTR1 ECF No. 394 (after review of the preliminary injunction holdings, the Magistrate concludes that "the Government's position did not have a reasonable basis in law and fact." (citation modified)). But the Magistrate's analysis ignores the favorable decisions in other courts that found the Government's position was likely to succeed that were cited by the Government, *see* Defs.' Opp. to Fees, at 11-15, MTR1 ECF 369.[10] Together, this effectively results in a presumption that a mere preliminary loss in a district court that is affirmed necessarily mean that the Government's position was not "substantially justified" for fee-shifting purposes. But that conclusion is precisely what the Supreme Court cautioned against in *Scarborough*, 541 U.S. at 415.

Worse still, the Magistrate entirely failed to reckon with the Supreme Court's stay of this Court's preliminary injunction in *Make the Road I*. *Dep't of Homeland Sec.*, 589 U.S. 1173. The Supreme Court's stay provides clear indication that a majority of the Justices thought Defendants' position was at least reasonable enough to allow the DHS rule to go into effect while the litigation proceeded. *See id.*; *see also Wolf v. Cook Cnty.*, 589 U.S. 1190 (2020) (a Supreme Court stay of a preliminary injunction in parallel public charge cases challenging the DHS rule);

---

[10] Discussing the following courts and jurists that adopted Defendants' position: *Casa de Md., Inc. v. Trump*, 971 F.3d 220 (4th Cir. 2020), *rehearing en banc granted by* 981 F.3d 311 (4th Cir. 2020); *City & Cnty. of San Francisco v. USCIS,* 981 F.3d 742, 763 (9t Cir. 2020) (VanDyke, J., dissenting); *Cook Cnty. v. Wolf*, 962 F.3d 208, 234 (7t Cir. 2020) (Barrett, J., dissenting); *City & Cnty. of San Francisco v. USCIS,* 944 F.3d 773 (9th Cir. 2019).

*Wolf*, 962 F.3d at 254 (Barrett, J., dissenting) (then-Judge Barrett concluded that "DHS's definition is a reasonable interpretation of the statutory term 'public charge'").  The Supreme Court permitted the Public Charge Rule to go into effect based on the very arguments the Government presented to this Court and the Second Circuit.  While this Court and the Second Circuit may have disagreed, at a preliminary stage, with the Government's position, it is passing strange to conclude that the Government's position was so unreasonable as to not be substantially justified, but sufficient to permit the challenged rule to go into effect.  Likewise,  the Supreme Court's grant of certiorari in *Make the Road I*, *see Dep't of Homeland Sec. v. New York*, 141 S.Ct. 1370 (2021), offers further evidence that Defendants' position was "substantially justified" because it shows that the Supreme Court viewed the issue as "debatable enough to justify a grant of certiorari and briefing and argument."  *Est. of Merchant v. Comm'r*, 947 F.2d 1390, 1394 (9th Cir. 1991).[11]

By ignoring the impact of the Supreme Court's stay order and the views of the other courts and federal judges who found in favor of the Government's position, the Magistrate did not consider objective evidence showing that the Government's position could satisfy a reasonable person.  In other words, those favorable decisions offer powerful evidence that the Government's position was substantially justified.  *Pierce*, 487 U.S. at 568-69 (a "string of losses can be indicative; and even more so a string of successes" by the government).

---

[11] Another case that provides objective indicia of the Supreme Court's view that the DHS Public Charge Rule presented issues debatable enough to justify a grant of certiorari and briefing and argument is *Arizona v. City & County of San Francisco*, 596 U.S. 763 (2022) (per curium). There, the Supreme Court had granted certiorari "to decide whether the petitioners—13 States which support the Rule—should have been permitted to intervene in the litigation to defend the Rule's legality" but then decided to dismiss the writ of certiorari as improvidently granted. *Id.* at 763, 765.  In his concurrence with that decision, Chief Justice Roberts explained that the case presented many important questions and that the "resolution should not be taken as reflective of a view . . . on the appropriate resolution" of those issues. *Id.* at 765-66.  Further, the case shows that the government's initial position in defense of the DHS rule was reasonable enough to prompt 13 States efforts to join in the defense of the rule and persist in their attempts to intervene despite the new administration's decision to reverse course.  *Id.*

The Magistrate's analysis is similarly flawed in *Make the Road II* because it found fault in the Defendants' opposition to the preliminary injunction "well after Judge Daniels's [preliminary injunction] decision in *Make the Road I*" and the "decision in the Second Circuit." Am. R. & R., at 22, MTR2 ECF No. 199. As in *Make the Road I*, however, the Magistrate has mistaken the fee-shifting "substantial justification" question for a presumption based on a preliminary injunction loss. But this Court's October 2019 ruling in *Make the Road I* did not preclude Defendants from taking the positions it did in opposition to Plaintiffs' motion for a preliminary injunction in *Make the Road II*—especially since Defendants' opposition was filed in February 2020, *after* the Supreme Court's January 2020 Order staying the preliminary injunction in *Make the Road I*. *Compare* Defs.' Mem. in Opp., MTR2 ECF Nos. 52 & 54 (filed on February 13, 2020), with *Dep't of Homeland Sec.*, 589 U.S. 1173.

