**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MAKE THE ROAD NEW YORK, et al.,

               Plaintiffs,

      - against –

JOSEPH B. EDLOW, in his official capacity
as Director of United States Citizenship and
Immigration Services, et al.,

             Defendants.

No. 19 Civ. 07993 (GBD) (OTW)

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CONSOLIDATED OBJECTION TO
REPORTS AND RECOMMENDATIONS OF MAGISTRATE JUDGE RE:
ATTORNEYS' FEES**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I.   The Magistrate Judge Correctly Concluded that the Definition of Prevailing Party in *Lackey* v. *Stinnie* Does Not Apply to Plaintiffs' EAJA Claims ........................................................ 3

    A.   Congress Specifically Authorized Fees for Preliminary Relief Under EAJA .............. 3

    B.   The Second Circuit Does Not Apply a Universal Definition of Prevailing Party that Overrides EAJA's Statutory Definition ...................................................................... 7

    C.   Defendants' Criticisms of the Magistrate Judge's Report Are Unfounded .................. 8

II.  The Magistrate Judge Correctly Concluded that the Government's Position Was Not Substantially Justified ................................................................................................. 11

III. The Magistrate Judge Correctly Found the Individual Plaintiffs Eligible for Fees .............. 15

IV.  The Amount of Both Fee Awards is Reasonable and Appropriate ...................................... 17

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Astrue* v. *Ratliff*,
  560 U.S. 586 (2010)......................................................................................................15

*Cabrera* v. *Astrue*,
  2008 WL 4410094 (S.D.N.Y. 2008)............................................................................17

*Ma* v. *Chertoff*,
  547 F.3d 342 (2nd Cir. 2008).........................................................................................7

*Arizona* v. *City & County of San Francisco*,
  596 U.S. 763 (2022)......................................................................................................13

*Conforti* v. *Berryhill*,
  19-CV-2958 (JGK), 2021 WL 796494 (S.D.N.Y. Mar. 2, 2021)..............................15

*Connecticut Nat'l Bank* v. *Germain*,
  503 U.S. 249 (1992)........................................................................................................5

*De La Cruz v. Noem*,
  No. C25-150-LTS, 2025 WL 3110876 (N.D. Iowa Oct. 20, 2025)...........................10

*Dep't of Homeland Sec.* v. *New York*,
  589 U.S. 1173 (2020)....................................................................................................12

*Dubose* v. *Pierce*,
  579 F. Supp. 937 (D. Conn. 1984), *aff'd* 857 F.2d 889 (2d Cir. 1988) ...................12

*Finch* v. *Saul*,
  17-CV-892 (OTW), 2020 WL 1940308 (S.D.N.Y. Apr. 22, 2020)..........................15

*Gisbrecht* v. *Barnhart*,
  535 U.S. 789 (2002)......................................................................................................15

*Hasou* v. *Jaddou*,
  No. 23-7225-CV, 2024 WL 3264142 (2d Cir. July 2, 2024).......................................8

*Hensley* v. *Eckerhart*,
  461 U.S. 424 (1983)......................................................................................................19

*Holman* v. *Rollins*,
  — S. Ct. —, 2025 WL 3620423 (2025).......................................................................10

ii

*Holman* v. *Rollins*,
No. 23-5493, 2026 WL 384150 (6th Cir. Feb. 11, 2026) ....................................................9, 10

*Kashikov v. Noem*,
No. 25-cv-00081-HRH, 2025 WL 2320319 (D. Alaska Aug. 12, 2025)................................10

*Kerin* v. *U.S. Postal Svc.*,
218 F.3d 185 (2d Cir. 2000)..................................................................................................19

*Lackey* v. *Stinnie*,
604 U.S. 192 (2025)..............................................................................................................1, 6

*Loughrin* v. *United States*,
573 U.S. 351 (2014)................................................................................................................4

*Lugo v. Driscoll*,
No. EA-25-1352, 2026 WL 309033 (D. Md. Feb. 5, 2026) ...................................................10

*Make Rd. New York* v. *Blinken*,
No. 19-CV-11633 (GBD) (OTW), 2024 WL 4664712 (S.D.N.Y. Sept. 4,
2024) .....................................................................................................................................16

*Make the Rd. New York* v. *Cuccinelli*,
419 F. Supp. 3d 647 (S.D.N.Y. 2019).....................................................................................17

*Make the Rd. New York* v. *Pompeo*,
475 F. Supp. 3d 232 (S.D.N.Y. 2020)......................................................................................11

*Department of Homeland Security* v. *New York*,
141 S.Ct. 1370 (2021).............................................................................................................12

*Dept. of Homeland Security* v. *New York*,
No. 19A785 (U.S. Jan. 2020)...................................................................................................11

*United States* v. *Paisley*,
957 F.2d 1161 (4th Cir. 1992), *cert. denied sub nom. Crandon* v. *United
States*, 113 S. Ct. 73 (1992) ...................................................................................................10

*People Against Police Violence* v. *City of Pittsburgh*,
520 F.3d 226 (3rd Cir. 2008) .................................................................................................19

*R.F.M.* v. *Nielsen*,
18-CV-5068 (LLS) (OTW), 2020 WL 6393583 (S.D.N.Y. Oct. 30, 2020) ...........................15

*Ramos v. Neilsen*,
No. 18-cv-01554-EMC, 2025 WL 1953463 (N.D. Cal. July 16, 2025) ..................................10

*Reed* v. *A.W. Lawrence & Co.*,
    95 F.3d 1170 (2d Cir. 1996).................................................................................................18

*United States* v. *Ross*,
    161 F.4th 100 (2d Cir. 2025) ................................................................................................9

*Russello* v. *United States*,
    464 U.S. 16 (1983).................................................................................................................5

*Sampson* v. *Stony Brook Univ.*,
    No. 24-615, 2025 WL 686036 (2d Cir. Mar. 4, 2025)........................................................8, 9

*Schwab* v. *Sec'y, Dep't of Corr.*,
    507 F.3d 1297 (11th Cir. 2007) ..........................................................................................12

*Schwebel* v. *Crandall*,
    No. 17 CIV. 8541 (CM), 2021 WL 2269523 (S.D.N.Y. June 3, 2021)...................................10

