**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MAKE THE ROAD NEW YORK, *et al.*,

                        Plaintiffs,

          -against-

UNITED STATES CITIZENSHIP AND
IMMIGRATIONS SERVICES; DIRECTOR OF
UNITED STATES CITIZENSHIP AND
IMMGRATION SERVICES, *et al.*,

                      Defendants.

     **MEMORANDUM DECISION & ORDER**

     19 Civ. 7993 (GBD) (OTW)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MAKE THE ROAD NEW YORK, *et al.*,

                        Plaintiffs,

     19 Civ. 11633 (GBD) (OTW)

          -against-

UNITED STATES DEPARTMENT OF STATE;
SECRETARY OF STATE, *et al.*,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GEORGE B. DANIELS, United States District Judge:

In these two related cases,[1] Make the Road New York, African Services Committee, Asian American Federation, Catholic Charities Community Services (Archdiocese of New York), and Catholic Legal Immigration Network, Inc. (the "Organizational Plaintiffs") and several individual plaintiffs (collectively, "Plaintiffs") challenged the Government's 2018 and 2019 revisions to the "public charge" framework: a set of rules for determining whether a noncitizen is inadmissible to gain entry into the United States because they are "likely at any time to become a public charge." 8 U.S.C. § 1182(a)(4)(A); (*see also* Compl., MTR 1 ECF No. 1; Compl., MTR 2 ECF No. 1.) This Court preliminarily enjoined the challenged revisions in both cases. *See Make the Road I*, 419

---

[1] For convenience, this Court will refer to Case No. 19 Civ. 7993 (GBD) (OTW) as "*Make the Road I*" or "MTR 1" and Case No. 19 Civ. 11633 (GBD) (OTW) as "*Make the Road II*" or "MTR 2."

F.Supp.3d 647, 666 (S.D.N.Y. 2019); *Make the Road II*, 475 F.Supp.3d 232, 271 (S.D.N.Y. 2020). After a change of administration, the Government reversed the challenged rulemaking, rendering both cases moot. Plaintiffs voluntarily and by stipulation dismissed the cases without prejudice. (*See* Notice of Voluntary Dismissal, MTR 1 ECF No. 342, at 4; Stipulation of Dismissal, MTR 2 ECF No. 148.) Plaintiffs then moved in both cases for attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"). (*See* Mot. Att'y Fees, MTR 1 ECF No. 345; Mot. Att'y Fees, MTR 2 ECF No. 154.) On September 4, 2024, Magistrate Judge Ona T. Wang issued a Report and Recommendation ("Report") in *Make the Road II*, concluding that Plaintiffs were "prevailing parties" under the EAJA, and recommended granting their fee request in part. (R. & R., MTR 2 ECF No. 172, at 13–16.) Noting the potential applicability of a then-pending Supreme Court case, *Lackey v. Stinnie*, 604 U.S. 192 (2025),[2] this Court recommitted both attorney's fees motions to the Magistrate Judge to reconsider in light of *Lackey*. (MTR 1 ECF No. 379, at 1; MTR 2 ECF No. 175, at 2.)

Before this Court is the Magistrate Judge's Report in *Make the Road I*, (R. & R., MTR 1 ECF No. 394,) and Amended Report in *Make the Road II*, (Am. R. & R., MTR 2 ECF No. 199.) Both Reports concluded that *Lackey's* holding does not apply to the EAJA and recommended that this Court grant Plaintiffs' fee requests in part. (*See* R. & R., MTR 1 ECF No. 394, at 12; Am. R. & R., MTR 2 ECF No. 199, at 17–19.) This Court disagrees. *Lackey* fully controls "prevailing party" status under the EAJA. Because Plaintiffs did not secure an enduring, judicially sanctioned change in the parties' legal relationship prior to the case being mooted, Plaintiffs are not

---

[2] The questions presented in *Lackey* were (1) "[w]hether a party must obtain a ruling that conclusively decides the merits in its favor, as opposed to merely predicting a likelihood of later success, to prevail on the merits under 42 U.S.C. § 1988" and (2) "[w]hether a party must obtain an enduring change in the parties' legal relationship from a judicial act, as opposed to a non-judicial event that moots the case, to prevail under 42 U.S.C. § 1988." Petition for Writ of Certiorari at ii, *Lackey v. Stinnie*, 604 U.S. 192 (2025) (No. 23-621).