Although the Magistrate ignored Defendants citation to favorable holdings in *Make the Road I*, *supra*, in *Make the Road II* the Magistrate directly quarreled with Defendants' use of evidence of these favorable holdings, calling it "cherrypicked outcomes in cases in other circuits." Am. R. & R. at 22, MTR2 ECF No. 199. But, again, these so-called "cherry picked outcomes" were not proffered to relitigate the prior preliminary injunction losses; Defendants cited those cases because, even a position that lost can be "substantially justified" under the EAJA fee-shifting standard and "the views expressed by other courts on the merits of the Government's position" provide objective evidence that Defendants' position actually satisfied reasonable people, *i.e.*, other federal judges. Given this, the Magistrate's analysis should not have discounted the cited favorable views of other jurists because they provide objective evidence that the Government's positions had a reasonable basis in law and fact and were, therefore, substantially justified.

### III.    The Magistrate Erred in Finding Individual Plaintiffs Eligible for Fees in *Make the Road II.*

The Magistrate also erred in finding the *Make the Road II* individual Plaintiffs were eligible for fees despite their anonymity. *See* Am. R. & R. at 10-11, MTR2 ECF 199. Although four of the five individual Plaintiffs submitted declarations under a pseudonym claiming that they met the statutory net worth limitations, did not owe outstanding debts to the United States, and that they had assigned their rights to fees to their attorneys, such self-serving anonymous declarations are insufficient to sustain their burden of proof, given that anonymity strips the Government of its ability to evaluate and, if needed, challenge their evidence. *See* Defs.' Obj. at 6-10, MTR2 ECF No. 174. Moreover, the Magistrate found one of the individual Plaintiffs eligible without even submitting an anonymous self-serving declaration. *See id.* at 7. Even assuming these individual Plaintiffs meet net worth requirements, there is no basis to accept their anonymous claims regarding whether these Plaintiffs owe any outstanding debts to the United States because the Plaintiffs may not even realize or acknowledge that they owe existing debt to the United States that disqualifies them from an award. Defendants must be able to verify these eligibility requirements and, if appropriate, offer evidence of ineligibility. Further, the Anti-Assignment Act, 31 U.S.C. § 3727(b), prevents assignment of attorney's fees awards by Plaintiffs to their attorneys except under strict conditions that are not satisfied here. *Id.* at 8-10. The Magistrate erred in ignoring these deficiencies. Any fee award should be reduced proportionally to account for the individual Plaintiffs' ineligibility.

### IV.    The Award $1,386,318.47 of in Fees and Costs is Excessive Given the Fleeting Nature of Plaintiffs' Preliminary Injunction.

The Magistrate erred by ignoring Supreme Court and Second Circuit precedent to recommend any fee award at all to Plaintiffs, *see supra*, as well as in concluding that

$1,386,318.47 is an appropriate award amount for these two cases.[12]  Defendants raised many specific objections to Plaintiffs' fee claims in each of these cases before the Magistrate, incorporated here without repetition.[13]  But, fundamentally, the Magistrate's recommendations should be rejected as excessive because they both fail to make any adjustment to the fee awards to reflect the Plaintiffs' limited success in these cases.  *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("The degree of success obtained" during a litigation is the "most critical factor" in determining the amount of a fee award).  The Supreme Court has plainly barred fee awards for the type of success the Magistrate relies on to award fees in these cases, *i.e.*, the temporary relief of a preliminary injunction.  *Lackey,* 604 U.S. 192.  Even if this Court disagreed and found the preliminary injunctions justified fees of some amount, such an award would need to be reduced to account for the limited nature of any success from the preliminary injunctions—especially given the Supreme Court's stay of the preliminary injunction in *Make the Road I*.  *See Dep't of Homeland Sec*, 589 U.S. 1173.  The Magistrate's recommendation not only fails to adjust for this limited success, it recommends fees for work *unrelated* to securing that limited success.  R. & R., at 18-19, MTR1 ECF No. 394; *see also* Am. R. & R., at 32-33.