*Select Milk Producers, Inc.* v. *Veneman*,
    304 F. Supp. 2d 45 (D.D.C. 2004) *aff'd in part, rev'd in part and remanded
    sub nom. Select Milk Producers, Inc.* v. *Johanns*, 400 F.3d 939 (D.C. Cir.
    2005) ....................................................................................................................................19

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025)..............................................................................................................12

*New York* v. *United States Dep't of Homeland Sec.*,
    969 F.3d 42 (2d Cir. 2020)....................................................................................................17

*US Airways, Inc.* v. *Sabre Holdings Corp.*,
    No. 11CV2725LGSJLC, 2023 WL 2853931 (S.D.N.Y. Apr. 10, 2023), *report
    and recommendation adopted sub nom. US Airways, Inc. for Am. Airlines,
    Inc.* v. *Sabre Holdings Corp.,* No. 11 CIV. 2725 (LGS), 2023 WL 3749995
    (S.D.N.Y. June 1, 2023).........................................................................................................4

*Vacchio* v. *Ashcroft*,
    404 F.3d 663 (2d Cir. 2005*)*.................................................................................................16

*Warren* v. *Colvin*,
    744 F.3d 841 (2d Cir. 2014)...................................................................................................4

**Statutes**

42 U.S.C. § 1988.................................................................................................... *passim*

Americans with Disabilities Act, 42 U.S.C. § 12205 ....................................................................8

Anti-Assignment Act, 31 U.S.C. § 3727 ................................................................................2, 15

Equal Access to Justice Act, 28 U.S.C. § 2412 ...................................................................... *passim*

Freedom of Information Act, 5 U.S.C. §522(a)(4)(E)(ii) ................................................................4

**Other Authorities**

H.R. Rep. No. 99-120 ..................................................................................................................5

H.R. Rep. No. 96-1418 ................................................................................................................5

**INTRODUCTION**

Plaintiffs are entitled to attorneys' fees and costs for success on the merits of their challenges to the federal government's measures—via the Department of Homeland Security (*Make the Road 1*) and the Department of State (*Make the Road 2*)[1]—to dramatically and unlawfully expand the power to exclude lawful immigrants under the Public Charge Rule. Magistrate Judge Wang carefully reviewed Plaintiffs' fee applications and all related briefing in *Make the Road 1 & 2,* and issued two comprehensive Reports and Recommendations, granting both with specific deductions. Defendants object to those recommendations by constructing an argument rooted in conjecture, misquotation, and misapplication of governing legal standards.[2]

Defendants raise four objections—two challenge Plaintiffs' entitlement at the threshold, and two seek only to reduce the amount of the fees. With respect to entitlement, Defendants argue that the Supreme Court's decision in *Lackey* v. *Stinnie*, 604 U.S. 192 (2025) —which held that under 42 U.S.C. § 1988 obtaining a preliminary injunction is insufficient to render one a prevailing party for entitlement to attorneys' fees—must reflexively apply under the Equal

---

[1] Due to multiple changes in the individuals holding the official positions of Defendants, the Magistrate Judge has adopted the convention of naming the two cases *Make the Rd. 1* (No. 19-CV-7993, formerly "*Cucinelli*" and later "*Jaddou*"), and *Make the Rd. 2* (No. 19-cv-11633, formerly "*Pompeo*" and later "*Blinken*").  (MTR1 R&R ECF 394 at 1 n. 1; MTR2 R&R ECF 199 at 1 n. 1).

[2] For the Court's convenience, Plaintiffs have followed Defendants' method of consolidating this briefing. However, Plaintiffs caution against Defendants' mischaracterizations and attempts to conflate distinct and different award amounts in these two cases. These are separate cases with separate awards for distinct work, as Defendants themselves must acknowledge.  (MTR1 R&R ECF 394 at 22 (recommending award of $1,009,870 in *Make the Road 1*);  MTR2 R&R ECF 199 at 36-37 (recommending award of $376,447.58 in *Make the Road 2*). While a number of plaintiffs and counsel overlap in both cases, *Make the Road 2* includes organizational plaintiff Central American Refugee Center New York (CARECEN-NY) and five individual Doe Plaintiffs who are not parties to *Make the Road 1.* Further, the National Immigration Law Center (NILC) serves as counsel of record and co-counsel in *Make the Road 2* only.

Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, as well. Rejecting this claim, the Magistrate

Judge recognized that *Lackey* gives meaning to the term "prevailing party" in Section 1988 and

other fee statutes that use the term of art without otherwise defining it; but that in statutes like the

EAJA, where Congress has specifically defined the term, the statutory text must control. The

Magistrate Judge therefore correctly applied the specific "prevailing party" definition dictated by

Congress in EAJA, which grants the court discretion to award fees to plaintiffs who have

obtained significant preliminary relief.

Defendants also argue that the Government's positions in these cases were substantially

justified, relying mostly on the stay and grant of certiorari by the Supreme Court. However,

neither the stay nor the grant of certiorari suggest any view on the merits, as this Court has

previously held; and to the extent the Supreme Court gave any suggestion of the reason for its

decisions, it was a concern over the nationwide scope of the injunction, a question related to the

scope of authorized relief which is irrelevant to the substantive legality of the Government's

action that was correctly deemed unlawful.

With respect to the amount of the fee award in *Make the Road 2*, Defendants argue that

the individual Plaintiffs are ineligible for fee recovery due to their anonymity, and that they are

not allowed to assign their fees to counsel. The Magistrate Judge thoroughly considered and

properly rejected both arguments. The individual Plaintiffs properly proceeded anonymously

without any government objection throughout the merits phase of the case, and requiring them to

relinquish anonymity now would endanger anonymous plaintiffs in the future. The Magistrate

Judge also properly found that enforcement of the Anti-Assignment Act is not required and

would not serve the purpose of the Act in this circumstance.