"prevailing parties" as a matter of law. *See Lackey*, 604 U.S. at 203. Accordingly, the recommendation granting Plaintiffs' motions for attorney's fees is REJECTED and the motions are DENIED.

## I.    BACKGROUND[3]

The Immigration and Nationality Act ("INA") lists ten grounds of inadmissibility by which a noncitizen can be denied admission to the United States. These related actions concern the public charge ground, which renders noncitizens inadmissible when they are "likely at any time to become a public charge." 8 U.S.C. § 1182(a)(4)(A).

In 2018 and 2019, the Government took various steps to redefine when and how a noncitizen is deemed inadmissible as a "public charge." Four government actions are at issue here: (1) the Department of Homeland Security's ("DHS") August 14, 2019, rule, which redefined the term "public charge" and established new criteria for public charge determinations by DHS adjudicators (the "DHS Rule"); (2) the Department of State's ("DOS") January 2018 revisions to Section 302.8 Volume 9 of its Foreign Affairs Manual (the "2018 FAM Revisions"), which govern public charge determinations by consular officials; (3) DOS's October 11, 2019, rule, which aligned its interpretation of "public charge" with DHS's interpretation (the "DOS Rule"); and (4) the President's October 4, 2019, Proclamation, which would have suspended entry into the United States of any immigrant who could not demonstrate that they possessed certain approved health insurance programs (the "Proclamation") (collectively, the "Challenged Rules"). *See Make the Road II*, 475 F.Supp.3d at 245–47.

The Organizational Plaintiffs initiated *Make the Road I* on August 19, 2019, to challenge the DHS Rule. *See Make the Road I*, 419 F.Supp.3d at 653. Subsequently, on December 19, 2019,

---

[3] This Court presumes the parties' familiarity with the factual and procedural background of this case and only the facts relevant to the instant motion are recounted herein.

Plaintiffs initiated *Make the Road II*, which challenged the 2018 FAM Revisions, the DOS Rule, and the Proclamation. *See Make the Road II*, 475 F.Supp.3d at 243. In both cases, Plaintiffs sought declaratory relief and preliminary and permanent injunctive relief. (*See* Compl., MTR 1 ECF No. 1; Compl., MTR 2 ECF No. 1.)

In each case, Plaintiffs moved to preliminarily enjoin the Government from implementing and enforcing the Challenged Rules pending a final ruling on the merits. (*See* MTR 1 ECF No. 38; MTR 2 ECF No. 43.) This Court granted both motions and issued nationwide preliminary injunctions blocking the Challenged Rules. As this Court explained in separate decisions, Plaintiffs sufficiently demonstrated a likelihood of success on the merits, irreparable harm absent preliminary relief, and that the remaining preliminary injunction factors weighed in their favor. *See Make the Road I*, 419 F.Supp.3d at 666; *Make the Road II*, 475 F.Supp.3d, at 271. The Government filed notices of appeal and sought stays of the preliminary injunction in both cases. (MTR 1 ECF No. 152; MTR 2 ECF Nos. 95, 96.)

In January 2020, the Supreme Court stayed this Court's preliminary injunction in *Make the Road I*, allowing the DHS Rule to go into effect. *Dep't of Homeland Sec. v. New York*, 589 U.S. 1173 (2020). On August 4, 2020, the Second Circuit affirmed in part this Court's decision to grant a preliminary injunction in *Make the Road I*. *See New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 87 (2d Cir. 2020). While the Second Circuit limited the scope of the *Make the Road I* injunction to New York, Connecticut, and Vermont, the Circuit agreed that Plaintiffs had "met their burden of showing that a preliminary injunction [was] warranted." *Id.* The Government then filed a petition for a writ of certiorari, which the Supreme Court granted in February 2021. *Dep't of Homeland Sec. v. New York*, 141 S. Ct. 1370 (2021).