The "assessment of the degree of success achieved in a case is not limited to inquiring whether a plaintiff prevailed on individual claims . . . . Both the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (internal quotations and citations omitted).  Here, Plaintiffs primary aim in both cases was to obtain declaratory judgments finding the challenged rules were "unauthorized by law and contrary to the Constitution and laws of the United States," to "[v]acate and set aside" the challenged rules, and to "preliminarily and permanently enjoin

---

[12] The Magistrate recommends an award of $1,009,870 in fees and expenses in *Make the Road I,* see R. & R. at 22, MTR1 ECF No. 394, and $376,447.58 in *Make the Road II*, see Am. R. & R. at 36-37, MTR2 ECF No. 199.

[13] *See* Defs.' Opp., at 26-30, MTR1 ECF 369; Defs.' Obj. to R. & R., at 18-22, MTR2 ECF 174; Defs.' Opp., at 13-16, MTR2 ECF 164.

defendants from implementing" the challenged rules or "tak[e] any actions to enforce or apply" them.  Compl., at 115, MTR1 ECF No. 1; *see also* Compl., at 109-10, MTR2 ECF No. 1.  At most, the temporary relief achieved by the preliminary injunctions offered only a fraction of the success sought in these cases.  And where "a plaintiff has achieved only partial or limited success," as here, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount . . . even where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith."  461 U.S. at 436.  Thus, any fee award must be reduced to account for this limited success.

In support for the broad recommended award of fees beyond those associated with the preliminary injunction, the Magistrate cites an inapposite Second Circuit case, *Kerin v. U.S. Postal Svc.*, 218 F.3d 185 (2d Cir. 2000).  R. & R., at 18-19, MTR1 ECF No. 394; *see also* Am. R. & R., at 32-33.  In *Kerin* the plaintiff achieved a final judgment on interrelated contract and unjust enrichment claims at the district court level and then the unjust enrichment portion of the judgment was reversed on appeal.  *Id.*  The Second Circuit considered whether a limited success reduction was warranted for the reversal on appeal and found it not needed "[b]ecause the basis for the reversal . . . was that the [successful] contract and [unsuccessful] unjust enrichment claims overlapped, and [the plaintiff] prevailed on the contract claims."  *Kerin*, 218 F.3d at 194.  The portion of this decision cited by the Magistrate is found in the footnote following the quoted portion above.[14]  There, the Second Circuit noted that no reduction for limited success is needed when successful and unsuccessful claims are "interrelated and required essentially the same proof."  *Id.* at 194 n.6 (quotations omitted).  This logic follows from *Hensley*, where the Supreme Court said that a

> fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit . . . .  Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or

---

[14] The portion of this decision quoted by the Magistrate is found in footnote 6, following the part quoted above.  Footnote 6 explicitly draws on cases awarding attorneys' fees under 42 U.S.C. § 1988 (the statute at issue in *Lackey*) for its determination of fees under EAJA § 2412. *See Kerin*, 218 F.3d at 194 n.6.

16

failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

461 U.S. at 435. But, unlike in *Kerin*, neither *Make the Road I* or *II* resulted in a successful final judgment sufficient to sustain a fee award for unsuccessful but interrelated claims. The limited success of the preliminary injunctions is the sole basis for the Magistrate's award of fees. Thus, any such fee award should be *de minimus* to account for that limited success and it must not include any fees unrelated to work on the preliminary injunction.

## CONCLUSION

For the reasons discussed above and in Defendants' prior briefs opposing fees in these cases, the Plaintiffs' fee requests should be denied.

Date: April 10, 2026                    Respectfully submitted,

                                        BRETT A. SHUMATE
                                        Assistant Attorney General
                                        Civil Division

                                        ALEXANDER K. HAAS
                                        Branch Director

                                        */s/ Olivia Hussey Scott*
                                        OLIVIA HUSSEY SCOTT
                                        Senior Counsel
                                        U.S. Department of Justice
                                        Civil Division, Federal Programs Branch
                                        1100 L Street, N.W.
                                        Washington, D.C. 20005
                                        Tel. (202) 616-8491
                                        Fax: (202) 616-8460
                                        Olivia.Hussey.Scott@usdoj.gov

                                        *Counsel for Defendants*

17

## <u>CERTIFICATION OF COUNSEL</u>

In accordance with Local Civil Rules 7.1(c), I hereby certify that the foregoing document complies with this Court's Orders, dated April 10, 2026, that granted Defendants' request to file one consolidated objection with less than 7,000 words in both of the above-captioned cases. *See generally* Order, MTR1 ECF No. 401; Order, MTR2 ECF No. 206. Specifically, not including the caption, index, table of contents, table of authorities, signatures, and required certificates, the foregoing document contains 6,455 words.

*/s/ Olivia Hussey Scott*
OLIVIA HUSSEY SCOTT
Senior Counsel

18