Lastly, Defendants contend the fees in both cases should be "sharply reduced" to a *de minimus* level for achieving "only a fraction" of success. The claim is unfounded given the substantial success achieved in both cases, as recognized in this Court's prior rulings. The Magistrate Judge did reduce both awards below the requested lodestars for specifically defined reasons—to which Plaintiffs have not objected—while recognizing that Plaintiffs' applications included large voluntary billing judgment reductions. The resulting awards are entirely fair and reasonable, and should be adopted by this Court.[3]

## ARGUMENT

**I.    The Magistrate Judge Correctly Concluded that the Definition of Prevailing Party in *Lackey* v. *Stinnie* Does Not Apply to Plaintiffs' EAJA Claims**

**A.    Congress Specifically Authorized Fees for Preliminary Relief Under EAJA**

The Supreme Court in *Lackey* limited fee entitlement under Section 1988 to litigants who achieve prevailing party status only by reaching final judgment. Magistrate Judge Wang correctly ruled that, distinct from the its usage as a term of art in Section 1988, in EAJA Congress gave the term "prevailing party" a particular meaning that distinguishes the statute from Section 1988; accordingly, under EAJA, attorneys' fees may be awarded to successful plaintiffs who, as here, prevailed on a preliminary injunction without proceeding to final judgment. (MTR2 R&R, ECF 199 at 17-18; MTR1 R&R, ECF 394 at 12). Therefore, *Lackey* is

---

[3]    Defendants have incorporated the arguments made in their prior filings specific to each case (Obj. 6), and Plaintiffs do the same. The underlying briefing in *Make the Road 1* comprises the following:  Pls' MOL ECF 362; Pls' Reply ECF 372.  The underlying briefing in *Make the Road 2* comprises the following: Pls' MOL ECF 155; Pls' Reply ECF 165; Pls' Indiv. Decls. ECF 167-169; Pls' Ltr. Brf. ECF 171. Plaintiffs' consolidated briefing regarding the impact of *Lackey* comprises the following: Pls' Con. Br. (corrected) MTR1 ECF 392, MTR2 197; Pls' Con. Reply MTR1 ECF 393, MTR2 198.

inapplicable to the *Make the Road* cases because Congress gave "prevailing party" a distinct and deliberate meaning in EAJA—one that permits the fee awards here. (*Id.*).

Specifically, the Magistrate Judge properly recognized the critical statutory divide: *Lackey*'s conception of "prevailing" applies where "Congress did not define or apply the term 'prevailing party,'" such as in Section 1988; but *Lackey* does *not* pertain "to statutes like EAJA, where Congress specifically defines the term." (MTR2 R&R, ECF 199 at 17-18). *See Warren* v. *Colvin*, 744 F.3d 841, 845 (2d Cir. 2014) (recognizing that the specific text of FOIA, 5 U.S.C. § 522(a)(4)(E)(ii), allows a more expansive statutory definition of prevailing party than would otherwise be allowed under *Buckhannon's* catalyst proscription) (citing *Buckhannon Bd. & Care Home, Inc.* v. *W. Va. Dep't of Health &Human Res.*, 532 U.S. 598 (2001) (rejecting a "catalyst" theory and requiring that a prevailing party secure a judicially sanctioned change in the legal relationship of the parties)); *US Airways, Inc.* v. *Sabre Holdings Corp.,* No. 11CV2725LGSJLC, 2023 WL 2853931, at *3 (S.D.N.Y. Apr. 10, 2023), *report and recommendation adopted sub nom. US Airways, Inc. for Am. Airlines, Inc.* v. *Sabre Holdings Corp.,* No. 11 CIV. 2725 (LGS), 2023 WL 3749995 (S.D.N.Y. June 1, 2023) (declining to apply Supreme Court's interpretation of section 1988 in *Farrar v. Hobby*, 506 U.S. 103 (1992) to the Clayton Act, where "there is no suggestion in the opinion itself that its holding extended beyond § 1988").

To underscore this baseline distinction, the Magistrate Judge correctly recognized that unlike Section 1988, EAJA expressly delineates one distinct area of law—eminent domain—in which prevailing party status demands a final judgment. 28 U.S.C. § 2412(d)(2)(H). Congress's decision to define "prevailing party" with precision for eminent domain proceedings, while omitting any such requirement elsewhere in the EAJA statute, triggers the legal presumption that Congress specifically and intentionally *declined* to impose a final judgment prerequisite in EAJA

4

actions other than eminent domain. *See Loughrin* v. *United States*, 573 U.S. 351, 358 (2014) ("[W]hen 'Congress includes particular language in one section of a statute but omits it in another'" courts must "'presume' that Congress intended a difference in meaning.'") (citation omitted); *Russello* v. *United States,* 464 U.S. 16, 23 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship."). As the Magistrate Judge concluded: "Congress intended to fasten a final judgment requirement to 'prevailing party' status for the purposes of the EAJA only in eminent domain proceedings." (MTR2 R&R, ECF 199 at 18). *See Connecticut Nat'l Bank* v. *Germain,* 503 U.S. 249, 254 (1992) (where the words of the statute are unambiguous, "judicial inquiry is complete").

While the Magistrate Judge properly found the EAJA text sufficient on its own to support the Recommendation, Plaintiffs note the legislative history further demonstrates that Congress intentionally adopted an "expansive view" of the term "prevailing party" for EAJA. H.R. Rep. 99-120, 19, 1985 U.S.C.C.A.N. 132, 147. (MTR1 Pls' Consol. Mtn., ECF 392 at 5-6). That view explicitly contemplates fee awards in cases where the government ceases its unlawful conduct before final judgment. Congress expressed its intention that the standard under EAJA would be that "[t]he phrase 'prevailing party' should not be limited to a victor only after entry of a final judgment following a full trial on the merits." H.R. Rep. No. 96-1418, 11, 1980 U.S.C.C.A.N. 4984, 4990 (1980). The sole exception—in eminent domain proceedings—was carefully cabined, as the Judiciary Committee explained: "Nothing in the definition of 'prevailing party' for purposes of condemnation proceedings is meant to limit the definition of 'prevailing party' under other circumstances." H.R. Rep. 99-120, 19. Congress thus drew a bright line: a narrow final judgment requirement applies only to eminent domain proceedings as an exception to

EAJA's otherwise expansive definition of "prevailing party." Both *Make the Road* cases are subject to EAJA's expansive definition.