4

While the Government's appeals were pending, a new administration took office. In February 2021, President Biden issued an executive order calling for a review of the agency actions at the center of this case. *See Restoring Faith in Our Legal Immigration Systems and Strengthening Integration and Inclusion Efforts for New Americans*, Exec. Order No. 14,012, 86 Fed. Reg. 8277 (Feb. 2, 2021). At the Government's request, this Court granted several stays pending Government review. (*See, e.g.*, MTR 1 ECF No. 308; MTR 2 ECF No. 110.) On March 9, 2021, the Government voluntarily dismissed their petition for certiorari. *Dep't of Homeland Sec. v. New York*, 141 S. Ct. 1292 (2021). On July 6, 2021, the Second Circuit so ordered a stipulation by the parties to dismiss the Government's appeal in *Make the Road II*. (*See* MTR 2 ECF No. 118.) The Government ultimately reversed the Challenged Rules in both *Make the Road I* and *Make the Road II*. Plaintiffs then voluntarily dismissed *Make the Road I* without prejudice, (MTR 1 ECF No. 342,) and stipulated to a voluntary dismissal without prejudice in *Make the Road II*, (MTR 2 ECF No. 148.)

Plaintiffs moved for attorney's fees in both cases pursuant to the EAJA. (*See* Mot. Att'y Fees, MTR 1 ECF No. 345; Mot. Att'y Fees, MTR 2 ECF No. 154.) This Court referred both fee requests to Magistrate Judge Wang. On September 4, 2024, the Magistrate Judge issued a Report in *Make the Road II*, which concluded that Plaintiffs were "prevailing parties" under the EAJA and recommended granting their fee request in part. (*See* R. & R., MTR 2 ECF No. 172, at 13–16.)

At the time the Magistrate Judge issued the *Make the Road II* Report, *Lackey* was still pending before the Supreme Court. The question presented in *Lackey* was whether a party qualified as a "prevailing party" based on the entry of a preliminary injunction where nonjudicial events mooted the case before a court reached a final judgment on the merits. *See* 604 U.S. at 196.

5

Acknowledging *Lackey's* potential applicability, this Court recommitted Plaintiffs' motions for attorney's fees in *Make the Road I* and *Make the Road II* to the Magistrate Judge to further consider the effect of *Lackey* on Plaintiffs' ability to obtain fees. (*See* MTR 1 ECF No. 379; MTR 2 ECF No. 175.)

Published on February 25, 2025, the Supreme Court's decision in *Lackey* held that "[b]ecause preliminary injunctions do not conclusively resolve the rights of parties on the merits, they do not confer prevailing party status." 604 U.S. at 201. The Supreme Court further held that "external events that render a dispute moot do not convert a temporary order designed to preserve the status of the parties into a conclusive adjudication." *Id.*

On March 3, 2026, the Magistrate Judge issued an amended Report in *Make the Road II*. (Am. R. & R., MTR 2 ECF No. 199.) The amended Report again recommended that this Court find Plaintiffs are prevailing parties under the EAJA, that the Government's position on the Challenged Rules was not substantially justified, and that Plaintiffs are entitled to their fee request in part. (*See id.* at 14–27, 37.) Despite its analogous background, the amended Report distinguished *Lackey* from these cases, stating that the Supreme Court's reasoning in *Lackey* was based on Congress's use of the term "prevailing party" as a "term of art subject to the interpretation based on common knowledge and understanding of the ordinary usage of the term at the time the statute was adopted." (*Id.* at 17.) From this, the amended Report concluded that *Lackey's* holding does not apply to "statutes like the EAJA, where Congress specifically defines [prevailing party]." (*Id.* at 17–18.)