The Government's attempt to collapse the distinctively tailored text of EAJA into Section 1988 is further undermined by a distinction in the statutes the Government itself relies upon: EAJA, unlike Section 1988, provides a defense when a position is deemed to have been "substantially justified." 28 U.S.C.A. § 2412(d)(1)(A). This further demonstrates that Congress's calculus about the circumstances under which a plaintiff may obtain fees differs between the statutes.

Defendants respond by noting that fees are available for eminent domain proceedings under EAJA only when a final judgment is combined with a monetary sum. (Defs' Consolidated Objection [hereinafter "Obj."], MTR1 ECF 402, MTR2 ECF 207 at 7-8). But this notes a distinction that makes no difference, and Defendants give no cogent explanation of why its explanation should matter. Logically, the only reason for Congress to include final judgment as a definitional element of prevailing party for eminent domain is that prevailing party has a *different* meaning in the rest of the statute. 28 U.S.C. § 2412(d)(2)(H). If prevailing party throughout EAJA were to require final judgment, then including it as a definitional element for eminent domain would be redundant. Rather, Congress specified that final judgment is required in eminent domain cases as a necessary means of establishing an exception to the EAJA norm which does not require final judgment. This understanding is dictated by standard rules of statutory interpretation, as recognized in *Lackey*, where the Court expressed that where Congress has written a particular term into a statutory provision, and omits it elsewhere, "'Congress has shown that it knows how to adopt the omitted language or provision.'" *Lackey,* 145 S. Ct. at 669-70. Applying that rule here leads logically to the Magistrate Judge's conclusion: *Lackey's* final

6

judgment requirement for prevailing party status has no bearing on EAJA, beyond eminent domain, and Plaintiffs in *Make the Road 1 & 2* are prevailing parties entitled to fees. (MTR2 R&R, ECF 199 at 18-19).

> **B.     The Second Circuit Does Not Apply a Universal Definition of Prevailing Party that Overrides EAJA's Statutory Definition**

Defendants argue that the Second Circuit has long interpreted prevailing party as "a term of art with a consistent meaning across fee-shifting statutes," (Obj. 7). citing *Ma* v. *Chertoff*, 547 F.3d 342, 344 (2nd Cir. 2008) (per curiam). But the Second Circuit has only interpreted prevailing party as a term of art across certain statutes where the text is indistinguishable from Section 1988 *and* where Congress has provided no indication of a divergent meaning. There is no caselaw in the Second Circuit relieving courts from the obligation to give meaning to specific statutory language, even if it deviates from a generalized term of art.

The *Ma* case on which the government relies for its sweeping proposition only underscores the weakness of their argument. In *Ma*, the plaintiff sought a declaratory judgment and mandamus to compel the government to adjust his status to that of a lawful permanent resident, and within two months the Citizenship and Immigration Service did so. *Ma*, 547 F.3d at 343. The court never granted any form of preliminary relief or other judicial sanction whatsoever, and held that "Ma clearly does not fit the definition of a 'prevailing party' as set out in *Buckhannon*." *Id.* at 344. Thus, *Ma* addressed a different and utterly unremarkable scenario: the district court never awarded preliminary relief and sanctioned no legal change in the parties' legal relationship. The *Ma* court added that EAJA does not "bear a different meaning" of prevailing party in this context. *Id.* This was not a blanket ruling that all fee determinations under EAJA must follow general norms, but rather that the text of EAJA does not support deviation from the *Buckhannon* requirement of judicial sanction. And the *Ma* panel never suggested that in

7

other contexts a general understanding could override a particularized statutory definition. (MTR2 R&R, ECF 199 at 15).

With *Ma* being so clearly inapposite, Defendants rely on *Hasou* v. *Jaddou*, No. 23-7225-CV, 2024 WL 3264142 (2d Cir. July 2, 2024) (summary order), to support their position that the Second Circuit applies the general term-of-art definition of prevailing party in a context analogous to the *Make the Road* cases. To do so, Defendants contend that the *Hasou* court rejected fees for EAJA plaintiffs who had won a preliminary injunction. (Obj. 10). But that proposition is based on a critical misquotation. Defendants quote the opinion as stating: "[e]ven assuming *arguendo* that the [preliminary injunctions] triggered the [agency's] decision to resolve the action, that alleged motivation does not transform the agency's voluntary act into the requisite judicially sanctioned relief." (Obj. 10). However, Defendants inserted the bracketed term "[preliminary injunctions]" to replace the actual language of "motion to dismiss." *Hasou*, 2024 WL 3264142 *3; *see also id.* *1 (the only success achieved by plaintiff is that "the district court denied USCIS's motion to dismiss the unreasonable delay claim, concluding that Hasou had pled sufficient facts to state a plausible claim for relief"). Of course, surviving a motion to dismiss does not create a material change in the legal relationship between the parties, as did the preliminary injunctions in the *Make the Road* cases, thereby making Defendants' misquotation of *Hasou* critically misleading. Defendants are left with nothing to support their false proposition that the Second Circuit disallows prevailing party status to plaintiffs who only achieve preliminary relief.

### C.    Defendants' Criticisms of the Magistrate Judge's Report Are Unfounded

Defendants criticize the Magistrate Judge for refusing to apply the *Lackey* definition of prevailing party to EAJA. In particular, Defendants disparage the Magistrate Judge's footnoted citation to *Sampson* v. *Stony Brook Univ.*, No. 24-615, 2025 WL 686036 (2d Cir. Mar. 4, 2025),

8

which is a summary order citing *Lackey* in a case brought under the Americans with Disabilities Act. (Obj. 8, citing R&R MTR2, ECF 199 at 18 n. 6). The ADA has no specific definition of prevailing party. 42 U.S.C.A. § 12205 ("court … may allow the prevailing party … a reasonable attorney's fee"). Therefore, it fits into the class of statutes that follow the general term-of-art interpretation under *Lackey*, unlike EAJA. This is fully consistent with the Magistrate Judge's decision.[4]