On March 5, 2026, the Magistrate Judge issued a Report in *Make the Road I*, which also recommended that this Court grant Plaintiffs' fee request in part. (*See* R. & R., MTR 1 ECF No.

6

394, at 22.) The Magistrate Judge incorporated her finding from the amended Report in *Make the Road II* that *Lackey* does not affect the Plaintiffs' prevailing party status. (*Id.* at 12.)

The Government filed its consolidated objections to the Reports on April 10, 2026. (Objs., MTR 1 ECF No. 402; MTR 2 ECF No. 207.) Plaintiffs filed their consolidated memorandum of law in opposition to the Government's objections on May 1, 2026. (Pls. Opp., MTR 1 ECF No. 407; MTR 2 ECF No. 210.)

## II.   LEGAL STANDARD

This Court "may accept, reject, or modify, in whole or in part, the findings and recommendations" set forth in a magistrate judge's report. 28 U.S.C § 636(b)(1)(C). "When a timely filed objection raises and properly briefs arguments previously rejected by the magistrate judge, the district judge must review those arguments *de novo*." *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 361 (2d Cir. 2025). However, the district court need not conduct a *de novo* hearing on the matter. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Instead, it is sufficient that the district court "arrive at its own, independent conclusion." *Nelson v. Smith*, 618 F.Supp. 1186, 1189–90 (S.D.N.Y. 1985) (citation omitted).

Portions of a magistrate judge's report to which no objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F.Supp.2d 342, 346–47 (S.D.N.Y. 2006). Clear error is present when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation and internal quotation marks omitted).

## III.   PLAINTIFFS ARE NOT PREVAILING PARTIES

The Government objects to four of the Reports' conclusions. The Government's chief objection is that the Magistrate Judge erred in finding that *Lackey* does not control "prevailing party" status under the EAJA. (Objs. at 7–10.) The Government also objects to the Magistrate

7

Judge's conclusion that the Government's positions in these cases were not substantially justified, (*id.* at 10–14,) that the individual Plaintiffs are eligible for fees in *Make the Road II*, (*id.* at 14,) and that a total fee award of $1,386,318.47 is reasonable and appropriate, (*id.* at 14–17.) On a *de novo* review, this Court rejects the Magistrate Judge's finding that *Lackey*'s holding does not apply to the EAJA. Because *Lackey* renders Plaintiffs ineligible for prevailing party status, and therefore ineligible to recover attorney fees under the EAJA, this Court does not address the Government's remaining objections.

The EAJA is one of several congressionally authorized exceptions to the "American Rule"—the "general practice of not awarding fees to a prevailing party absent explicit statutory authorization." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 602 (2001) (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 819(1994)). Because the EAJA "renders the United States liable for attorney's fees for which it would not otherwise be liable" it "amounts to a partial waiver of sovereign immunity . . . [which] must be strictly construed in favor of the United States." *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991).

Under the EAJA, "a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States . . .." 28 U.S.C. § 2412(d)(1)(A). "Thus, a threshold requirement for a party seeking fees is to establish that [a litigant] is a 'prevailing party' within the [EAJA's] definition." *Ma v. Chertoff*, 547 F.3d 342, 343 (2d Cir. 2008) (citing *Pres. Coal. v. Fed. Transit Admin.*, 356 F.3d 444, 450 n. 2 (2d Cir. 2004)).

The Second Circuit has previously held that the term "prevailing party," which appears in numerous fee-shifting statutes, has a consistent meaning across these statutes, including in the

8

EAJA. *See Hasou v. Jaddou*, No. 23-CV-7225-, 2024 WL 3264142 (2d Cir. July 2, 2024) (holding that "the standard for determining if a litigant is a 'prevailing party' under" the American with Disabilities Act and the Fair Housing Amendments Act equally applies "under other fee-shifting statutes, such as the EAJA"); *Ma*, 547 F.3d at 344 ("[W]e find nothing in the language or structure of the EAJA to indicate that the term 'prevailing party' should bear a different meaning than it has been given in other, similar contexts.").