Defendants also rely on *United States* v. *Ross,* 161 F.4th 100 (2d Cir. 2025), which Defendants contend equates EAJA and section 1988 for the purpose of defining prevailing party. (Obj. 8). As in *Ma*, the Court in *Ross* did not address the distinct question presented in this case; it merely applied the long-standing requirement of judicial sanction set forth in *Buckhannon*, and did not suggest that a general understanding would override a particularized statutory definition. In fact, in a separate aspect of the ruling, the *Ross* court supported the proposition that explicit statutory language trumps generalized norms by carefully addressing who should be considered a party eligible for fees, and finding that use of the term "claimant" under the relevant statute is more expansive than the ordinary understanding of those who are denominated as parties. *Id.* at

---

[4] Furthermore, the Magistrate Judge's use of *Sampson* was appropriate in the specific context in which it arises in the Report & Recommendation, where the Magistrate Judge determined that "*Lackey* is only concerned with how to interpret terms Congress uses without defining them, and Congress does define 'prevailing party' in the EAJA." (MTR2 R&R ECF 199 at 18). *Sampson* supports that point, in that the Second Circuit did not address whether *Lackey's* final judgment requirement applied to the EAJA analysis in that case. The only issues addressed in *Sampson* are the long-held propositions that prevailing requires materially altering the legal relationship between the parties, and that consent decrees act as final judgments for fee awards, neither of which are new or novel to *Lackey*, and neither of which was relevant to the *Make the Road* fee applications. *Sampson,* 2025 WL 686036 at 2.

117 n. 12, *citing* Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 28 U.S.C. § 2465(b)(1).[5]

Defendants' final approach is to cite an out-of-circuit unpublished per curiam opinion in *Holman* v. *Rollins*, No. 23-5493, 2026 WL 384150 (6th Cir. Feb. 11, 2026), where the Sixth Circuit denied fees for preliminary relief that had been mooted by Congressional repeal. After the Supreme Court vacated and remanded for reconsideration in light of *Lackey* (*Holman* v. *Rollins*, — S. Ct. —, 2025 WL 3620423, at *1 (2025) (mem.)), the Sixth Circuit issued the summary disposition without briefing or analysis on whether EAJA's text permits a definition of "prevailing party" different from Section 1988.[6] *Holman* therefore provides no persuasive guidance here.[7]

---

[5] Defendants dispute whether the preliminary injunction became the final adjudication on the merits following voluntary dismissal. (Obj. 10 n. 9). But as the Magistrate Judge correctly explained, the sequence of events is clear, uncontested, and dispositive: the final ruling, following the dissolution of the Supreme Court's stay and subsequent rescission of the Rule, was the Second Circuit affirmance. (MTR1 R&R, ECF 394 at 11).

[6] *Holman v. Rollins*, Sixth Circuit Docket, No. 23-5493, ECF 62 (Supreme Court Judgment filed: 1/16/26) & ECF 63 (Sixth Circuit Unpublished Opinion and Judgment filed: 2/11/26) (docket available at https://ecf.ca6.uscourts.gov/n/beam/servlet/TransportRoom?servlet=CaseSummary.jsp&caseNum=23-5493&incOrigDkt=Y&incDktEntries=Y).

[7] Defendants also submit a string-cite of out-of-circuit caselaw to show that other courts have applied *Lackey* to EAJA fee-shifting. (Obj. 9 n. 8). None of these authorities support Defendants' position. *Ramos v. Neilsen*, No. 18-cv-01554-EMC, 2025 WL 1953463, at *3-6, 6 n.3 (N.D. Cal. July 16, 2025) is inapposite since the court held that a 120-day hold on deportation was insufficiently enduring under *Lackey*, and the court did not address whether prevailing party under EAJA is distinguishable from section 1988; Magistrate Judge Wang appropriately discounted *Ramos* as "incorrectly and overbroadly appl[ying] *Lackey* to the EAJA." (MTR2 R&R ECF 199 at 18 n. 6). *Lugo v. Driscoll*, No. EA-25-1352, 2026 WL 309033, at *1 n.2 (D. Md. Feb. 5, 2026) is inapposite as the question addressed was whether prevailing-party status is "distinct for cases in equity," and the single citation to *Lackey* makes no reference to EAJA. *Kashikov v. Noem*, No. 25-cv-00081-HRH, 2025 WL 2320319, at *2, n.8 (D. Alaska Aug. 12, 2025) is inapposite because *Lackey* is only cited for rejection of the catalyst theory of recovery. And *De La Cruz v. Noem*, No. C25-150-LTS, 2025 WL 3110876, at *6-7 (N.D. Iowa Oct. 20, 2025) is inapposite because the court merely held that

**II.    The Magistrate Judge Correctly Concluded that the Government's Position Was Not Substantially Justified**

Where a court has evaluated the merits of the government's position thoroughly and persuasively, that ruling stands as the primary determinant of whether the government's position was substantially justified for an EAJA fee decision. *See United States* v. *Paisley*, 957 F.2d 1161, 1167 (4th Cir. 1992), *cert. denied sub nom. Crandon* v. *United States*, 113 S. Ct. 73 (1992) (decisions on merits and rationales underlying them "are the most powerful available indicators of the strength, hence reasonableness, of the ultimately rejected position"). This is especially true where the ruling finds arbitrary and capricious action or intentional discrimination. *See Schwebel* v. *Crandall*, No. 17 CIV. 8541 (CM), 2021 WL 2269523, at *4 (S.D.N.Y. June 3, 2021). The Magistrate Judge correctly relied on this Court's rulings, and the Second Circuit's affirmance, to determine that "the Government's position in adopting and defending the Rule did not have 'a reasonable basis in law and fact.'" (MTR1 R&R ECF 394 at 14; MTR2 R&R ECF 199 at 20).

Defendants refuse to credit this Court's thorough and persuasive rulings, instead arguing that the Supreme Court's stay and grant of certiorari in *Make the Road 1* provide objective indicia of substantial justification. This Court already has already rejected the underpinning of this argument, holding that when issuing the stay "the Supreme Court did not address the merits of the claim that the DHS Rule is unlawful." *Make the Rd. New York* v. *Pompeo*, 475 F. Supp. 3d 232, 260 (S.D.N.Y. 2020). Furthermore, Defendants' arguments are undermined by the positions they actually took before the Supreme Court. Defendants now contend that the Supreme Court granted the stay "based on the very arguments the Government presented to this Court and the Second Circuit." (Obj. 12). The Government conveniently, and fatally, omits that it made an

---

plaintiff had thus far only succeeded in obtaining an immigration bond hearing, so the fee request was denied without prejudice to further progress in the case.