As noted above, the Supreme Court's recent decision in *Lackey* addressed an attorney's fees issue that is strikingly similar to these cases. In *Lackey*, the Supreme Court considered whether a district court's grant of a preliminary injunction, which was granted without ever reaching a final judgment on the merits due to external events mooting the case, conferred "prevailing party" status to a plaintiff under 42 U.S.C. § 1988(b). *See* 604 U.S. at 196. Prior to *Lackey*, the Second Circuit recognized that "a plaintiff receiving interim injunctive relief may be a prevailing party where she 'prevailed on the merits at the interim stage.'" *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) (quoting *LaRouche v. Kezer*, 20 F.3d 68, 75 (2d Cir. 1994)); *see also Vacchio v. Ashcroft*, 404 F.3d 663, 673 (2d Cir. 2005) ("When a party receives a stay or preliminary injunction but never obtains a final judgment, attorney's fees are proper if the court's action in granting the preliminary injunction is governed by its assessment of the merits.") (internal citation omitted).

In *Lackey*, the Supreme Court held that a party does not "prevail" if they obtain only a preliminary injunction. The Supreme Court first noted that "the phrase 'prevailing party' is a 'legal term of art.'" 604 U.S. at 199 (quoting *Buckhannon*, 532 U.S. at 603). "[W]hen Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word." *Id.*

9

at 200 (internal citations and quotation marks omitted).  Relying on *Black's Law Dictionary* to supply the meaning of this legal term of art, the Court held that a prevailing party "is '[t]he party ultimately prevailing when the matter is finally set at rest." *Id.* at 200 (alteration in original) (quoting *Black's Law Dictionary* 1352 (rev. 4th ed. 1968)).  Put differently, "[a] party 'prevails' when a court conclusively resolves his claim by granting enduring relief on the merits that alters the legal relationship between the parties." *Id.* at 207.  The Court ultimately held that because "[a] plaintiff who secures a preliminary injunction has achieved only temporary success at an intermediary stage of the suit," preliminary injunctions "do not confer prevailing party status." *Id.* at 201 (internal citation and quotation marks omitted).

Despite *Lackey's* seeming applicability, the Magistrate Judge concluded that *Lackey's* holding is "narrowly confined to cases where Congress did not define or apply the term 'prevailing party,' such as 42 U.S.C. § 1988(b), and not to statutes like the EAJA, where Congress specifically defines the term." (Am. R.& R. at 17–18.)  To reach this conclusion, the amended Report relied on § 2412(d)(2)(H) of the EAJA, which provides,

> "prevailing party", in the case of eminent domain proceedings, means a party who obtains a final judgment (other than settlement), exclusive of interest, the amount of which is at least as close to the highest valuation of the property involved that is attested to at trial on behalf of the property owner as it is to the highest valuation of the property involve that is attested to at trial on behalf of the Government.

28 U.S.C. § 2412(d)(2)(H).

According to the amended Report, this provision's reference to "final judgment" shows that "Congress intended to fasten a final judgment requirement to 'prevailing party' status for the purposes of the EAJA *only* in eminent domain proceedings." (Am. R.& R. at 18 (emphasis in original).)  The amended Report further reasoned that "[i]f Congress's intention was to restrict *all* 'prevailing party' status under the EAJA to those who receive a final judgment, its specific

10

inclusion for eminent domain proceedings under subsection (2)(H) would not be necessary." (*Id.* 18–19 (emphasis in original).)