11

additional, completely distinct, argument to the Supreme Court in their stay application. (Defendants-Applicants' Application for Stay of Injunctions, at 3-4, *Dept. of Homeland Security* v. *New York*, No. 19A785 (U.S. Jan. 2020)). The government argued that it met the burden for a stay based solely on the premise that "certiorari would likely be granted" because "the nationwide scope of the injunctions independently warrants review," and "there is a fair prospect that the Court would rule for the moving party" because "there also is a fair prospect that this Court would vacate, or at least narrow, the injunctions." To make this position crystal clear, Defendants highlighted that the nationwide scope of the injunctions *alone* would justify a stay, "even setting aside the merits." *Id.*

The actual reason for the grant of the stay application is, of course, opaque, since the Opinion is one paragraph long and says nothing more than that "the District Court's [] orders granting a preliminary injunction are stayed pending disposition of the Government's appeal." *Dep't of Homeland Sec.* v. *New York*, 589 U.S. 1173 (2020). But Defendants' arguments in the stay application based on the nationwide scope of the injunction completely undermine their position here that the stay must have been based on the merits arguments. Indeed, to the extent any reasoning can be hypothesized, it would have to come from the only explanation provided in the concurring opinions, whereby two of the Justices explained their singular concern with injunctions of "'nationwide,' 'universal,' or 'cosmic' scope." *Id.*[8] Thus, the issuance of the stay provides *no* basis for substantial justification of the government's action.

Defendants' companion argument—that the grant of certiorari provides objective indicia of substantial justification—is undermined by the position it took on the stay, as discussed above.

---

[8]    The Supreme Court finally addressed its discomfort with nationwide injunctions in *Trump v. CASA, Inc.,* 606 U.S. 831 (2025).

12

Additionally, it is axiomatic that a "grant of certiorari on an issue does not suggest a view on the merits." *Schwab* v. *Sec'y, Dep't of Corr.*, 507 F.3d 1297, 1299 (11th Cir. 2007); *Dubose* v. *Pierce*, 579 F. Supp. 937, 950 (D. Conn. 1984), *aff'd* 857 F.2d 889 (2d Cir. 1988) (grants of certiorari in similar cases were "too opaque to convince this court that [defendant's] position was substantially justified"). Here, the Supreme Court's grant of certiorari did not, as usual, address any of the legal claims, and there is nothing even implicit in the grant to support the reasonableness of the government's positions on the merits. *Department of Homeland Security* v. *New York*, 141 S.Ct. 1370 (Mem.) (2021).

Defendants also briefly mention "favorable decisions in other courts that found the Government's position was likely to succeed." (Obj. 11 & n. 10). Plaintiffs thoroughly addressed these cases before the Magistrate Judge, establishing that Defendants' comparator cases are inapposite. (MTR1 Pls' MOL, ECF 362 at 12-17 and cases cited therein; MTR1 Pls' Reply, ECF 372 at 5-7 and cases cited therein). In brief, the cases cited by Defendants do not support substantial justification on the APA and Equal Protection claims, which were central, and independently sufficient, legal grounds for the injunction. (*Id.*). The only case discussed in the Objection is *Arizona* v. *City & County of San Francisco*, 596 U.S. 763 (2022) (per curiam). Again, Defendants try to make something out of nothing. The background of that case is that the Biden administration bypassed a notice and comment period when repealing the Trump administration's changes to the Public Charge Rule, allegedly in violation of the APA; certiorari had been granted to determine whether a group of states could intervene in the action. Four justices concurred in dismissing the writ of certiorari as improvidently granted, stating that the dismissal "should not be taken as reflective of a view" on a host of issues, including litigation related to the 2019 Public Charge Rule. Defendants now do exactly what the Justices instructed

13

against, i.e., surmising meaning from an opinion that explicitly disclaims having any meaning at all.

With respect to substantial justification in *Make the Road 2*, Defendants object that they were "not preclude[d]" from taking a position contrary to this Court's *Make the Road 1* preliminary injunction ruling. (Obj. 13). While that may be true in a Rule 11 sense, it does not advance their argument that opposing Plaintiffs' motion for a preliminary injunction in *Make the Road 2* was substantially justified or reasonable. Defendants contend that the Supreme Court's grant of their stay request in *Make the Road 1* provided justification for opposing the injunction in *Make the Road 2*, but this simply circles back to the point made above that no substantive meaning can be read into the stay; therefore, no derivative justification could emanate from it.

Defendants also criticize the Magistrate Judge for rejecting the allegedly "favorable views of other jurists." As discussed above, Plaintiffs have extensively briefed all of these comparator cases. Rather than addressing a single one of these cases, Defendants again distort the record, this time by quoting a portion of the Magistrate Judge's decision and omitting the full, and critical, context. Defendants quote the Magistrate Judge as quarreling with "cherrypicked outcomes in cases in other circuits." (Obj. 13, quoting MTR2 R&R ECF 199 at 22). However, the full quotation is: "In short, the Government's decision to maintain its defense of the Challenged Rules, based, as the Government asserts, on cherrypicked outcomes in cases in other circuits *and a steep discount placed on decisions in the Second Circuit, was not reasonable*." (R&R MTR2 ECF 199 at 22 [emphasis added]). Thus, Defendants excluded from the equation the counterbalancing force of the well-reasoned rulings of this Court, the Second Circuit, and other courts. Defendants also failed to account for the controlling legal standard, disregarding their own statement elsewhere that the court is tasked with judging whether

14

Defendants' position was "'justified to a degree that could satisfy a reasonable person.'" (Obj. 10, quoting *Pierce* v. *Underwood*, 487 U.S. 552, 565 (1988)). That is exactly what the Magistrate Judge did in weighing the scant, inapposite collection of comparator statements presented by Defendants against the controlling holdings in this case and others, and concluding that the Government's defense was not reasonable.