This interpretation reads too much from § 2412(d)(2)(H). As the plain text of the statute makes clear, a party does not prevail in an eminent domain proceeding under § 2412(d)(2)(H) simply by obtaining *any* favorable determination. Rather, a party prevails under this provision when they receive a *specific type* of final judgment; to prevail, the party's attested valuation of the property has to be closer to the final judgment amount than the other party's valuation. Contrary to the Magistrate Judge's reading, Congress's decision to require this specific type of final judgment in eminent domain proceedings does not necessarily exclude *all* final judgment requirements in other proceedings. The more natural reading of this provision is that Congress intended to add additional conditions to eminent domain proceedings without disturbing the normal rules applicable to other EAJA proceedings.[4] The most one could infer from the text of § 2412(d)(2)(H) is that Congress only intended to require this specific type of final judgment in eminent domain proceedings. The provision therefore sheds little light on the definition of "prevailing party" in other circumstances.

---

[4] To the extent relevant, the EAJA's legislative history supports this conclusion. The House Report to the EAJA Amendments makes clear that § 2412(d)(2)(H) was added "to clarify the status of condemnation actions under the Act." H.R. Rep. No. 99-120, at 18 (1985). As the House Report notes, in condemnation actions "the United States acquires private property by eminent domain and the property owners litigate the amount to be paid as compensation." *Id.* The House Report states that Congress added § 2412(d)(2)(H) to (1) resolve a split among the court of appeals as to whether the EAJA applied to condemnation actions and (2) "provide[] a standard for determining who the prevailing party would be in such actions." *See id.* The House report therefore suggests that Congress's intent was to clarify the Act's "prevailing party" standard in the unique circumstance of condemnation proceedings, in which it is not immediately apparent what amount of compensation constitutes a favorable final judgment. Section 2412(d)(2)(H)'s narrow scope is further supported by the House Report's statement that "[n]othing in the definition of 'prevailing party' for the purposes of condemnation proceedings is meant to limit the definition of 'prevailing party' under other circumstances." *Id.* at 19.

11

Absent any other indication that Congress sought to define "prevailing party" in the EAJA generally, this Court must follow Second Circuit precedent and interpret the term as a legal term of art consistent with other, similar fee-shifting provisions. *See Ma*, 547 F.3d at 344 ("[W]e find nothing in the language or structure of the EAJA to indicate that the term 'prevailing party' should bear a different meaning than it has been given in other, similar contexts."). Moreover, the Second Circuit has previously indicated that the "prevailing party" standards under the EAJA and § 1988(b) are the same. In *Hasou*, the Second Circuit cited to *DiMartile v. Hochul*, 80 F.4th 443, 452 (2d Cir. 2023), a fee-shifting case brought under § 1988(b), to support the proposition that the "plaintiff was not a 'prevailing party' under the EAJA." *See Hasou*, 2024 WL 3264142, at *2. So, while *Lackey* arose in the context of § 1988(b), its definition of "prevailing party," as a legal term of art that is consistently applied across similar fee-shifting statutes, applies here with equal force.

Applying *Lackey* to these cases, this Court finds that Plaintiffs are not prevailing parties under the EAJA. Like the plaintiff in *Lackey*, Plaintiffs received preliminary injunctions that temporarily enjoined the implementation of the Challenged Rules pending a final adjudication on the merits. Those preliminary injunctions did not "conclusively resolve the rights of the parties on the merits." *Lackey*, 604 U.S. at 201. The Government's subsequent decision to voluntarily reverse the Challenged Rules, thereby rendering the disputes moot, "[did] not convert [the] temporary order[s] designed to preserve the status of the parties into [] conclusive adjudication[s] of their rights." *Id.* Accordingly, Plaintiffs are not "prevailing parties" under the EAJA by virtue of obtaining preliminary relief to maintain the status quo during litigation. They are therefore not entitled to recover attorney's fees.

12

## IV.   CONCLUSION

The Plaintiffs' motions for attorney's fees, (MTR 1 ECF No. 345; MTR 2 ECF No. 154),

are DENIED.  The Clerk of Court is directed to close the motions accordingly.


Dated: June 16, 2026
New York. New York

SO ORDERED.

GEORGE B. DANIELS
United States District Judge