**III.    The Magistrate Judge Correctly Found the Individual Plaintiffs Eligible for Fees**

Defendants argue that the Magistrate Judge erred in finding the *Make the Road 2* individual Plaintiffs eligible for fees despite their anonymity. (Obj. 14; MTR2 ECF 199 at 10-11). The Supreme Court has made clear that the provision of EAJA making fee awards "payable to the litigant" does not displace "traditional assignment principles" that permit a prevailing party to assign the right to payment to counsel. *Astrue* v. *Ratliff*, 560 U.S. 586, 598 (2010). Consistent with that understanding, courts recognize that in fee applications "the real parties in interest are [the] attorneys." *Gisbrecht* v. *Barnhart*, 535 U.S. 789, 798 n.6 (2002). This is particularly appropriate where, as here, the court has confirmed indigence, and four of the individual Plaintiffs have submitted declarations attesting to the absence of federal debts[9] as well as their express assignment of any EAJA award to counsel.

Nor does the Anti-Assignment Act (AAA) warrant a contrary result. 31 U.S.C. § 3727(b). The Government identifies no Second Circuit authority prohibiting assignment of EAJA fees to counsel, and none exists. To the contrary, district courts within this Circuit routinely recognize that although EAJA fees are payable in the first instance to the prevailing litigant, they may be paid directly to counsel pursuant to a valid assignment where the statutory requirements are met

---

[9]    Defendants argue that "Plaintiffs may not even realize or acknowledge that they owe existing debt to the United States that disqualifies them from an award." (Obj. 14). That conjecture is foreclosed by the sworn declarations on the record. (Pls' Indiv. Decls., MTR2 ECF 167-169).

15

and the purposes of the Anti-Assignment Act are not implicated. *See*, e.g*., Finch* v.

*Saul,* 17-CV-892 (OTW), 2020 WL 1940308, at *6–7 (S.D.N.Y. Apr. 22, 2020); *Conforti* v.

*Berryhill,* 19-CV-2958 (JGK), 2021 WL 796494, at *3–4 (S.D.N.Y. Mar. 2, 2021). Furthermore,

courts in this District have awarded EAJA fees in cases brought by plaintiffs proceeding

anonymously, rejecting any suggestion that anonymity bars recovery where eligibility is

established. *See R.F.M.* v. *Nielsen*, 18-CV-5068 (LLS) (OTW), 2020 WL 6393583, at *3

(S.D.N.Y. Oct. 30, 2020), *report and recommendation adopted*, 2020 WL 6393718 (S.D.N.Y.

Nov. 2, 2020)*.*

Furthermore, as the Magistrate Judge recognized, denying fees based on anonymity

would undermine EAJA's purpose of enabling individuals to vindicate their rights against the

government. (MTR2 R&R, ECF 199 at 26-27 (citing *Scarborough* v. *Principi*, 541 U.S. 401,

406–07 (2004); H.R. Rep. No. 96-1005, pt. 1, at 9 (1980); H.R. Rep. No. 99-120 at 4 (1985);

*Vacchio* v. *Ashcroft*, 404 F.3d 663, 668 (2d Cir. 2005*); Boudin*  v. *Thomas,* 732 F.2d 1107, 112–

15 (2d Cir. 1984)). Enforcing the AAA to bar fee assignments in these circumstances would

elevate form over substance and would not protect any legitimate governmental interest,

particularly where the Court has reviewed the Plaintiffs' sealed, unredacted declarations and

confirmed both EAJA eligibility and the validity of the assignments.

Finally, denying payment to counsel solely because the prevailing plaintiffs proceeded

anonymously would undermine the core purposes of EAJA. The statute was enacted to remove

financial barriers for individuals challenging unjustified government action and to encourage

meritorious public interest litigation. *Vacchio*, 404 F.3d at 668. Adopting the Government's

position would create a perverse loophole: indigent plaintiffs with the strongest need for

anonymity, and the least ability to front litigation costs, would be categorically barred from

meaningful EAJA relief, regardless of the unreasonableness of the Government's conduct. *Make Rd. New York* v. *Blinken,* No. 19-CV-11633 (GBD) (OTW), 2024 WL 4664712, at *12 (S.D.N.Y. Sept. 4, 2024). (MTR2 R&R, ECF 199 at 27).  Where the Court has found the anonymous plaintiffs eligible, has credited the sworn declarations of most of them, and has accepted their assignments of fees, directing payment to counsel is not only permissible under EAJA and the AAA, but necessary to give effect to Congress's remedial design, as the Magistrate Judge correctly determined. (MTR2 R&R, ECF 199 at 23-27).

## IV.    The Amount of Both Fee Awards is Reasonable and Appropriate

Defendants argue that the fee awards should both be reduced due to limited success, relying on the conclusory statement that "the temporary relief achieved by the preliminary injunctions offered only a fraction of the success sought in these cases." (Obj. 15-16).  Having sought, unsuccessfully due to this litigation, to fundamentally alter the nature of the Public Charge system, the Government picks a strange hill to fight on. In stopping a massive reordering of the Public Charge system that would have jeopardized many thousands of vulnerable persons, Plaintiffs achieved broad and significant success. In *Make the Road 1*, Plaintiffs achieved the central goal of the lawsuit—reversal of the Rule and return to the standard of the 1999 Guidance—through this Court's preliminary injunction and the Second Circuit's unanimous affirmance which became the final adjudication on the merits. This Court observed that, absent an injunction, meaningful and irreparable harm would be "immediate and significant," noting that the government itself recognized that the Rule would cause "economic and public health harms." *Make the Rd. New York* v. *Cuccinelli*, 419 F. Supp. 3d 647, 665-66 (S.D.N.Y. 2019) (citing 83 Fed. Reg. at 51,270). The Second Circuit's decision was similarly detailed and emphatic, finding that "the Rule has already had a chilling effect on non-citizen use of public benefits," and affirming the conclusion that the Rule would result in "established actual

17

imminent" harms. *New York* v. *United States Dep't of Homeland Sec.,* 969 F.3d 42, 59, 86-87 (2d Cir. 2020). Ultimately, Plaintiffs' position was vindicated and the harms imposed by the Rule were allayed when the government withdrew from the litigation in the Supreme Court, resulting in a return to the long-standing pre-2019 meaning of the Rule. *See Cabrera* v. *Astrue*, 2008 WL 4410094, \*2 (S.D.N.Y. 2008) ("Plaintiffs who achieve excellent overall results are entitled to 'all hours reasonably expended on the litigation.'") (*quoting Hensley* v. *Eckerhart*, 461 U.S. 424, 435 (1983)).

Plaintiffs were equally successful in *Make the Road 2*, and the Magistrate Judge properly recognized "it is clear from the record that counsels' efforts at both earlier and later stages in the litigation advanced the legal relationship between the parties, including preparing the Complaint, pursuing a temporary restraining order, opposing the Government's motion to dismiss, litigating the Government's interlocutory appeal, and negotiating a joint dismissal." (MTR2 R&R, ECF 199 at 15-16 (citing *Pompeo*, 475 F. Supp. 3d at 267-68); MTR2 ECF 172 at 15, *Blinken,* 2024 WL 4664712, at \*8)). Defendants also challenge the awards for including time spent on purportedly "unrelated" work, arguing that any work beyond securing the preliminary injunctions is not compensable. (Obj. 15). The Magistrate Judge properly rejected this position as contrary to law in *Make the Road 1*, holding that "a plaintiff who has substantially prevailed 'is entitled to be awarded counsel's fees and expenses incurred for all work reasonably performed in pursuit of the ultimate result achieved, including efforts expended on unsuccessful issues.'" (MTR1 R&R ECF 394 at 19, *quoting McClain* v. *Barnhart,* 186 F. Supp. 2d 435, 438 (S.D.N.Y. 2002) *(citing Hensley,* 461 U.S. at 434–35))*; see also Reed* v. *A.W. Lawrence & Co.,* 95 F.3d 1170, 1183 (2d Cir. 1996) (complete attorneys' fees may be awarded where claims are "inextricably intertwined" and "involve a common core of facts or are based on related legal

18

theories."). The Magistrate Judge further found that in *Make the Road 2* the case "involved a common core of facts and related legal theories challenging the inextricably intertwined actions of DOS and HHS," thereby justifying full fees for "all work reasonably performed in pursuit of the ultimate result achieved." (MTR2 R&R ECF 199 at 16; ECF 172 at 15, 29) (quoting *McClain,* 186 F. Supp. 2d at 438, citing *Hensley*, 461 U.S. at 434–35)).

Rather than facing the actual success achieved by Plaintiffs, Defendants invent a new and totally atextual requirement that the absence of a final judgment limits plaintiffs' recovery to a "*de minimus*" fee award, even where plaintiffs have been successful and all claims are interrelated and subject to common proof. (Obj. 17). Defendants fabricate this argument on the ground that two of the cases cited by the Magistrate Judge—*Kerin* v. *U.S. Postal Svc.*, 218 F.3d 185 (2d Cir. 2000), and *Hensley,* 461 U.S. at 435—pertained to final orders. (Obj. 16-17). But neither of those cases, in text or logic, impose a final judgment restriction. The opinions in both cases focus on the extent of successful *claims*, not the particular form of success. Indeed, in *Hensley*, the Court cited a case in which the only successful judicial ruling was a declaratory judgment. *Id.* at 430-31, citing *Stanford Daily* v. *Zurcher,* 64 F.R.D. 680 (ND Cal.1974). The District Court in *Zurcher* had awarded attorney's fees for all time spent by plaintiffs to "substantially advance[] their clients' interests," and the Supreme Court found that "plaintiffs obtained essentially complete relief," further holding that "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Id.* at 440; *see also Select Milk Producers, Inc.* v. *Veneman,* 304 F. Supp. 2d 45,52, 58 (D.D.C. 2004) *aff'd in part, rev'd in part and remanded sub nom. Select Milk Producers, Inc.* v. *Johanns*, 400 F.3d 939 (D.C. Cir. 2005) (plaintiffs who obtained preliminary injunction providing relief sought, and where claim

19

was later mooted when agency promulgated new regulation consistent with plaintiffs' position, were prevailing parties, and were awarded nearly complete fees subject to the specific deductions); *People Against Police Violence* v. *City of Pittsburgh*, 520 F.3d 226, 228, 233 (3rd Cir. 2008) (plaintiffs were prevailing parties by obtaining preliminary injunction, which was lifted upon passage of a revised city ordinance that corrected the infirmities raised by the complaint, and were awarded nearly complete fees). Thus, Defendants' proposed *de minimus* fee restriction has no legal basis.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court adopt the Magistrate Judge's Reports and Recommendations granting Plaintiffs' motions for attorneys' fees and costs.

DATED: May 1, 2026
Respectfully submitted,

**CENTER FOR CONSTITUTIONAL RIGHTS**
By: */s/ Samuel Miller*
Samuel Miller
Baher Azmy
666 Broadway
7th Floor
New York, New York 10012
(212) 614-6445
samrmiller@yahoo.com
bazmy@ccrjustice.org


**THE LEGAL AID SOCIETY**
By: */s/ Susan E. Welber*
Susan E. Welber
Bronx Neighborhood Office
260 East 161st Street, 8th Floor
Bronx, New York 10451
(646) 234-4326
sewelber@legal-aid.org


Judith Goldiner
Deborah Lee
49 Thomas Street, 5th Floor
New York, New York
(212) 577-3915
jgoldiner@legal-aid.org
dslee@legal-aid.org

21

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ Daniel S. Sinnreich*
    Name:  Daniel S. Sinnreich

Daniel S. Sinnreich
Leah J. Park
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
dsinnreich@paulweiss.com
lpark@paulweiss.com

*Attorneys for Plaintiffs*

22

**CERTIFICATION OF COUNSEL**

In accordance with Local Civil Rules 7.1(c), I hereby certify that the foregoing document complies with this Court's Order, dated April 22, 2026, that granted Plaintiffs' request to file a consolidated opposition to Defendants' consolidated Objection with 7,000 words or less in both of the above-captioned cases. (MTR1 ECF 406; MTR2 ECF 208). The foregoing document, not including the caption, index, table of contents, table of authorities, signatures, and required certificates, contains 6,424 words.

*/s/ Daniel S. Sinnreich*
Daniel S. Sinnreich


*Counsel for Plaintiffs*

23